IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,　　　　　　　　　)
Plaintiff,　　　　　　　　　　　　　) No. CA-04-230-ERIE
　　　　　　　　　　　　　　　　　　) Magistrate Judge Baxter
　　v.　　　　　　　　　　　　　　　) District Judge Cohill
　　　　　　　　　　　　　　　　　　)
WILLIAM WOLFE, et al.,　　　　　　)
Defendants.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff respectfully asks this Honorable Court to deny the Defendant's Motion to Dismiss and in support avers as follows:

**LEGAL STANDARD**

Pursuant to a motion to dismiss, under Fed.R.Civ.P 12(b)(6), the Complaint cannot be dismissed unless the Court is satisfied that no relief could be granted under any set of facts that could be proved consistent with the allegation(s). <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). All well pled allegations in the complaint must be taken as true. The Court must also "liberally construe" complaints filed by pro se plaintiffs, see <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). In <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972), our Supreme Court stated "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim" should his complaint be dismissed. Also, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), stating that in considering a motion to dismiss a pro se complaint, it should be held to a less strict standard than a motion drafted by a lawyer.

**Response to Statue of Limitations**

As Defendant's pointed out, there is a statue of limitations that applies to §1983 claims brought in Pennsylvania. Under federal law, a §1983 claim accrues when a party knows, or has reason to know, of

1.

the injury. In this case, plaintiff was not notified or made aware of his claimed injury until August 15, 2002, when he saw the Program Review Committee and was released from the hole. The Defendant's make no further argument in this regard however, plaintiff did not become aware of this injury until August 15, 2002. That has been pled in his complaint. Therefore, plaintiff's complaint is timely. As far as dismissing defendant's Beard and Barr, Plaintiff objects and asserts that he specifically named defendant Beard in the original complaint filed on August 10, 2004. He simply inadvertently omitted his name on the cover page. Surely the Defendant's were on notice that Plaintiff named defendant Beard as a defendant in his complaint. As for Defendant Barr, Plaintiff only became aware of his actual knowledge about Dr. Lindemuth's Report's during the October 22, 2004 hearing in which he admitted such on the record (this is also the date in which Defendant Barr threatened Plaintiff with a transfer). Because Plaintiff only became aware of Barr's knowledge and deliberate indifference (along with his threat of transfer, which occurred on October 22, 2004) did he name him in the Amended Complaint. It is respectfully contended that both Defendant Beard and Barr should remain defendant's in this case.

### Requirements under the PLRA

The Defendant's correctly point out that the Prison Litigation Reform Act, 42 U.S.C. §1997(e), provides that, "no action shall be brought with respect to prison conditions under [§1983] or any other Federal law, by a prisoner...until such administrative remedies **as are available** are exhausted." 42 U.S.C. §1997(e). The key wording is bolded above. Plaintiff has stated in his Complaint that he filed numerous

grievances that went unresponded to by prison officials. This created a bar to the grievance process. Thus, Plaintiff did "exhaust all available administrative remedies" that were made available to him. See, Mitchell v. Horn, 318 F.3d 523, 528-29 (3rd Cir. 2003), where the Court stated, "the availability of administrative remedies to a prisoner is a question of law." The Court went on to say if prison officials failed to provide a grievance form that exhaustion is excused. And stated further that the District Court in that case was premature in dismissing Micthell's complaint. Also see, Camp v. Brennan, 219 F.3d 279 (3rd Cir. 2000), stating that prisoner's need only exhaust those remedies that are available to them. In the case sub judice, the prison officials have failed to respond to Plaintiff's grievances, rendering the grievance process "unavailable" to him. SCI-Albion Defendant Barr effectively prevented Plaintiff from utilizing the grievance process regarding the issue's raised in this case. Plaintiff raised the issue in his Complaints and has taken a further step in providing this Court with a notarized affidavit by Prison Notary, Ms. Bickle, showing that Plaintiff had filed grievances on the dates stated in his complaint, and they do not show up on the Defendant's "grievance grid." This Court should accept all facts stated by Plaintiff as true, and concur that Plaintiff did file the grievances (and notary), attached to his complaint [at this particular juncture]. The Defendant's have attached additional "evidence" in the form of some grievance grid. Plaintiff objects and asks that the Court reject it pursuant to Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974), standing for, the defendant's may not attach to a Rule 12(b)(6) motion affidavits or other evidence contesting allegations made in Plaintiff's Complaint.

