IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DEFRANCO, | ) |
| | ) |
|       **Plaintiff** | ) |
| | ) |
|     v. | ) Civil Action No. 04-230 |
| | ) Erie |
| WILLIAM WOLFE, STEVE REILLY, | ) Judge Cohill |
| DENNIS BUNNER, ROD SHOWERS, | ) Magistrate Judge Baxter |
| JUDY JACKSON, DR. JOHN DOE, | ) |
| JANE DOE | ) |
| | ) |
|       **Defendants.** | ) |

**REPLY BRIEF TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**I. PLAINTIFF HAS FAILED TO STATE AN EIGHTH AMENDMENT CLAIM**

Pursuant to the protections under the Eighth Amendment of the Constitution, prison officials must ensure that inmates receive adequate food, clothing, shelter, and, for purposes of the complaint before the Court, medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In order to assert a constitutional violation in the form of a denial of medical care, Plaintiff must show two elements: 1) that he was suffering from a "serious" medical need; and 2) that prison officials were "deliberately indifferent" to that serious medical need. Id.

**A. Plaintiff cannot possibly show deliberate indifference**

As briefed in the Defendants' Motion to Dismiss, Plaintiff has not demonstrated a medical need that is objectively "sufficiently serious". Even assuming that Plaintiff did establish a serious medical need, he still fails to state a claim. The "deliberate indifference" element requires Plaintiff to demonstrate that a defendant's actions constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-106. "Deliberate indifference may be found where defendants intentionally denied or

delayed access to medical care, or where they intentionally interfered with the treatment once it was prescribed." Report and Recommendation, Hayden v. Cerami, Civ. A. 03-11 Erie, filed April 13, 2005, (*quoting* Estelle, 429 U.S. at 105-106). "[W]hile an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere." Id. (emphasis original).

**B. Plaintiff admits receiving continuous medical treatment**

It is beyond dispute that Plaintiff received medical treatment while incarcerated at the State Correctional Institution at Albion (SCI-Albion). As a matter of fact, it was during his therapy sessions with Dr. Angela Lindemuth that Plaintiff actively courted her to write the letters recommending a single cell. Further, within the complaint itself, Plaintiff freely admits continuous medical treatment throughout his confinement with the Department of Corrections. See, e.g. ¶¶ 14 -16 (Plaintiff received therapy and medicine while at SCI-Pittsburgh); ¶ 17 (seen by psychologist Defendant Reilly upon arrival at SCI-Albion); ¶ 20 (began therapy and medicine treatment with Dr. Lindemuth); ¶ 30 (Plaintiff cites Dr. Lindemuth as his treating psychiatrist); ¶ 33 (Plaintiff describes Dr. Lindemuth as "the prison psychiatrist and plaintiff's treating doctor"); ¶ 34 (Plaintiff admits that he was referred by his psychiatrist to, and actually seen by, the prison psychology department "on a number of occasions"); ¶ 35 (Plaintiff was seen by the medical department and given medication following his "panic attack" in his cell); ¶ 37 (Plaintiff prescribed an aspirin a day, Lopressor, and "nitro pills" for his heart by the prison doctor); ¶ 39 (Plaintiff given an echo-cardiogram in January of 2003).

**C. Plaintiff does not get to choose his manner of treatment**

What Plaintiff fails to recognize is the fact that his complaint is one over his preferred course of treatment, as opposed to an unconstitutional denial of treatment. The right to be free from cruel and unusual punishment does not include the right to treatment of one's choice. <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n.18 (3d Cir. 1992)(an inmate's disagreement with prison personnel over the exercise of medical judgment does not include the right to the treatment of one's choice); <u>Monmouth County Correctional Institute Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987)("Mere disagreements as to the proper medical treatment [does not] support a claim of an eighth amendment violation.").

**D. Plaintiff merely disagrees with Defendants Reilly and Bunner**

The essence of any claim against Defendant Reilly and Defendant Bunner is practically best described as disagreement over their respective methods of treatment. Within the complaint, Plaintiff identifies both defendants as prison psychologists. As described above, Plaintiff was treated by both Defendant Reilly and Defendant Bunner during his time at SCI-Albion. Complaint, ¶¶ 17 and 34. He does not suggest that either of these two refused to provide treatment. In the closest attempt to actually assert a claim against these two, Plaintiff merely asserts that both Defendants failed to take any action on his behalf, by essentially ignoring the letter recommending a single cell written by Dr. Lindemuth. <u>See</u> Complaint, ¶ 48. As noted above, Plaintiff does not raise a constitutional claim by merely asserting disagreement over his method of treatment. <u>Young</u>, 960 F.2d at 358 n. 18.

