IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO,<br>Plaintiff,<br><br>v.<br><br>WILLIAM WOLFE, et al.,<br>Defendants. | )<br>)  No. CA-04-230-ERIE<br>)  Magistrate Judge Baxter<br>)  District Judge Cohill<br>)<br>) |

PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S MOTION TO DISMISS

OBJECTION: MOTION TO STRIKE

Defendant's were given a forty-five (45) day extension to file their Response (by June 20, 2005). The Defendant's did file their Response, motion to dismiss. Plaintiff filed a Reply. The Defendant's have now filed a second motion to dismiss, under the guise of a "REPLY BRIEF". Plaintiff Objects and asks the Court to strike it. The Defendant's did not seek leave to file this and it should not be considered. Plaintiff thoroughly searched the local rules and found nothing giving the Defendant's the authority to file a second or "reply brief". If the Court is inclined to accept it, Plaintiff asserts as follows:

Defendant's Motion to dismiss Amended Complaint

The Defendant's have asked the Court to dismiss only Plaintiff's "Amended Complaint", they have not asked the Court to dismiss the Complaint itself. Therefore, at this juncture, they have waived that. Plaintiff asks the Court not to dismiss the Amended Complaint as it bears directly upon the events of the Defendant's state of mind.

DELIBERATE INDIFFERENCE

Defendant's argue that Plaintiff cannot show deliberate indifference, even if he has shown a serious medical need (Def.'s Reply

Br., page 1). What the Defendant's have failed to do is state why they took the z-code away from Plaintiff 44 days after his release from the hole for the alleged threatening of the guard. They freely admit that Plaintiff was z-code prior to this incident but that it was removed for "unknown reasons". A z-code is only given to inmates who require it due to mental health issue's, assaultiveness, sexual predator and so forth. Plaintiff was a z-code for all the years at Albion up until he was alleged to threaten the guard. The question becomes, why was his z-code lifted if he did require it previous to that incident? Surely, threatening a staff member does not constitute "significant progress" as to warrant the lifting of a previously medically required z-code. Plaintiff had subpoenaed his inmate file for the preliminary injunction hearing (as the Court will recall) but attorney Bareford advised the counselor not to bring it claiming the subpoena was improperly served, even though the file was under the counselor's direct control. Contained inside the file are the "vote sheets" done on Plaintiff each year for the medically required z-code. Those vote sheets would conclusively show this Court that every staff member who was involved in the voting process, voted that Plaintiff needed to remain z-coded, including the prison psychologist, Defendant Reilly. Only after the threatening of the guard incident did _every_ person involved in the vote process change, to vote "no", that Plaintiff did not need the z-code. Without question this was done to inflict pain and further punishment. Plaintiff was given nothing in the form of medical care in regards to his need for the z-code (except having his preexisiting heart condition worsened to the point that he required numerous medications). The Defendant's want the Court to believe that this z-

2.

code is simply something that Plaintiff "wants"---but that is not the case. It is something he "needs", "requires", as that is why the Defendant's gave him the z-code to begin with. Plaintiff asks the Court to take notice of the record of the T.R.O. hearing, held on October 22, 2004, where Defendant Barr spoke freely saying that "space" was partly the reason for the z-code suspension; the Court cut him off stating that "space" is not a reason (Trans. of TRO). What a person first states is usually close to the truth. In accordance with Estelle v. Gamble, 429 U.S. 97, 104 (1978), Plaintiff submits that he has shown at a minimum, some possibility of success.

