## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,         :

       Plaintiff,      :  Case No.:C.A.-04-230-ERIE

          vs.        :  MAGISTRATE JUDGE BAXTER

WILLIAM WOLFE, et al.,    :  DISTIRCT JUDGE COHILL

       Defendants.   :

_____:

### OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

Plaintiff submits the following Objections to the Chief Magistrate Judge's Report and Recommendation (DOC. #123) and in support brings forth the following:

### STANDARD OF REVIEW

As this Honorable Court is aware, as a threshold matter, if Objections are made to specific portions to the Magistrates Report and Recommendation (hereinafter "R & R"), the Court needs to make a *De Novo* review, which entails the reading of the transcripts. See, *Coolspring Stone, Inc. v. American Life Inc.*, 10 F.3D 144 (3rd Cir.1993); Also *Houston v. Lack*, 108 S.Ct. 2379 (1988); and 28 U.S.C. §636(b)(1).

### CASE HISTORY

The chronological history of this case, while contained in the record, is introduced in the interests of brevity.

1.  On August 10, 2004, the Plaintiff filed the instant civil petition and accompanying request for a preliminary injunction.

2.  On October 22, 2004, Magistrate Judge Baxter conducted a hearing, in which the Plaintiff participated via teleconferencing.

3.  Pursuant to this hearing,  Judge Baxter issued a R & R and recommending that a restraining order issue to prevent the Defendants from transferring the Plaintiff in retaliation for the current litigation (Doc.#11).

4.  On November 2, 2004, this Honorable Court accepted the R & R and issued an Order adopting the recommendation (Doc.# 13).

5.  On December 17, 2004, Judge Baxter conducted a hearing to dispose of the preliminary injunction request by Plaintiff.

6.  Based solely on a sworn affidavit by Defendant Barr, in which he stated that the Plaintiff would not be subject to retalitory transfer, Judge Baxter recinded her prior R & R and lifted the restraining order against the Defendants (Doc.#41, fn.#2).

7.  On Febraury 28, 2005, this Honorable Court, based off of this new R & R, lifted the restraining order (Doc.#62).

8.  One week after the lifting of this restraining order, the Defendants, and namely, Defendant Barr, transferred the Plaintiff to an institution some 300 odd miles from his 'home region prison', SCI Albion.

9.  When the Plaintiff filed a grievance requesting cause for the transfer, the defendants responded that the transfer was commenced due to current litigation (See Exhibit "A").

10.  While housed at the new prison (SCI Smithfield), the treating doctors there based their treatment on the disparaging remarks they made concerning the Plaintiff's current litigation against the Defendants.  This treatment caused Plaintiff severe harm.

11.  After a period of five (5) months, the Plaintiff was permitted to return to SCI Albion in response to his successful grievance appeal (See Exhibits "B & C").

12.  On April 21, 2005, pursuant to Plaintiff's request for a preliminary injunction, Judge Baxter conducted a hearing in which the Plaintiff participated via teleconferencing.

13.  During this hearing, Judge Baxter specifically found that the Defendants violated Plaintiff's 14th amendment rights when they transferred him for the sole purpose of retaliation.  The Judge further stated that once Plaintiff exhausted the grievance process he could amend this complaint (See, transcripts of 4/21/05 hearing).

14.  Further, Judge Baxter admonished Defendant Barr by instructing Unit Manager Skendall to relay a message to him that the Court was disappointed in him for lying to the Court concerning the transfer (See transcripts, Id).

15. The Court concluded that Plaintiff had earned the right to be housed at SCI Albion through his exemplar behavior, but the Court was prohibited from Ordering his return to SCI Albion.

16.  Although a R & R was issued concerning this hearing (Doc.#85), Plaintiff avers that he never received a copy of the Order.  Plaintiff requested that the Court provide him with the name of the signator for the certified mail receipt to enable him to include this person

on the complaint for tampering with the postal system; but to date the Court has not given an answer.

17. As Plaintiff did not receive a copy of the R & R (Doc.#85), he was not able to file timely objections to the same.

18. On August 2, 2005, the Plaintiff was returned to SCI Albion pursuant to his grievance victory.

19. On August 2, 2005, during the transfer process, the regular transfer team, specifically Sgt. Rhoades, made repeated comments to Plaintiff that he would be continually transferred in retaliation for the instant civil action.

20. The Plaintiff immediately filed for a temporary restraining order to prevent another occurrence of retaliatory transfer.

