IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISRICT OF PENNSYLVANIA


ANTHONY DeFRANCO,
     Plaintiff


v.                CIVIL ACTION NO. 04-230 ERIE


WILLIAM WOLFE, et al.,
     Defendants



HEARING ON PETITION FOR TEMPORARY RESTRAINING ORDER



Proceedings held before the HONORABLE

SUSAN PARADISE BAXTER, U.S. Magistrate Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Friday, September 2, 2005.




APPEARANCES:
     ANTHONY DeFRANCO, Plaintiff herein, (via Phone),
     appearing Pro Se.

     CHRISTIAN D. BAREFORD, Esquire, Deputy Attorney

General, appearing on behalf of the Defendants.

Ronald J. Bench, RMR - Official Court Reporter

2

1              P R O C E E D I N G S

2

3              (Whereupon, the proceedings began at 11:30 a.m., on

4    Friday, September 2, 2005, in Judge's Chambers.)

5

6              THE COURT:  Good morning.  Do you have Mr. DeFranco

7    there?

8              PRISON COUNSELOR:  Yes, I do.

9              THE COURT:  Is he going to be on a handheld phone or

10   a speakerphone?

11             PRISON COUNSELOR:  Handheld.

12             THE COURT:  Go ahead and give that to him.

13             PRISON COUNSELOR:  Okay, here you go.

14      THE COURT:  Mr. DeFranco?

15      MR. DeFRANCO:  Yes.

16      THE COURT:  This is Magistrate Judge Baxter.  I will

17  call the case now, then we'll get started.  This is DeFranco

18  versus Wolfe, et al., at Civil No. 04-230 Erie.  Here in my

19  chambers in the courthouse, besides myself, I have the staff

20  attorney, Frank Fogl, Esquire, the court reporter, as well as

21  counsel for the defendant, Christian Bareford, Esquire.  And

22  you, Mr. DeFranco, are with us by telephone on a handheld set,

23  as I understand it?

24      MR. DeFRANCO:  Correct.

25      THE COURT:  Okay, we're here on your petition for a

3

1  temporary restraining order that was filed August 9th, I

2  believe.

3      MR. DeFRANCO:  Yes, your Honor.

4      THE COURT:  It was signed on August 9th.  We

5  received it sometime other than that, but anyway.  And we want

6  to get started on that.  It's my understanding that do you know

7  why you were transferred back to Albion?

8            MR. DeFRANCO:  I do not know specifically, your

9    Honor.  I just know I filed a grievance.  I attached it to

10   supplement the information in this case.  You had granted that.

11           THE COURT:  Now, you were at Smithfield?

12           MR. DeFRANCO:  Yes, I was at SCI-Smithfield.

13           THE COURT:  You've been at those two places

14   recently?

15           MR. DeFRANCO:  Yes.

16           THE COURT:  Your restraining order is requesting

17   that I enjoin any transfer of you from Albion, is that correct?

18           MR. DeFRANCO:  That's correct.  Retaliatory

19   transfers.

20           THE COURT:  I have no control over that, I think

21   I've told you this before, where the Department of Corrections

22   transfers you.  That they have a right to transfer you anywhere

23   in their system.  There is case law on that, that the courts

24   will not interfere with that transfer order.  Now, you can

25   complain, of course, that any transfer that is issued is

4

1    retaliatory in nature.  But if we have no retaliatory transfer

2    in front of me, I cannot enjoin any future transfer because

3    they have a right to transfer, are you following me?

4          MR. DeFRANCO:  Yes, your Honor.

5          THE COURT:  If I had a transfer in front of me that

6    you were claiming was retaliatory, I'd be able to look at that.

7    At least in the context of retaliation.

8          MR. DeFRANCO:  Here's the foundation just briefly.

9    You granted a temporary restraining order on Albion --

10         THE COURT:  That was about a year ago.  It was done

11   on Z-code status.  I did not enjoin your transfer, as I recall.

12   I can read it, it's on page five -- in particular, plaintiff

13   has alleged that he has received continued threats from one or

14   more of the defendants.  He will be transferred to another

15   correctional institution far away from his family if he

16   continues to pursue his Z-code status.  The TRO lasted 10 days,

17   and then it dissolves automatically under the federal rules.

18   And then I did not grant a preliminary injunction.

19         MR. DeFRANCO:  You did that based on Mr. Barr's

20   declaration affidavit.  That was a later recommendation based

21   on him telling you there was no planned transfer.

22         THE COURT:  No, I did that because of the court

23   hearing we had.  The court hearing we had and the evidence that

24  was in front of me.  I believed I did not have, that we did not

25  have enough to show the likelihood of success on the merits as

5

1  to Z-code status.  I don't have that file in front of me,

2  unfortunately.  At any rate, none of that matters now.  We're

3  at a new point in time, all right.  We're at a new point in

4  time.  You're coming to me and saying you don't want

5  transferred from Albion for a retaliatory reason, mainly

6  because of Mr. Barr, is that correct?