3.

Attached hereto is a notarized affidavit by SCI-Albion's librarian and Notary stating that Plaintiff did in fact file grievances on dates that are not shown in the defendant's "grid". Plaintiff took these extra steps in the grievance process and the defendant's choose not to respond to them, thereby making exhaustion impossible. Based upon such evidence, how could one possibly argue that Plaintiff did not "exhaust those remedies that were made available" to him?

### Deliberate Indifference

Plaintiff's claims are premised upon the First, Eighth and Fourteenth Amendments of the United States Constitution contrary to the defendant's Motion to Dismiss (page 5). This Court had previously denied Plaintiff a preliminary injunction based off the purported testimony of Dr. Lindemuth. As the Court is aware, there is a difference between a serious medical need that requires the Court to grant the extraordinary remedy of a preliminary injunction and a serious medical need that can be redressed after trial. This Court bottomed it's decision based off the confusing testimony of Dr. Lindemuth. While it is true that Dr. Lindemuth teetered in her testimony, the Defendant's conveniently leave out the fact that Dr. Lindemuth admitted on the witness stand that she was tampered with by Defendant Barr after this Court granted Plaintiff a TRO. Moreover, as this Court is aware, Plaintiff has submitted affidavits from himself and Dr. Richard J. DeFranco to this Court alerting the Court that Dr. Lindemuth admitted to making errors in her testimony; that the Doctor actually read this Court's Report and Recommendation concerning her testimony at the preliminary injunction hearing and adamantly disagreed with the Court's interpretation of her testimony. The Doctor admitted to Doctor Richard

DeFranco that she was intimidated by Defendant Barr and admitted that the affidavit that she signed was written by Defendant Barr without her help whatsoever. Certainly, the circumstances surrounding this witness and Defendant Barr's unethical actions, the Court is asked to consider these facts and allow this case to move forward so the truth may come out regarding Dr. Lindemuth and Defendant Barr's actions in tampering with this material witness only <u>after</u> this Court granted Plaintiff a TRO. Plaintiff is asking this Court to consider the affidavits attached to his Writ of Supersedas and his Amended Objections (Doc. # 50 & 51, respectively). And Plaintiff requested a further evidentiary hearing due to Dr. Lindemuth's admittance to have given erroneous testimony and being intimidated by Defendant Barr. Without doubt evidence to support this will come out later in these proceedings.

The Defendant's have asked the Court to rely upon the record of this case (pertaining to the preliminary injunction hearing), which was never transcribed.[1] Plaintiff asserts that the Defendant's motion to dismiss should only pertain to the facts contained in his complaint and amended complaint, going outside those filings is in err. Moveover, Dr. Lindemuth is not the only person involved regarding the Z-code; in fact, she is not even a part of the "committee" who gives out Z-code's. Plaintiff has named Defendant Reilly who is the Chief psychologist at SCI-Albion who happened to vote for a Z-code for

---

[1] Plaintiff objects to the Defendant's request that this Court use its memory of the preliminary injunction hearing to grant dismissal. Moreover, in granting a preliminary injunction, a plaintiff must show <u>immediate</u> irreparable injury, which is more than serious or substantial, <u>ECRI v. McGraw-Hill, Inc.</u>, 809 F.2d 223,226(3rd.Cir.1987). It would be fundamentally unfair to hold plaintiff to those standards at this time. Further, those transcripts are not transcribed and before the Court, Plaintiff or Defendant's. Defendant's motion to dismiss should be made exclusive upon the facts contained in the complaint's.

5.