**II. PLAINTIFF'S AMENDED CLAIMS OF "CIVIL RIGHTS CONSPIRACY"**

Plaintiff raises additional claims with his amended complaint that are barred by the statute of limitations. Plaintiff's original complaint, dated August 10, 2004, was received by the Clerk of Courts on August 26, 2004. On March 23, 2005, permission was granted for Plaintiff to

3

supplement and amend his complaint. In so doing Plaintiff adds various allegations for the first time that occurred more than two years prior to the date of his original complaint. Accordingly, these new claims are barred by the statute of limitations.

In ¶¶ 52 – 55, Plaintiff avers retaliation complaints against Defendants Showers in the form of some kind of threat made to Plaintiff. In placing this activity within a particular timeframe, Plaintiff explains that the alleged threat by Defendant Showers occurred immediately after a request that he made to Major Gates. Amended complaint, ¶ 54. That particular request, attached as Exhibit B to the amended complaint, was written by Plaintiff on May 7, 2002. Amend. Ex. B. Plaintiff also bracketed the period of time in which Defendant Showers made the alleged threat as occurring before he filed a grievance regarding the loss of his shoes. Amended complaint, ¶ 55. That particular grievance, attached as Exhibit C to the amended complaint, was written by Plaintiff on May 16, 2002. Amend. Ex. C.

In ¶¶ 56 – 59, Plaintiff further alleges that he received retaliatory misconducts during the summer of 2002. Without associating the allegation of ¶ 56 with a particular date, Plaintiff describes a situation in which he received a threat from two individuals not named as defendants. Plaintiff does, however, provide a chronological frame of reference for these complaints in ¶ 57, when he alleged that he pleaded with Defendant Barr to move him to a different housing unit, to which Defendant Barr responded, "No". Amend. Complaint, ¶ 57. Plaintiff included a copy of the document in which Defendant Barr did respond to his 'pleas', which was dated July 10, 2002. Amend. Ex. D. In ¶ 59, Plaintiff alleges that he received discipline following a false misconduct report.1  Amend. Complaint, ¶ 59. While Plaintiff was serving his disciplinary

---

1 While not specifically identified as such within the complaint, this misconduct appears to be the misconduct report A297960, dated July 8, 2002. *See* Exhibit B of the Jan. 28, 2005

custody time, he corresponded with Defendant Barr over the aforementioned loss of his property. Id. Defendant responded to Plaintiff on July 31, 2002. Amend. Complaint, Ex. E.

A two year statute of limitations applies to §1983 claims brought in Pennsylvania. Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985), *cert. denied*, 474 U.S. 950 (1985); 42 Pa.Cons.Ann. §5529. All allegations contained in ¶¶ 52 – 59 are barred by the statute of limitations, as they occurred more than two years prior to the complaint. As such, these claims should be dismissed.

### III. LACK OF PERSONAL INVOLVEMENT OF BEARD

Plaintiff includes Defendant Beard in his complaint by virtue of the fact that he sent Defendant Beard a letter and did not receive a response. Amend. Complaint, ¶ 49. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely upon the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976)). To survive a motion to dismiss, Plaintiff must allege with "appropriate particularity" that the defendant directly participated in, or had knowledge of and acquiesced in, the alleged wrongs. See Rode, 845 F.2d at 1207. Plaintiff's mere assertion that he sent correspondence to Defendant Beard does not suffice. Allowing Plaintiff to satisfy the "appropriate particularity" allegation requirement simply by asserting that he sent correspondence to the defendants "would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by

---

Plaintiff's Appendix to Objections to the Report and Recommendation (Doc # 46). In that document, Plaintiff refers to this incident as "a retaliatory misconduct while Plaintiff was still in

sending that official a letter." See Bullock v. Horn, 2000 WL 1839171 (M.D.Pa., Oct. 31, 2000).

## IV. EXHAUSTION

Plaintiff made several objections to the Motion to Dismiss as it pertained to the requirement to exhaust administrative remedies pursuant to the Prison Litigation Reform Act.

### A. Statement from notary speaks for itself

With his response to the Motion to Dismiss, Plaintiff attaches a statement from a notary in an attempt to demonstrate that he *properly filed* grievances. That document speaks for itself, and what it demonstrates is that on the particular dates listed, Plaintiff signed a document in front of the notary. There is no indication what these documents are, nor is there an indication what Plaintiff did with the documents after the notary performed services. The notary does not indicate within that form that she accepted the grievances presented on behalf of prison or even that presentment of the documents to her satisfied any type of filing requirement. It is Plaintiff's responsibility to file his grievances.

### B. Legally impossible for August, 2002, grievance to absolve him of PLRA requirements

It is legally impossible for the notary's statement to even establish that Plaintiff attempted to exhaust. The first grievance listed is dated August 25, 2002. This date is important because this grievance cannot possibly have involved the issue of deliberate indifference. This grievance *pre-dates* Dr. Lindemuth's first letter recommending single cell status. See Appendix 3 to Plaintiff's Appendix and Exhibits (Doc. # 22). Dr. Lindemuth's letter of recommendation to the Z-code committee was dated September 23, 2002. Id. Plaintiff's allegations of deliberate indifference is rooted on the premise that the committee's refusal to provide Plaintiff a single cell was contrary to the Dr. Lindemuth's "diagnosis" that Plaintiff required a single cell

---

a single cell", describing the misconduct report in the same manner as in the complaint. Id.