PLAINTIFF DENIES RECEIVING CONTINUOUS MEDICAL TREATMENT

Once again the Defendant's have misrepresented the facts and allegations outlined in Plaintiff's Complaint. The Defendant's contend that Plaintiff admits to receiving continuous medical treatment (Def.'s Reply Br., page 2 & 3), and that is completely false. A reading of Plaintiff's Complaint, ¶34, Plaintiff states that the doctor ordered psychotherapy (continued counseling) with the psychology department (Defendant's Reilly and Bunner) but that the Defendant's had only seen Plaintiff once than discontinued seeing him until ordered to by the doctor. They had not provided the psychotherapy as prescribed by the doctor. In fact, attached to Plaintiff's Complaint are numerous requests and the Defendant's replies that they did not have time to see him. Even Defendant Reilly, the Chief Psychologist, misinformed Plaintiff on how he could receive his z-code back (by staying misconduct free and getting a level II [low custody level]). This was complete false information. See, Complaint, Ex. "1". And Ex.'s 11 & 12. It is not that Plaintiff disagrees with treatment he received from the

3.

psychologist's, it is that he was being mislead and not seen by them. This certainly does not amount to "continuous medical treatment." Both Defendants Reilly and Bunner refused to provide treatment. See Complaint, ¶34.

## STATUE OF LIMITATIONS

Plaintiff filed a notarized grievance on August 25, 2002 (attached to Complaint). Plaintiff was informed about losing his medically required z-code on August 15, 2002. He was not forced to double cell until August 19, 2002. This is an important date as this is the time when he knew and was made aware of the claimed injury(s). Prior to filing this notarized grievance, Plaintiff had Dr. Lindemuth read it and the doctor agreed with its content. The Court will recall Plaintiff asking the doctor during the preliminary injunction hearing whether she in fact read (and agreed) with the grievance and her answer was "yes". Even the grievance form states that Dr. Lindemuth read the grievance and states that she agreed with all diagnosis. Please see Complaint, grievance filed on August 25, 2002. Clearly, the Defendant's were put on notice by this grievance. Dr. Lindemuth did not write the first Report until September 22, 2002, however, by virtue of this grievance, the Defendant's had actual knowledge of her opinion.

In Plaintiff's Complaint he stated that he had his z-code removed by Defendant Showers (and all Defendant's) as further punishment; and threats (e.g. of transfer): see form portion of Complaint. Sometime in the summer of 2002, while Plaintiff was housed on Defendant Showers unit, he informed Showers that he intended to sue if his property was not returned. Defendant Showers threatened him by saying words to the effect, "we know how to deal with inmates who sue...". Plaintiff did

receive retaliatory misconducts and threats by other staff at the behest of Showers. Plaintiff was more specific in his amended complaint. What the Defendant's are over-looking is the that Plaintiff did not become aware that Defendant Showers actually began the z-code removal on him until August 15, 2002 or shortly thereafter when he was informed by his counselor that the z-code removal began with Showers and his unit. No specific date was ever given to Plaintiff. Under federal law, a §1983 claim accrues when plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action, <u>Dreary v. Three unnamed Police Officers</u>, 746, F.2d 185, 193 (3rd Cir.1984). It is clear that Plaintiff did not become aware of the loss of his z-code until at least August 15, 2002, and Defendant Showers involvement shortly thereafter. For that reason, this claimed injury should not be barred by the statue of limitations, nor should Defendant Showers be excused for his comments and, indeed, his retaliatory actions in beginning the z-code removal on Plaintiff.

DEFENDANT BEARD'S INVOLVEMENT

The Defendant's request that Defendant Beard, Secretary of the Department of Corrections, be removed as a Defendant. They argue that just because Plaintiff sent him a letter shouldn't make him a Defendant. As the Court is aware, Plaintiff sent Defendant Beard a three (3) page notarized letter outlining the egregious medical care, threats and lack of response to grievances he filed. He begged Defendant Beard for help and asked that he not allow a retaliatory transfer to happen. As the Secretary of Corrections, he has a <u>duty</u> to protect inmates and to make sure staff are doing their jobs. The Defendant's do not argue that Plaintiff sent Defendant Beard this letter for help. See Complaint,

Ex. 10--the letter to Defendant Beard and certified mailing receipt from SCI-Albion. This letter for help does satisfy the "appropriate particularity" allegation stated in Rode v. Dellarciprete, 845 F.2d 1195,1207 (3rdCir.1976). Defendant Beard received a letter for help but he did nothing. As the Secretary he cannot receive such a letter and simply say, "duly noted" then do nothing. Based upon this notarized letter and certificate of mailing from Albion, Defendant Beard should not be dismissed as a Defendant.