21. On September 2, 2005, a hearing was conducted by Judge Baxter.

22. During the hearing, even after the Plaintiff submitted overwhelming evidence of both the prior transfer, and the threats of the same by the processing transfer team, Judge Baxter concluded that "officers say things like that all the time to keep inmates in line." (See transcript, 9/2/05 hearing). Astoundingly, the Plaintiff has not received any misconducts in several years, and his behavior did not warrant any officer to state threats that would 'keep him in line." These were, however, the same type of threats that resulted in the first retaliatory transfer.

23. This matter now comes before the Court on Objections.

## **ARGUMENT**

To obtain a preliminary injunction, the District Court must consider; 1). the likelihood of success on the merits; 2). the extent of irreparable injury from the alleged misconduct; 3). the extent of harm to the movant; and 4). the effect on public interest. *Fink v. v. Supreme Court of Pennsylvania*, 646 F.Supp. 569, 570 (M.D.Pa. 1986).

While it is well-settled that a petitioner has no federal liberty interest guaranteeing that he remain in a particular prison, *Olim v. Wakinekona*, 461 U.S. 238 247 (1983)---a prison may not transfer a petitioner due to a constitutional protected activity, i.e. filing grievances or lawsuits.

As stated, this comes before the Court for a *De Novo* review. Plaintiff has been previously retaliated against by the DOC for the filing of this lawsuit when Defendant Barr specifically signed an affidavit claiming that there were no such planned transfer (See, Barr's Affidavit and the Magistrate's R & R, Doc.#41,fn.2). Attached hereto, marked Exhibit "A", is the grievance response signed by SCI Albion and initialed by Defendant Barr admitting that Plaintiff was transferred "***due to litigation***". They admitted that they transferred Plaintiff due to litigation, in the face of the affidavit by Defendant Barr, claiming not to have plans to transfer him (*one week after this Court lifted the previous restraining Order to keep Plaintiff at SCI Albion*). Additionally, during the September 2, 2005 T.R.O. hearing before Judge Baxter, Plaintiff informed the Court that the Defendants had sent a subsequent, additional reason to transfer Plaintiff to the staff at SCI Smithfield, and that the "manufactured" additional reason was in his inmate file, where he was seated during the hearing, in his counselor's office---however, the Court did not request to be informed of this other reason that obviously lacked merit as SCI Albion returned Plaintiff 'in spite' of whatever the secret (other) reason was for the transfer

(Judge Baxter stated he could see it during the summary judgment stage—-See, transcript of 9/2/05 hearing). Plaintiff requested that he and the Court be informed of it so that it would preclude the Defendants from attempting to use it as a future reason to transfer him when they had brought him back in spite of it. But, the Defendants did admit they transferred him due to 'litigation' (Ex."A"). The DOC can move any inmate, at any time, so long as it serves a legitimate penologicial reason. In the case *sub judice*, the Defendants admit they transferred him due to litigation. This is violative of his First and Fourteenth Amendment rights. Regarding a preliminary injunction and T.R.O., our Courts have stated that a violation of constitutional rights constitutes "irreparable harm" as a matter of law, such as will justify granting of a preliminary injunction; See, *Cohen v. Coahoma Co.*, 805 F.Supp. 398 (1992); *Stewart v. Rhoades*, 473 F.Supp. 1185 (1979); *Brown v. Calf. Dept. of Trans.*, 321 F.3D 1217 (9th Cir.2003); *Amico v. New castle*, 770 F.2d 1066 (1984).

In *Abu-Jamal v. Price*, 154 F.3D 128 (3rdCir.1998), the Court found that the DOC caused irreparable harm as a result of their investigation and enforcement of rule upon him based on his writings. Like *Abu-Jamal*, Plaintiff was transferred across the state, a very long distance from his family (lost his prison job; was seriously harmed) due to his filing this complaint (writings). This Court should find irreparable harm due to this constitutional violation, and grant a preliminary injunction in the face of the repeated, continued threats of transfer. There is no other way to protect him from these constitiutional violations. Even Judge Baxter found Defendant Barr to be untruthful with the Court when he authorized the retaliatory transfer (See transcript of 4/21/05 hearing; Judge Baxter gave Plaintiff verbal permission to amend and supplement this complaint upon completion of the grievance exhaustion). Judge Baxter even stated that what was done violated Plaintiff's constitutional rights (See Transcripts, 4/21/05).

The threats conveyed to Plaintiff during the transfer process were not meant to keep him in-line—they were threats made by the regular transfer team who are privy to future transfers of inmates.  These same type of threats were made prior to the retaliatory transfer and Plaintiff was indeed transferred unjustly.  He has informed this Court in every filing *before* and since that the Defendants were going to retaliate by transferring him; and they did.  Now that they have returned him, this Court should protect him from furture transfers by issuing a preliminary injunction.