7       MR. DeFRANCO:  It's not -- well, that was based upon

8  what was conveyed to me by the processing staff when I was

9  being processed out of Smithfield, something to the effect that

10  you're going to take a bus ride, I'm going to be moved

11  continually, is what it was meant to imply.

12       THE COURT:  You know what, I have no control over

13  that.

14       MR. DeFRANCO:  As the court knows, I submitted, I

15  forget which documents are attached -- the reason they moved

16  me, your Honor, was based upon litigation.

17       THE COURT:  It was based upon a formal separation

18  request from Mr. Barr, is that not correct?

19      MR. DeFRANCO:  It says Mr. DeFranco has a formal

20  separation in place from Mr. Barr, that is based on pending

21  litigation.

22      THE COURT:  I have no reason that it was based on

23  pending litigation, as in the best interests of all parties

24  that he not be housed at SCI-Albion.

25      MR. DeFRANCO:   Correct.


6


1      THE COURT:  That's correct.  There is a formal

2  separation with Mr. Barr.

3      MR. DeFRANCO:  Right.  And he gave you a

4  declaration.  If you look at that, based on his declaration,

5  that there was no planned transfer for me.  Eight days after

6  Judge Cohill adopted the recommendation, I was transferred to

7  SCI-Smithfield.  And during our April 21st hearing at

8  Smithfield, Mr. Skindell was on the phone, he sent a message to

9  Mr. Barr that you were very disappointed that he basically was

10  not truthful.  And did what he did.

11      THE COURT:  But now you're back at Albion, I'm

12  confused.

13      MR. DeFRANCO:  Now I'm back at Albion.

14      THE COURT:  That's correct.  Somehow or other Mr.

15  Barr's separation request didn't last very long?

16      MR. DeFRANCO:  Right.  While I was gone I was hurt,

17  that's all part of my second amended complaint.  It creates

18  numerous hardships, your Honor.

19      THE COURT:  Understand, Mr. DeFranco, you are in

20  jail.

21      MR. DeFRANCO:  I understand that.

22      THE COURT:  We cannot take you anyplace you wish.

23  We cannot say you'll be there, you'll be there for a long

24  time -- it's not in the court's power to do that.  The

25  Department of Corrections knows how much it cost to ship you

7

1  around, they understand all those things much better than the

2  court system does.  They do what they believe is best for

3  everyone involved.  I don't know what goes into that thought

4  process.  But you are now back at Albion, somewhere you didn't

5  feel like you would ever be when I talked to you the last time

6  because you felt that Mr. Barr would sabotage any return to

7  Albion.  In fact, that didn't happen.  So I cannot promise that

8  you will not be transferred again.  I can't do that, number

9  one.  Number two, I can't interfere with the Department of

10  Corrections in its abilities to transfer a prisoner.  And,

11  number three, I cannot issue an injunction on something that is

12  speculatory and that I have nothing substantial to base it on.

13  I don't know what else to say to you.  I'm going to recommend

14  that the temporary restraining order be denied on all those

15  bases.  All those bases are based on the law of this circuit.

16  I can't go against those tenants of the law.

17        MR. DeFRANCO:  I understand that, your Honor.  I

18  think that there is enough evidence to show you I've been

19  retaliated against.  I was harmed, it was done due to

20  litigation.  Furthermore, my file, somewhere in my file, Albion

21  set up an additional reason, I guess it may have passed federal

22  scrutiny, I'm not sure, for transferring me out.  In addition

23  to Mr. Barr, which I don't have in front of me, it's in my file

24  somewhere.  My counselor wouldn't give me the whole file.

25        THE COURT:  Do you have any reason to believe, other

8

1    than they said you'll be taking bus rides, that you are about

2    to be transferred again?

3        MR. DeFRANCO:  I have reason to believe, they

4    manufactured another reason besides the one we have in front of

5    us, that Mr. Barr placed his formal separation based on

6    litigation.  That Albion sent Smithfield another reason, it was

7    manufactured, I believe, to pass federal scrutiny --

8        THE COURT:  But none of that matters now.  Now I'm

9    asking you, do you have a reason to believe you're going to be

10   separated from -- they sent you back.  So all those reasons are

11   irrelevant.  They sent you back.

12       MR. DeFRANCO:  I understand that.  The point is I

13   keep taking rides when they want me to, you know --

14       THE COURT:  That's part of being in jail.  It's

15   never comfortable, they never want it to be.  But as long as

16   your constitutional rights aren't violated, I'll be weary of

17   that, but I have nothing more to go on.  We have no reason that

18   you're about to be transferred at all.

19       MR. DeFRANCO:  I want to follow the court, are you

20   saying they have not violated my constitutional rights at this

21  point?

22          THE COURT:  We're not on this point.  We're not here

23  on this on your case, we're not at trial.  We're here on a

24  temporary restraining order based on the fact that you don't

25  want to be transferred again for a retaliatory reason.  I have

9

1  nothing to base this on, there's no basis in fact here that you

2  are about to be transferred at all.