Plaintiff than after Plaintiff allegedly threatened the guard and informed Defendant Shower's that he intended to sue the prison over missing property did the entire prison, including Defendant Reilly, conspire to remove the Z-code. Than, in March of 2004, Defendant Reilly (Chief psychologist) changed his vote to reinstate the Z-code. Again, there is the head psychiatrist, Dr. Pollumere, who's handwritten notes were not discernible to the Court who wrote in Plaintiff's file that he had a concern with him being double celled. Dr. Lindemuth's testimony or Reports are not the foundation of Plaintiff's complaint. Additionally, located in the Plaintiff's medical file, it conclusively will prove that he was placed on nitroglycerin only <u>after</u> he was double celled. This caused him to take increasing doses of nitroglycerin which has harmed his preexisting heart condition. While the Court believed that Plaintiff was on nitroglycerin prior to being double celled, that simply is not correct and this can and will be proven through Discovery. During the preliminary injunction hearing, Plaintiff was forced to act pro se, was not permitted to view his medical file and was therefore barred from doing a full cross examination of the witnesses and record. Certainly Plaintiff's internalizing and suppressing his anger of being double celled, which caused him to go on and take nitroglycerin, lopressor and aspirin for his heart is a "serious" medical problem. This will all be proven during the discovery process and trial. Dr. Lindemuth's second Report clearly states this to be true. While there are some discrepancies involving when Plaintiff went on nitroglycerin and how much he was taking, it is his firm averment that he was only prescribed these heart medications and increasing doses <u>after</u> being forced to double cell.

**Defendant's Failure to State Why Z-code was Taken**

Plaintiff objects to the Defendant's misrepresentation of the facts in their Motion to dismiss (page 7), stating that Plaintiff had his Z-code removed due to his peer leader participation and work in the law library as the reason for the removal of his Z-code. As the Court knows, there was no such testimony. No one advised this Court during any hearing why Plaintiff's Z-code was removed. It is factually inaccurate, that this is why Plaintiff lost his Z-code as stated by the Defendant's (page 7). As this Court is aware, according to the Defendant's, Plaintiff lost his Z-code status just 44 days after his release from the hole for the alleged threatening of a guard. They argue in their motion to dismiss that it was his peer leadership and work in the law library that showed "model behavior" that led to the Z-code suspension. That is completely false. Plaintiff only worked as a peer leader <u>after</u> the Z-code was taken away.

### New Cause of Action

This Court gave Plaintiff permission to amend this complaint a second time after he has fully exhausted his pending grievances concerning the retaliatory transfer and damages. Those grievances are still pending in the last stages. Plaintiff plans to amend this complaint, which this Court granted him permission to do during the April 21, 2005 hearing. The Defendant's have reacted extremely slow in responding to those grievances; however Plaintiff intends to amend this Action as this Honorable Court granted.

**CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests this Honorable Court to deny the Defendant's motion to dismiss and order them to file an Answer within ten (10) days; and further, consistent with its prior Order, allow Plaintiff to amend this complaint a second time.

Because Plaintiff has exhausted all available remedies provided to him by SCI-Albion, as the attached exhibit proves, and because Dr. Lindemuth is not the sole person involved in the Z-code process (in fact is not even involved in it), Plaintiff asserts that his complaint and amended complaint show some possibility of success and the motion to dismiss should be denied.

Date: 6/27/05

Respectfully submitted,

Anthony DeFranco CZ-3518
SCI-Smithfield
P.O. Box 999, 1120 Pike St.
Huntingdon, Pa. 16652

SIGNED UNDER PENALTY OF PERJURY.

CERTIFICATE OF SERVICE
Service was made by US First
Class Mail to the Attorney
General's Office, 564 Forbes Ave.,
Pittsburgh, Pa. 15219, this date.

# FORM OF AFFIDAVIT

**COMMONWEALTH OF PENNSYLVANIA**   )
                                    )   SS
**COUNTY OF ERIE**                   )

     Before me the subscriber personally appeared **Jo Anne R. Bickel**, a Commissioned Pennsylvania Notary Public, to me known, or satisfactorily proven to be, who being duly sworn according to law, doth depose and say that she performed Notary Service for Anthony DeFranco, #DZ-3518 on the following dates:

| | |
|---|---|
| 08/25/02 | Inmate Grievance – Camp Hill |
| 12/18/02 | Grievance |
| 01/28/04 | Statement to Dr. Beard |
| 03/23/04 | Inmate Grievance – Camp Hill, dated 3-23-04 |

     These dates and items are taken from the Official Notarial Register.

     And further deponent sayeth not.

_JoAnne R. Bickel_ (signature)
Jo Anne R. Bickel

_May 3, 2005_
(Date)

**Sworn and Subscribed before me, a Notary Public of this Commonwealth**

On this __3__ day of __May__, 2005 A.D.

_Margaret A. Roward_ (signature)

> Notarial Seal
> Margaret A. Roward, Notary Public
> Conneaut Twp., Erie County
> My Commission Expires July 12, 2006

My Commission expires on the __July 12 M.R.__ day of __July__ 20 __06__.