(assuming *arguendo* that Plaintiff's construct of his legal claim even states a claim upon which relief can be granted.) As such, it is legally impossible for a grievance to complain about the prison staff's refusal to provide the sought-after medical treatment *before* the so-called diagnosis was ever made.

**C. In explaining away exhaustion, Plaintiff defeats own claim**

Obviously, what occurred in this case is that Plaintiff actively courted Dr. Lindemuth's assistance (in the form of her recommendation) *after* he was denied his request for a single cell, and then recasts the sequence as one in which the denial occurred in spite of Dr. Lindemuth's recommendation, thereby constituting deliberate indifference. Plaintiff cannot escape the following chronology, Plaintiff learned that his request for a single cell was denied on August 10, 2002 (see p. 2 of Plaintiff's Response to the Motion to Dismiss, Doc. # 97), Plaintiff presents a grievance form to the notary on August 25, 2002 (see attachment to Plaintiff's Response to the Motion to Dismiss, Doc. # 97), on September 23, 2002, Dr. Lindemuth writes a letter recommending a single cell (see Plaintiff's Appendix and Exhibits, Doc. # 22), Plaintiff signs the original complaint on August 10, 2004, averring that the 2002 denial of his request for a single cell constituted deliberate indifference because it was contrary to Dr. Lindemuth's recommendation (Doc. #3).

**D. Plaintiff's insurmountable procedural default on December, 2002, grievance**

As was briefed previously, the Plaintiff is required to administratively exhaust issues raised in a civil rights complaint before bringing suit. It has been determined by the Third Circuit that the inmate grievance system, DC-ADM 804, is an adequate administrative remedy for the purposes of satisfying the Prison Litigation Reform Act. See Booth v. Churner, 206 F.3d 289, 293 (3d Cir. 1997), aff'd 532 U.S. 731 (2001). The DC-ADM 804 grievance system

7

consists of three stages.

First, the prisoner is required to timely submit a written grievance for review by the facility or regional grievance coordinator, who responds in writing. A timely filing is one made within 15 days of the alleged occurrence giving rise to the grievance. Second, the prisoner is required to timely submit a written appeal to the facility manager, and again receives a written response. Finally, the prisoner is required to submit a timely appeal to the central office review committee, and will receive a final determination in writing. See Booth, 206 F.3d at 293, n.2. Regardless of the disposition of these appeals, it is only after completing the process in its entirety that the prisoner can commence a §1983 action.

The exhaustion requirement under the PLRA carries with it a procedural default component. Spruill v. Gillis, 372 F.3d 218 (3d Cir., June 18, 2004). Considering the PLRA's legislative history, the Third Circuit noted Congress' three interrelated objectives with the PLRA: 1) to return control of the inmate grievance process to prison administration, 2) to foster the development of an administrative record, and 3) to reduce the burden on federal courts by erecting barriers to frivolous lawsuits. Id. To that end, procedural default is measured by the "law" of the state prison grievance system, in this case the Grievance System Policy, DC-ADM 804. Id.

The grievance Plaintiff suggests was filed on December 18, 2002, ostensibly complaining about the unconstitutional denial of medical treatment (in the form of not providing a single cell), was 'filed' four months after the date Plaintiff cites as the date in which he learned that he was denied a single cell. As such, it was not timely filed, and Plaintiff cannot rely on that attempt to grieve as an attempt to satisfy the exhaustion requirement. The December 18, 2002, grievance is one in which Plaintiff insurmountably procedurally defaulted.

8

**E. Objection over grievance grid**

Plaintiff objects to the consideration of the "grievance grid" by the Court. In order to assist the Court, attached is a copy of a signed declaration from the Office of Inmate Grievances and Appeals. This document is presented to assist the Court in deciding the legal question as to whether Plaintiff satisfied the requirements of the PLRA. In light of the fact that the very heart of the issue of exhaustion is the steps taken by Plaintiff as part of the grievance process, the Court is permitted to consider indisputably authentic documents related to those grievances without converting the motion to one of summary judgment. Spruill, 372 F.3d 218, 223 (3d Cir. 2004).

**V. RELIEF REQUESTED**

Based upon the foregoing, the Defendants respectfully request that the Motion to Dismiss be granted.

          Respectfully submitted:

          Thomas W. Corbett, Jr.,
          Attorney General

By:   \s\ Christian D. Bareford
      CHRISTIAN D. BAREFORD
      Deputy Attorney General
      PA. I.D. No. 83982

      Susan J. Forney
      Chief Deputy Attorney General
      Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date: July 8, 2005