## EXHAUSTION

As stated supra, Plaintiff filed a grievance on August 25, 2002 that was notarized. This grievance provided the Defendants notice of Doctor Lindemuth's opinion in regards to the diagnosis as worded inside that grievance (the grievance itself states that the doctor read the grievance and concurred with it). That grievance gave the Defendants a diagnosis of Dr. Lindemuth and Dr. Pizzat. They actively choose to ignore the grievance and not respond, rending the grievance process "unavailable" to Plaintiff. Plaintiff gave the Defendants a few months to respond (sending some requests of inquiry in between but receiving no response). Then, on December 18, 2002, after receiving no reply regarding the August grievance, filed a second grievance. This time Plaintiff was provided with a copy of Dr. Lindemuth's Report to the z-code committee, dated September 23, 2002. He was provided a copy of this letter in or about late November, 2002. The Court will note at the beginning of this December grievance that Plaintiff states he is filing this grievance <u>again</u>. And goes on to attach Dr. Lindemuth's Report; Dr. Pizzat's Report and unresponded to requests. This was

6.

notarized as well.  Because Plaintiff was not provided a copy of Dr. Lindemuth's September 23, 2002 Report until approx. late November, 2002, it would have been impossible to provide that document to the August, 2002 grievance.  But Plaintiff still placed the Defendants on notice in the August grievance that Dr. Lindemuth read it and agreed with it.  This amounted to deliberate indifference.  The August 25, 2002 grievance speaks for itself.  It clearly states that Dr. Lindemuth read it, concurred with it and had a recommendation that Plaintiff should not be double celled (See August 25, 2002 grievance).  It would be impossible for Plaintiff to attach any Report by Dr. Lindemuth that he did not receive until approx. late November, 2002.  It was only then that he filed a second notarized grievance, attaching Dr. Lindemuth's Report, dated December 18, 2002.  The Defendant's choose not to respond to the August 25, 2002 grievance and they again choose not to respond to the December 18, 2002 grievance.  Unless they respond, giving Plaintiff a "grievance number", he is unable to appeal or take any further step in the grievance process.  See Defendant's attachment to their "Reply Brief", The DOC's DC-ADM 804, explaining the rules for filing grievance's, page 7, section "C"(1)(a): "The Initial Review decision from the Grievance Officer must be received by the inmate before any appeal (can be filed)..".  By not responding to the grievance's, the Defendants made any appeal impossible: this is the rule to their Policy.  Plaintiff has never asserted he filed appeals to those August and December, 2002 grievances.  He could not appeal them as they were ignored by the Defendants.  It was essentially a waste of time for the Defendants to get a statement from the Secretary's Office stating no appeal was filed involving those grievances.  An inmate cannot do anything further

7.

in the grievance process until he receives a number and response. He was denied this, as he has stated from the beginning.

The Defendant's argue that the December 18, 2002 grievance is the one Plaintiff procedurally defaulted as it was filed four months after the single cell was taken away. However, they miss the point. Plaintiff did file a timely grievance on August 25, 2002, at which time he placed the Defendants on notice of Dr. Lindemuth's concurrence with it's diagnosis; and Dr. Pizzat's. They did not respond and Plaintiff simply filed the grievance "again" (as stated in his December 18, 2002 grievance), this time he had an actual Report written by Dr. Lindemuth and attached it and other supporting documents. Plaintiff gave the Defendants a second chance to resolve the matter administratively. They were the one's who ignored these notarized grievances and attempt to bar Plaintiff from pursuing the issue. Given the evidence, including the notarized grievance's; the Notary's affidavit and Dr. Lindemuth's very own testimony at the preliminary injunction hearing, admitting to reading (and agreeing with) the August 25, 2002 grievance, Plaintiff submits that he has properly filed and exhausted the grievance process that was <u>made</u> <u>available</u> to him at Albion. If the grievance officer fails to respond (just as if an inmate were denied a grievance form) they are unable to do anything further, rending the grievance process "unavailable" to him or her.