Of interest is the fact that SCI Albion does not have a "block inmate file" (this is a file used by housing guards to keep notes on inmates; that also has other pertinent information) for Plaintiff.  While every other inmate has one, Plaintiff does not (See Exhibit "D", attached, signed by housing officer Porterfield verifying same).  This is indicative of the Defendants not planning on Plaintiff being housed at SCI Albion long.

WHEREFORE, Plaintiff prays this Honorable Court will remand this case back and issue a preliminary injunction, and any other relief the Court sees fit.

Date: October 11, 2005

Respectfully submited,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**CERTIFICATE OF SERVICE**

Service of the foregoing was made
by US First Class Mail this date to
the Attorney General, 564 Forbes Ave.,Pgh., Pa. 15219.

# EXHIBITS

"A"---The Response from the grievance filed by Plaintiff over the retalitory transfer; the Response admits Defendants transferred Plaintff "due to litigation".

"B"---Response letter from D.O.C., stating Plaintiff was on transfer list back to Western Region.

"C"---Letter from SCI Albion Superintendent Brooks, saying Plaintiff was approved for return to SCI Albion

"D"---Request slip from housing unit officer indicating that there is no inmate 'block file' for Plaintiff and that he does not know why.

# EXHIBITS

DC-804
Part 2

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA 17001

**OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE**

GRIEVANCE NO.     112276

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| DeFranco, Anthony   CZ-3518 | SCI Albion | B/B 49 | 3/15/05 |

The following is a summary of my findings regarding your grievance:

Mr. DeFranco has a formal separation in place from Mr. Barr. It is felt that based on pending litigation it is in the best interest of all parties that he not be housed at SCI-Albion. No inmate has the right to determine where he or she will be housed.

Inmate was not available for signature as he is currently at SCI-Smithfield.

RESOLVED:_____     DATE:_____
                    Inmate's Signature

UNRESOLVED:_____     DATE:_____
                    Inmate's Signature

cc:     Original – Ms. McWilliams
        Grievance Officer
        Inmate
        DC-15

*UAB 3-29-05*

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| Ronald J. Bryant, CCPM | *Bryant* | 3/28/05 |

EX. "A"



**PENNSYLVANIA DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PENNSYLVANIA 17001-0598**
**(717) 975-4859**

July 26, 2005

Mr. Anthony DeFranco, CZ-3518
SCI-Smithfield

Dear Mr. DeFranco:

This is in response to your inquiry about the status of the petition for transfer that was submitted on your behalf.

Please be advised, the petition for transfer that was submitted on your behalf has been approved. You will be transferred to an institution in the Western Region. This transfer will take place as soon as bed space becomes available.

Sincerely,

Donald Williamson
By: J. L. Leri

Donald Williamson
Chief of Transfer/Transportation & Records
Bureau of Inmate Services

DW/jfl

Cc:    Superintendent Palakovich, SMI
       Central File

EX. "B"

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778

JUL 2 5 2005

SUBJECT:   **INMATE REQUEST TO SUPERINTENDENT**
                   **RE: TRANSFER**


TO:        Anthony DeFranco
              CZ-3518
              SCI Smithfield


FROM:    Marilyn S. Brooks
              Superintendent

Mr. DeFranco, I received your letter regarding your transfer back to SCI Albion. I verified that your transfer has been approved. You will be transferred according to the schedule for transfers; however, I am not at liberty to discuss those schedule issues with you.

As to your concern over the length of time that it is taking, I can appreciate your concern for your family. Transfers are a lengthy process and I can assure you that no one is purposely impeding your transfer.

MSB/MK/dls

cc:     Unit Manager
          Counselor
          DC-15
          File

EX. "C"

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"**

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   _C.C. Porterfield (Unit Mc.)_

2. Date: _9/4/05_

3. By: (Print Inmate Name and Number)
   _Anthony DeFranco  CZ-3518_
   _Anthony DeFranco_
   Inmate Signature

4. Counselor's Name
   _Mr. Webb_

5. Unit Manager's Name
   _Mr. Stendall_

6. Work Assignment
   _Law Lib._

7. Housing Assignment
   _D/A 31_

8. Subject:  State your request completely but briefly.  Give details.

_C.C. Porterfield ~         On or about Aug. 8, 2005 I asked you to check my block file to be sure the authorization form to have legal material was in my file - after checking my file was not there. I asked you to check again this date (9/4/05) and there is still no file for me, while there is a file for every other inmate on the unit. Can you tell me why there is no file for me?_

9.  Response: (This Section for Staff Response Only)

_NO I CAN NOT EXPLAIN WHY THERE IS NO FILE_

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _PORTERFIELD_    /    _[signature]_    Date _9-4-05_
                          Print                                    Sign

Revised July 2000

EX. "D"