3          MR. DeFRANCO:  I told you that was related to me --

4          THE COURT:  You told me they said you'd be having a

5  lot of bus rides.  That doesn't hold up anything for me.  Who

6  was the person that told you that, what authority do they have.

7  I don't know any of those things.  So if you get a transfer

8  order, you can renew this TRO.  If you're claiming it's being

9  done on a retaliatory basis.  But the truth of the matter is if

10  they were retaliating against you to keep you away from Albion,

11  you would not have been sent back.  It's making no sense to me.

12  If Mr. Barr didn't want you there and he had some sort of

13  power, you would not have been transferred back.

14          MR. DeFRANCO:  Why did I leave?

15          THE COURT:  I don't care about that, that's not in

16  front of me.  That's in your case, it's not in front of me now

17  on this TRO, see what I'm saying?

18          MR. DeFRANCO:  Right.

19          THE COURT:  There's no basis in fact that you are

20  about to be transferred out of there because they just sent you

21  back.  All I'm here to decide is are you about to be sent away

22  for a retaliatory purpose.  If there's nothing more than you

23  don't want it to happen in the future, it's speculation, I

24  can't issue a TRO on that basis.

25          MR. DeFRANCO:  I don't believe it's speculation, I


                              10


1  believe it was conveyed during the process of being moved.

2  Although, not high authority, as they were prison guards --

3  it's likely to happen.

4          THE COURT:  That's not enough.  What I need from you

5  is some sort of transfer order.  And if you don't have a

6  transfer order, then anything you say is going to happen is

7  speculation, we just don't know.

8          MR. DeFRANCO:  I could never have a transfer order,

9   I'm not allowed to possess those.

10        THE COURT:  As soon you get information that you're

11   going to be transferred, you have time to file a TRO.

12        MR. DeFRANCO:  They told me the night before, like

13   you get transferred on a Tuesday, Monday night you're sent to

14   pack up your stuff, you're on the bus at 3:30 in the morning

15   Tuesday.  So there's no way for you to know.  In other words,

16   when they do this, they don't tell you in advance, your Honor.

17   Like when it was done to me, I was told to go up to intake at

18   7 o'clock Monday night, there was like 15 guards, they told me

19   I was being transferred --

20        THE COURT:  Mr. DeFranco, do you know how many

21   lawsuits Mr. Barr has against him at Albion by prisoners at

22   Albion?

23        MR. DeFRANCO:  I have no clue.

24        THE COURT:  I don't either, I know it's a lot.  He

25   just does not transfer people around, he doesn't have the


11


1   authority, quite candidly, to transfer people around because

2   they sue him.  So it would be in retaliation for what?

3          MR. DeFRANCO:  I was already moved, I was already

4   transferred due to the litigation.

5          THE COURT:  I don't care about that one, we're on a

6   different one.  Why would he be retaliating against you by

7   transferring you, for what purpose at this point.  Why do you

8   expect that there would be a retaliatory transfer?

9          MR. DeFRANCO:  Based on when I was being processed.

10          THE COURT:  This one guy told you you'd be taking

11   bus rides?

12          MR. DeFRANCO:  Right.

13          THE COURT:  You and I both know COs say lots of

14   things to keep people on their toes, to keep prisoners in line.

15   I have nothing more than that, I'm going to recommend that the

16   TRO be denied.  That does not mean, Mr. DeFranco, that you

17   can't continually move for some sort of relief if something is

18   happening to you.  But I can't do it on the speculatory nature

19   of that comment, all right.

20          MR. DeFRANCO:  Okay.

21          THE COURT:  That's the way it's going to go.  You

22   will see it when I issue -- I'm not going to do it on the

23   record today because I need the case law, we'll just do a quick

24   R & R.

25        MR. DeFRANCO:  I want to ask you something.  I never

12

1  received the report and recommendation for the April 21st

2  hearing.  I got the final order from Judge Cohill.

3        THE COURT:  That is because it was done on the

4  record, was it not.

5        MR. DeFRANCO:  His order was sent by certified mail

6  to Smithfield.

7        THE COURT:  But I did the report and recommendation

8  on the record in our telephone call.  When I do that, he takes

9  the notes, but you don't get a copy of it, it's on the record.

10        MR. DeFRANCO:  You just said that I received it by

11  certified mail your report and recommendation.

12        THE COURT:  Maybe that was a different one.  My

13  courtroom deputy says the final order, that you received it by

14  certified mail.  Was that one of the TROs we did.

15        MR. DeFRANCO:  Preliminary injunction.

16        THE COURT:  I did that R & R on that one, did I not?

17        MR. BAREFORD:  If I could be heard, your Honor.

18        THE COURT:  This is Attorney Bareford.

19        MR. BAREFORD:  What it appears, just according to

20    document number 108, which is a motion to reopen injunction

21    request, it appears as if Mr. DeFranco is asking to actually

22    have an opportunity to submit objections to the report and

23    recommendation from the April hearing.

24        THE COURT:  See if you want to send objections to

25    that, you're out of time.