Based upon the evidence, Plaintiff submits that he has satisfied the PLRA requirements as outlined in his Response to the Motion to Dismiss and this brief.

PLAINTIFF INCORPORATES BY THE REFERENCE HIS INITIAL RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS AS IF FULLY STATED HEREIN.

## ALLEGATIONS IN COMPLAINT SHOULD BE TAKEN AS TRUE

All well pled allegations in the complaint must be taken as true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984): Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Plaintiff has made specific allegations in his complaint that he has filed grievances that the Defendants have failed to respond to, purposely rendering the grievance process unavailable to him. He has also supported those allegations with evidence in the form of affidavits; an Affidavit by the Notary and Dr. Lindemuth's testimony. Therefore, Plaintiff submits that this Honorable Court should find that Plaintiff in fact filed those grievances.

## CIVIL RIGHTS CONSPIRACY

Again, regarding the civil rights conspiracy, it is Plaintiffs averment that Defendant Barr and agents actively tampered with Doctor Lindemuth after this Court granted Plaintiff the TRO. (See Dr. Lindemuth's testimony at Preliminary Injunction Hearing)---the Doctor admitted that Defendant Barr directed her into a room and admonished her for writing reports on inmates, saying that she caused the federal court to come into the prison and dictate what they should do; that it never happened previously and that her actions set a dangerous precedent for other inmates to follow; that it was not to happen again. This was Dr. Lindemuth's testimony. Obviously Defendant Barr's action were unethical and illegal. Done only to defeat Plaintiffs lawsuit. After the preliminary injunction hearing, Dr. Lindemuth read this Court's interpretation of her testimony in the Report and Recommendation and adamantly disagreed with how the Court interpreted her testimony. Also, it was learned that Defendant Barr actually supplied information for the doctor to testify to, e.g. bed space. The doctor would not know about z-code bed spacing, nor would she care. Also, the doctor admitted

that it was Defendant Barr who wrote out the affidavit for her to sign, that she did not participate in that. Plaintiff submitted to the Court a writ of supersedas, attaching a notarized statement about what the doctor admitted to. Additionally, Dr. Richard J. DeFranco telephoned Dr. Lindemuth wherein she admitted the same to him. Attached to the writ of supersedas (DOC. #50) and the amended objections (DOC. # 51) is the signed affidavit of Dr. Richard DeFranco. Based upon this new information and in light of Dr. Lindemuth's very own testimony admitting what Defendant Barr did, it was asked that a short evidentiary hearing be held to clear this up. The Court should hear Dr. Lindemuth and give the witness a chance to clear up the error's she admits to making in her testimony, and what the Defendant's have done, said or implied.

WHEREFORE, it is respectfully asked that this Court deny the Defendants Motion to dismiss, based from Plaintiffs Initial Response and this Reply. It is further requested that the Court hold a short evidentiary hearing to allow Dr. Lindemuth to clear her erroneous testimony and explain exactly what has transpired.

Respectfully submitted,

Date: July 12, 2005

Anthony DeFranco CZ-3518
SCI-Smithfield
P.O. Box 999, 1120 Pike St.
Huntingdon, Pa. 16652

SIGNED UNDER PENALTY OF PERJURY.

CERTIFICATE OF SERVICE
Service was made by US First Class Mail to the Attorney General's Office, 564 Forbes Ave., Pittsburgh, Pa. 15219, this date.