                              13


1         MR. DeFRANCO:  I never received the document, I want

2    to know who signed for it, I certainly didn't.  They're

3    tampering with my mail.

4         THE COURT:  There is a motion pending to reopen.

5    That's for Judge McLaughlin -- I mean Judge Cohill.

6         MR. DeFRANCO:  Judge Cohill.

7         THE COURT:  That's for Judge Cohill to decide.  I

8    can't, he has to reopen his decision, not me.  So if he grants

9    that motion, then you'll get a copy and you can send the

10    objection.  If he does not grant that motion, then it will

11    remain closed.

12        MR. DeFRANCO:  Okay.  I don't know if this is

13  relevant or not, your Honor, I believe it would be, I don't

14  know if Attorney Bareford would know, the other reason why they

15  use transfers after the fact it's not so it's not used again.

16       THE COURT:  Maybe he can answer that, but from what

17  I have here, the transfer was based on a formal separation

18  request placed by Mr. Barr.

19       MR. DeFRANCO:  I received that one.  My counselor

20  told me like three weeks later Albion sent him another one, an

21  additional reason.

22       THE COURT:  Do you know what that is, Mr. Bareford?

23       MR. BAREFORD:  If I could be heard.  Basically, what

24  he's referring to is an element of his claim for retaliatory

25  transfer with respect to the March, 2005 transfer from Albion


14


1  to Smithfield.  That claim actually at this point is not in

2  front of the court.  When the first amended complaint he

3  requested in March did not include the actual retaliatory

4  transfer to Smithfield.  Only with respect to the second

5  amended complaint, which he just recently sought leave to

6  amend.  He doesn't actually have leave to amend that second

7  amended complaint yet.  So this information, it specifically

8  has to do with --

9      THE COURT:  Something that is not yet before the

10 court?

11     MR. BAREFORD:  Precisely.

12     MR. DeFRANCO:  That's totally inaccurate.  You gave

13 me verbal permission on April 21st to amend this complaint.

14 Secondly --

15     THE COURT:  It's not amended yet.

16     MR. DeFRANCO:  I've already submitted it.  You did

17 grant me permission to amend.

18     THE COURT:  When did you submit it?

19     MR. DeFRANCO:  Ten days ago, docket number 70.

20     THE COURT:  Did you serve it?

21     MR. DeFRANCO:  Yes, everybody was served.  Document

22 number 70, that's where you gave me permission to amend and

23 supplement the second time.

24     MR. BAREFORD:  My recall of that was that he can

25 seek leave to amend his complaint a second time.  Any

15

1  reference, I certainly don't recall you giving blanket

2  permission.

3        MR. DeFRANCO:  Attorney Bareford --

4        THE COURT:  Hold on, let me see what you filed, hold

5  on.  Motion to supplement the record.  The docket sheet doesn't

6  show a second amended complaint has been filed, that's what I'm

7  concerned about.  I have an errata sheet you filed on the 23rd

8  regarding the second amended complaint exhibits.  But I don't

9  see that there is a second amended complaint.

10       MR. DeFRANCO:  I in fact filed it.  August 20th --

11       THE COURT:  Well, on August 23rd, an errata, re

12  amended complaint by Anthony DeFranco, reason for correction,

13  exhibits to second amended complaint inadvertently admitted by

14  petitioner.  That's what we got on the 23rd.

15       MR. DeFRANCO:  This is entitled plaintiff's second

16  amended supplemental complaint.

17       THE COURT:  Mr. Fogl is going to look, he thinks he

18  saw something in our basket, he's going to check it.

19       MR. DeFRANCO:  Your Honor, if just may real quick,

20  does Attorney Bareford have the report and recommendation of

21  the April 21st hearing?

22        THE COURT:  Now, we have -- we see that yesterday

23  was filed a certificate of service of second amended complaint

24  by plaintiff, but we still don't have the amended complaint

25  anywhere.


16


1        MR. DeFRANCO:  Did you receive a copy, Attorney

2  Bareford?

3        MR. BAREFORD:  I've received a copy by way of people

4  he mailed, it appears as if he mailed them directly to the

5  people that he seeks to name as defendants without actually

6  seeking leave of the court to file --

7        THE COURT:  He didn't file it with the court?

8        MR. BAREFORD:  That's correct.

9        MR. DeFRANCO:  I filed it with the court, I filed it

10  with the clerk.

11        THE COURT:  It's not here -- it's not on the docket.

12  That means it never happened in our lives.  Let's see.  We had

13  a hearing on the 22nd of April.

14        MR. DeFRANCO:  I thought it was the 21st.

15        THE COURT:  It's docketed on the 22nd, I don't know

16  when it.  It was docketed on the 22nd.

17       MR. DeFRANCO:  Okay.  During that hearing, your

18  Honor, you specifically gave me verbal permission to supplement

19  my complaint, amend this complaint due to retaliatory transfer.

20       THE COURT:  My staff attorney told me that I

21  typically say -- what he recalls I said is you may amend your

22  complaint to include a temporary, to include a retaliatory

23  transfer.  I was not granting the motion to amend at that

24  point.  I'd like to see the amendments before I grant the

25  motion.


17


1       THE COURT:  I don't have it here, you're going to

2  have to send it again, it's not been filed.  The Clerk's Office

3  doesn't appear to have it.

4       MR. DeFRANCO:  Okay.

5       THE COURT:  We're going to check the computer to see

6  if what they docketed was the errata sheet -- hang on a second

7  we'll check number 109.  We have no paper anymore, as of July

8  1st everything is online.  If it came in, it as scanned on the

9  computer and then it was thrown away.

10          MR. DeFRANCO:  Okay.

11          THE COURT:  What concerns me is if I had granted you

12   the right to amend, I would have told you you had to do it in

13   so many days.

14          MR. DeFRANCO:  You said I had to exhaust.

15          THE COURT:  What I do is say yes, you can amend to

16   include, if I granted you that right, I would say you have to

17   send that amended complaint within 30 days.  That typically is

18   what I do when I grant a motion like that.  I don't give you

19   forever.  Because it keeps the defendants in limbo.  They can't

20   file any motions to dismiss.  They can't file any motions for

21   summary judgment.  They can't even do discovery, you're a

22   moving target, they don't know what claims they have against

23   them.

24          MR. DeFRANCO:  Does Attorney Bareford have --

25          THE COURT:  Hold on a second, we don't even think we


                                  18


1    have this thing filed, you'd have to file it again.  And then

2    you can ask Mr. Bareford whether he plans on opposing your

3    motion to amend the complaint again.  Then I'd have to look at

4  that and decide whether to allow the amendment under Rule 15.

5      MR. DeFRANCO:  Right.  I guess your report and

6  recommendation, would that comment on anything in there about

7  you granting me permission to do that or not?

8      THE COURT:  Hold on a second -- here's what we have.

9  We have something called a motion to supplement the record.  It

10  was filed on 8/23.

11      MR. DeFRANCO:  That's separate, that's not it, your

12  Honor.  Or 8/24 -- you granted that.

13      THE COURT:  So you have a separate second amended

14  complaint?

15      MR. DeFRANCO:  Right.

16      THE COURT:  It didn't get filed here, it's not here.

17  So we don't have it, you have to re-file it.  Re-file it with a

18  motion to amend.

19      MR. DeFRANCO:  Your Honor, just for the record, I'm

20  just -- I know you have many cases, I know for a fact that you

21  verbally gave me permission to do it once I exhausted my

22  grievances.  And you were very upset at the time with Mr. Barr

23  for doing what he did.

24      THE COURT:  Well, let me take a look here --

25  whenever I do that, that's always put on the docket.  Here's

19

1   what it says on the docket.  Hearing on motion, denied.  Motion

2   for order compelling summons acceptance -- motion for

3   preliminary injunction, will be decided separately by R & R.

4   Dismissed as moot.  Motion for temporary restraining order

5   dismissed as moot.  Motion for preliminary injunction.  But see

6   none of that -- the R & R is then filed on the 26th.  And in

7   the R & R I didn't say anything about it and none of that was

8   docketed on my -- it was docketed for that hearing.  What I

9   have here today and what I always have on a telephonic hearing,

10  Mr. DeFranco, is my staff attorney writing down on a specific

11  form everything that I order for that in that hearing.  And

12  then that is docketed.  So whatever I said, he did not take as

13  an order granting any motion to amend the complaint.  Because

14  that's not been docketed as such, which it would have had to

15  have been, I must then believe that in fact I told you you may

16  go ahead and do that, meaning you may go ahead and amend and

17  file a motion to amend it.  And those are granted liberally, I

18  just have to go through the proper technical procedures.  So

19  you're going to have to go ahead and file a motion to amend

20  with it.  I don't even have the second amended complaint here.

21  You'll have to file a motion to amend and attach the second

22  amended complaint again.  Then, of course, I'll hear Mr.

23  Bareford's opposition if he wishes to oppose your motion to

24  amend again.

25      MR. DeFRANCO:  I'll do that.  I don't know why the


                                20


1  clerk didn't receive it.

2      THE COURT:  I'm not sure, either.

3      MR. DeFRANCO:  Everybody else did.

4      THE COURT:  I'm not sure, it's not docketed and it's

5  not here.  The only place where it can be now, what I meant by

6  telling you we're online, the only place here it would be is on

7  the computer.  If it's not on the computer, it's not here.

8  Because if it's paper, if it's paper, it's gone.  So I don't

9  know why.  It could have been sent back to you, it may be

10  coming back because it wasn't accompanied by a motion to amend.

11  Sometimes that happens, it may be on its way back, the Clerks

12  won't accept it without an order granting your right to amend.

13      MR. DeFRANCO:  Okay.  But I don't know.

14        THE COURT:  It's best to file a quick motion to

15  amend, why you should be allowed to amend, attach a second

16  amended complaint again and send it off.

17        MR. DeFRANCO:  If I can, document number 70, if Mr.

18  Bareford has it --

19        THE COURT:  Hold on.  Document number 70?

20        MR. DeFRANCO:  Motion to amend, supplement the

21  complaint second time.  I believe it was granted by you on

22  April 11th.

23        THE COURT:  It says second time.  Looks like I

24  granted it on 4/11.  The reason it says second time is because

25  you filed the same motion twice because you hadn't heard from

21

1  me on the first one.  That's what it said.  We received the

2  same motion with a short period of time.  They're exactly the

3  same one, the second one came in, you said I hadn't heard from

4  you on the first one.

5        MR. DeFRANCO:  I'll file it again.

6        THE COURT:  You wanted to know if I had granted you

7  the right to do a second time.

8          MR. DeFRANCO:  What I'm concerned about, your Honor,

9   I haven't received your report and recommendation in April, it

10  may be mentioned in there.  That was a big thing.

11          THE COURT:  Let me take a look at that.  I'm going

12  to take a look at it right now.  It's respectfully recommended

13  that plaintiff's motion, document number 74, be denied.

14  Plaintiff Anthony DeFranco, an inmate at the State Correctional

15  Institution at Albion, brings a civil rights action pursuant to

16  42 U.S.C. 1983 against -- okay.  I'm looking at it here.  On

17  March 28th -- in addition, plaintiff complains that the

18  treating psychiatrist immediately took him off of half of the

19  anxiety medication -- as a result he seeks an order from this

20  court requiring him to be transferred back to SCI-Albion

21  requiring the immediate reinstatement of his full anxiety

22  medication.  On April 21, 2005, a hearing on plaintiff's motion

23  for preliminary injunction was held by telephone.  During this

24  hearing plaintiff indicated that he has filed grievances

25  regarding issues for which he seeks a preliminary injunction,


22


1   but has not yet fully his exhausted administrative remedies.

2  Then I go through the law on injunctions.  In this case,

3  plaintiff has failed to demonstrate a likelihood of success on

4  the merits to warrant the issuance of a preliminary injunction.

5  First, it is well-settled that plaintiff has no federal liberty

6  interest guaranteeing that he remain in a particular prison, or

7  preventing his transfer to another correctional institution,

8  either within the same state or interstate.  Then I cite the

9  case.

10      MR. DeFRANCO:  Okay.

11      THE COURT:  All right.  I quote the case, through

12  the authorization conferred by 18 U.S.C. Section 4082, the

13  Attorney General may transfer a prisoner from one place of

14  confinement to any available and appropriate facility.

15      Second, with regard to the medical decision to

16  decrease plaintiff's anxiety medication, it must be noted that

17  courts will not second-guess the propriety or adequacy of a

18  particular course of treatment which remains a question of

19  sound professional judgment.  A disagreement as to the

20  appropriate choice of medical treatment does not give rise to a

21  constitutional violation because the right to be free from

22  cruel and unusual punishment does not include the right to the

23  treatment of one's choice.  There is law on that as well.

24        Based on the foregoing, plaintiff cannot demonstrate

25  a likelihood of success with regard to his claims to warrant


23


1  the extraordinary relief he seeks.  Moreover, by his own

2  admission, plaintiff has not fully exhausted his administrative

3  remedies with regard to such claims.  Thus, plaintiff's motion

4  should be denied.  That's it.  Here it is, footnote one.

5  "Nevertheless, plaintiff was informed during the telephone

6  hearing on April 21 2005, that he may amend his complaint in

7  this matter to include claims set forth in his motion for

8  preliminary injunction."  It's there.  I know how I meant that,

9  I meant that you have every right to do that.  So, therefore,

10  it's not a matter of exigency, it doesn't fit into a temporary

11  retraining order format because you have a right to amend to

12  include those claims.

13        MR. BAREFORD:  Could I be heard on this.

14        THE COURT:  Go ahead, Mr. Bareford.

15        MR. BAREFORD:  The second amended complaint we

16  received in the last week actually includes claims beyond

17  anything that has to do with transfer.  Actually, names a host

18  of new defendants, at a different institution, specifically at

19  SCI-Smithfield, which attempts to incorporate deliberate

20  indifference claims as cruel and unusual claims.  At a minimum

21  we would object to any of those new parties being identified

22  just because they're at a completely different institution,

23  those are separate claims.  That should not actually be, he

24  should not have the benefit of an amended complaint for

25  allegations that took place with parties and claims that

24

1  arose --

2      THE COURT:  That's true, in the footnote I simply

3  said he may include the claims that he has made in that

4  preliminary injunction, I didn't say anything about adding

5  parties.  You're going to move to amend to add additional

6  parties and claims.

7      MR. DeFRANCO:  In my preliminary injunction,

8  listening to everything that was said, I did specifically say

9  about a doctor mistreating me down there.

10      THE COURT:  I didn't allow that.  My footnote said

11  claims, I didn't say you could add parties.  You'll have to do

12  that by motion.  You'll have to make your argument as to why

13  you should be able to add parties at this late date.  You know

14  under Rule 15 how it works.  Whether or not they're prejudiced

15  by this at this time, whether or not there's been delay, all

16  those sorts of things.  So you will have to answer those

17  questions in your motion to amend.

18        MR. DeFRANCO:  Okay.

19        THE COURT:  And the motion to add parties.

20        MR. DeFRANCO:  Okay.

21        THE COURT:  That's a different rule.

22        MR. DeFRANCO:  As far as adding new parties?

23        THE COURT:  15(a), (b) and (c).  Go ahead.

24        MR. DeFRANCO:  Just as far as retaliatory transfer,

25  do I need to file for permission or is that granted, can't I


25


1  orally ask for permission?

2        MR. BAREFORD:  Your Honor, can I be heard on this.

3        THE COURT:  Mr. Bareford has the right to respond in

4  writing.  If you want to do your motion orally, he has the

5  right to respond in writing.  But I don't ever accept a motion

6  to amend until I see the amendments.

7         MR. DeFRANCO:  Okay.

8         THE COURT:  I can't decide the motion to amend

9  unless I know what you want to do.  You have to attach the

10  proposed amendments.

11         MR. DeFRANCO:  Okay.

12         THE COURT:  You're going to explain to me why you

13  want to add additional parties, why they're necessary.

14         MR. DeFRANCO:  Okay, that's fine.

15         THE COURT:  Then he'll oppose it.  Then you'll have

16  the right to reply.

17         MR. DeFRANCO:  I'll file that, your Honor, no

18  problem at all.  He sidestepped this, I want to clarify for the

19  record there was an additional reason why they transferred me

20  to Smithfield.  I want to get that on the record so it's not

21  attempted to be used again.  They brought me back in spite of

22  it.

23         THE COURT:  Didn't your counselor tell you what it

24  said?

25         MR. DeFRANCO:  She's here I could ask.

1          THE COURT:  Didn't you say that your counselor told

2    you --

3          MR. DeFRANCO:  Yes.

4          THE COURT:  They didn't tell you what it said?

5          MR. DeFRANCO:  No.

6          THE COURT:  You don't know if those things, if

7    you're privy to those things or not.

8          MR. DeFRANCO:  Considering the circumstances of the

9    case, we should.

10          THE COURT:  There's some things you don't have a

11    right to know actually.

12          MR. DeFRANCO:  They're manufacturing reasons --

13          THE COURT:  The truth of the matter is if they are

14    going to use that reason to defend that charge, you'll find out

15    about it because the court will find out about it.  If they

16    don't use that reason, then it doesn't matter, they're not

17    using it.  I mean, they didn't attempt to hide at all that Mr.

18    Barr asked for separation.

19          MR. DeFRANCO:  Absolutely.  He's trying to hide the

20    fact he told me wasn't going to, then he did.

21        THE COURT:  Either they will use this as a defense,

22   whatever their other reason is or you'll see that then or you

23   won't and it doesn't matter because it wasn't used as a reason.

24   See what I'm saying?

25        MR. DeFRANCO:  Right.


27


1        THE COURT:  He's not sidestepping anything, it's not

2   part of the case yet, he doesn't want to have to defend

3   something that is not part of the case yet.

4        MR. DeFRANCO:  What do I need exactly to file?

5        THE COURT:  You will need to file a motion to amend

6   the complaint with your reasons and the persons you want to

7   add.  And attach to it the proposed amended complaint that you

8   say you sent us but we don't have.  Then you're going to get an

9   R & R from today's hearing from me which says that I'm

10   recommending that this motion for temporary restraining order

11   be dismissed.

12        MR. DeFRANCO:  That's appealable?

13        THE COURT:  Once you get that, it will tell you you

14   have 10 days to file objections.  And then you file objections

15  to that to Judge Cohill, all right.

16      MR. DeFRANCO:  Right.

17      THE COURT:  Those things you have to do soon, are

18  the soonest things you have to do.  After that anything that

19  comes up, then we'll just try to keep this thing moving.  The

20  reason I have a hard time continually granting the amendments

21  is because then the case gets stalled.  At some point you just

22  have to file a new lawsuit.  Do you understand how that works.

23  They have to know what the claims are, they can't keep

24  attacking a moving target.  Then they have to do different

25  types of discovery, the case just gets stalled, it gets too


                              28


1  old, the court can't deal with it at that point.  That's why

2  there has to be some review on the motions to amend.  That's

3  why those requirements in Rule 15 are there, that you can't be

4  dilatory, you can't be causing undue prejudice to defendants.

5  All right.  That's why they are there.

6      MR. DeFRANCO:  I understand that --

7      THE COURT:  At some point you have to file your new

8  lawsuit, do you see my point, do you understand?

9        MR. DeFRANCO:  Right.

10       THE COURT:  Okay.

11       MR. DeFRANCO:  All right, your Honor, one last thing

12  I need to ask you.  Regarding Dr. Lindemuth and her testimony?

13       THE COURT:  Yes, sir.

14       MR. DeFRANCO:  The fact this affidavit is before the

15  court, it came out later that everything she provided, certain

16  information and testified to, I don't have them in front of me,

17  how the court stands with that using her as a material

18  witness --

19       THE COURT:  Well, everything she said on the stand

20  is part of the record.  It was done under oath.  Everything

21  that she signed as an affidavit is done under oath.  Everything

22  that was in her affidavit is evidence, but wasn't evidence and

23  testimony under oath.  Whether those are used a trial or in a

24  summary judgment motion or response, that's how they're looked

25  at by the court.  Some things are evidentiary, some things are


29


1  exhibits in evidence and some things are testimony under oath.

2  How the court looks at them and how the jury looks at them are

3   different depending on those things.

4          MR. DeFRANCO:  If she wanted to clear anything up

5   that she read in your report and recommendation regarding her

6   testimony, that she disagreed with your interpretation of it --

7          THE COURT:  But I don't care.

8          MR. DeFRANCO:  I don't understand that.  She came

9   forward with other information.

10         THE COURT:  She can file another affidavit.

11         MR. DeFRANCO:  My brother did and I did --

12         THE COURT:  None of that matters to me.  If you go

13   to trial on this case, she'll be back on the stand, you can

14   cross-examine her the best you can.

15         MR. DeFRANCO:  I guess what I'm asking at this stage

16   is a motion to dismiss her statement, the defendants want you

17   to use that testimony --

18         THE COURT:  The defendants will use that testimony,

19   what you will do is you will on a motion for summary judgment

20   you will come back give an affidavit that says she said

21   something else later and that will be hearsay.

22         MR. DeFRANCO:  Okay.

23         THE COURT:  That messes you up.  You can ask her to

24  sign an affidavit saying that she said whatever you're saying

25  she said.  And then if she signs that, then that is the


30


1  testimony.  If not, if that comes from you, there's a hearsay

2  problem.

3        MR. DeFRANCO:  Okay.

4        THE COURT:  You understand why that is a hearsay

5  problem, you could say whatever.

6        MR. DeFRANCO:  I'm able to depose her?

7        THE COURT:  Absolutely.

8        MR. DeFRANCO:  Make it part of the record?

9        THE COURT:  Absolutely, you have to pay for it,

10  you're the plaintiff.

11        MR. DeFRANCO:  I can do it now?

12        THE COURT:  You can subpoena her for a deposition

13  and you have to ask for a subpoena form from us.

14        MR. BAREFORD:  May I be heard on this?

15        THE COURT:  Yes.

16        MR. BAREFORD:  Just the way this has been going on,

17  Mr. DeFranco, will he be allowed to engage in discovery at this

18  point?

19        THE COURT:  No, he can't engage in discovery --

20        MR. BAREFORD:  There's a motion to dismiss pending.

21  So the first complaint that he filed, his first complaint that

22  he ultimately filed, I filed a motion to dismiss in its

23  entirety.  To the extent he would attempt to seek any kind of

24  discovery at this point, I would actually file a motion for a

25  protective order --


                              31


1        THE COURT:  There is no protective order, I didn't

2  put a ban on discovery, I leave it open so prisoners can do

3  whatever discovery they need to do because it's so hard for

4  them.  The only way you can do a deposition is with the

5  cooperation of Mr. Bareford unless you subpoena and I'm not

6  giving you permission to, you have to move to get a subpoena

7  from the court to depose her.  As a prisoner that's different

8  than other plaintiffs.

9        MR. DeFRANCO:  Okay.

10        THE COURT:  You have to move for a subpoena to

11  depose her to do this.  That's another thing you have to do if

12    you're interested.  If he gets it -- he just gave you a heads

13    up on what he's going to say.  He's going to say there is a

14    motion to dismiss pending before this court, I'd rather not

15    have discovery go forward until that motion to dismiss is

16    decided.

17          MR. DeFRANCO:  Right, I heard that.  I understand, I

18    heard what you said.

19          THE COURT:  The reason that prisoners are required

20    to move to depose people and to get these sorts of subpoenas is

21    because there's money involved.  You have to pay for that

22    service.  You have to pay for a court reporter for the

23    deposition.  You have to make sure that the person gets to the

24    deposition.  That's all on your plate.  And a prisoner

25    typically will file all sorts of subpoenas and then not follow


                                  32


1    through with the costs thinking that because they're proceeding

2    IFP those are free, that's not the case.  So that's why they're

3    required to move for those subpoenas.

4          MR. DeFRANCO:  Okay.  I guess now I understand.

5          THE COURT:  All right.  She's not a defendant, is

6  she?

7        MR. DeFRANCO:  No.

8        THE COURT:  You can't send her interrogatories or

9  anything.  All right, we're adjourned, thank you.

10

11        (Whereupon, at 12:20 p.m., the proceedings were

12  concluded.)

13

14                    - - -

15

16

17

18

19

20

21

22

23

24

25

33

1               C E R T I F I C A T E
                _ _ _ _ _ _ _ _ _ _

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9

10

11  _____

12  Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25