IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ANTHONY DeFRANCO,
        Plaintiff


v.                    CIVIL ACTION NO. 04-230 ERIE


WILLIAM WOLFE, et al.,
        Defendants



HEARING ON PRETRIAL MOTIONS



Proceedings held before the HONORABLE

SUSAN PARADISE BAXER, U.S Magistrate Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, April 21, 2005.



APPEARANCES:
        ANTHONY DeFRANCO, Plaintiff herein, (via Phone),
        appearing Pro Se.

        CHRISTIAN D. BAREFORD, Esquire, Deputy Attorney

General, appearing on behalf of the Defendants.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3           (Whereupon, the proceedings began at 2:15 p.m., on

4  Thursday, April 21, 2005, in Judge's Chambers.)

5

6           THE COURT:  This is Civil Action No. 04-230 Erie,

7  DeFranco v. Wolfe, et al.  In my chambers I have my staff

8  attorney, Frank Fogl, Esquire, as well as the court reporter,

9  and counsel for defendants, Christian Bareford, Esquire.  Who

10  is on the phone, please identify yourself for the record?

11          MR. SKINDELL:  Mr. Skindell, unit manager at

12  SCI-Albion.

13          THE COURT:  Who else, Mr. DeFranco, are you there?

14          MR. DeFRANCO:  This is Anthony DeFranco, I'm at

15   SCI-Smithfield.

16          THE COURT:  Mr. DeFranco, are you speaking on a

17   handheld telephone or speakerphone?

18          MR. DeFRANCO:  I'm on a handheld phone, your Honor.

19          THE COURT:  You're the only one who can hear the

20   entire conversation in your room?

21          MR. DeFRANCO:  Correct.

22          THE COURT:  Anyone else on the line?

23          (No response.)

24          THE COURT:  All right.  I called the hearing because

25   we have several motions pending, as well as some letters that

3

1   Mr. DeFranco has been sending me.  But the motions are motion

2   for injunctive relief, temporary restraining order, motion to

3   compel summons, that sort of thing, that require immediate

4   attention, that's why I called the hearing.  Mr. DeFranco,

5   first of all, let's take them in order.  The first one is the

6   motion for temporary restraining order.  That discusses your

7   attempting to get the court to stop this transfer of you.

8  Needless to say, that got to my desk too late it appears.

9        MR. DeFRANCO:  Right.

10        THE COURT:  That motion is moot.  But let me also

11  say I do not have the power to stop them from transferring you.

12  That is within the authority of the Department of Corrections.

13  And the court does not interfere with that, nor has the power

14  to interfere with that; do you understand?

15        MR. DeFRANCO:  Yes.

16        THE COURT:  You may not have understood that in the

17  past, I thought I would tell you that.  We could just avoid a

18  lot of litigation.  I will have to dismiss the motion as moot

19  since you've already been transferred.  All right.  That's

20  docket entry number 68 for the record.  The next motion is a

21  motion for preliminary injunction.  And that is basically --

22  well, you're asking not only to be sent back to Albion, but

23  there's some question here about your medication and your

24  psychiatric treatment as a whole.  Could you explain this one

25  for me, Mr. DeFranco?


4


1        MR. DeFRANCO:  Yes, your Honor.  As the court is

2  aware, I had previously on a temporary restraining order, the

3  court granted it, stopping SCI-Albion's transfer.

4        THE COURT:  The temporary restraining order was to

5  place you in a single cell until the preliminary injunction

6  hearing was held.  And then we held it, and then we decided

7  against that ruling.

8        MR. DeFRANCO:  Right.

9        THE COURT:  I don't have the authority to stop the

10  transfer from one institution to another institution.  So I

11  wouldn't have done that.  My order, my temporary restraining

12  order was to have you placed in a single cell until we had a

13  preliminary injunction hearing.  It was a temporary ruling.

14        MR. DeFRANCO:  Right.  The ruling was defendants

15  were to refrain from transferring plaintiff to another

16  correctional institution upon the placement in a single cell.

17  And then your second recommendation, your Honor, in footnote

18  number two, you went on to say that you believed defendant Barr

19  in his declaration where he said there was no such transferred

20  planned.  That you would recommend that temporary restraining

21  order to leave me in Albion be removed.  What happened is that

22  on February 28th, Judge Cohill adopted your recommendation and

23  on March 7th, I was packed up to be transferred out.

24          THE COURT:  Okay.  Let me read the order.  Let me

25   take a look a Judge Cohill's order.  This is on the temporary

5

1   restraining order, right?

2          MR. DeFRANCO:  Correct.

3          THE COURT:  The order was signed as a temporary

4   restraining order in November, right?

5          MR. DeFRANCO:  The temporary restraining order was

6   signed in October.

7          THE COURT:  And the R & R, Judge Cohill signed the

8   order in November?

9          MR. DeFRANCO:  November.

10          THE COURT:  What are you talking about in February?

11          MR. DeFRANCO:  Pardon me.

12          THE COURT:  What order are you talking about in

13   February?

14          MR. DeFRANCO:  In February, after we had the

15   preliminary injunction hearing, after that recommendation you

16   then recommended that the temporary restraining order be lifted

17   because you believed defendant Barr's declaration saying there

18  was no such transfer planned for me.

19      THE COURT:  The issue of the preliminary injunction

20  was not on the transfer the issue -- the preliminary injunction

21  I thought was about the single cell, was that not correct?

22      MR. DeFRANCO:  It was both, your Honor.  Because Mr.

23  Barr had selectively transferred me to --

24      THE COURT:  Hold on let me read it.

25      MR. DeFRANCO:  Page six.


6


1      THE COURT:  I see it.  All right.  I understand what

2  I wrote in that footnote.  So, go ahead.  He signed the order

3  granting that.

4      MR. DeFRANCO:  I filed my objections, your Honor.

5  On February 28th they were denied by Judge Cohill, and he

6  adopted your second recommendation.  And approximately a week

7  later I'm on a bus headed 240 miles away from home for filing

8  this lawsuit.

9      THE COURT:  Except for it doesn't work so well, the

10  argument doesn't work so well because you lost.  They didn't

11  have to put you in a single cell.  There's a connection

12    problem, try again.

13        MR. DeFRANCO:  When it was just a single cell, your

14    Honor, I was asking for a restraining order to keep me at

15    Albion -- I was asking for two things.  In the first

16    recommendation -- I believe you signed on October 29th, on page

17    six, you recommended that Albion be refrained from transferring

18    me, in response to my petition.  You made it clear, you found

19    it disconcerting that Mr. Barr would make a threat right after

20    the hearing held before you on October 22nd.

21        THE COURT:  I'm talking to my staff attorney here

22    because I don't have my file, he explained to me that you have

23    this on appeal at the circuit, that's why we don't have the

24    file.  So I'm just using the file offered by Mr. Bareford.  Let

25    me take a look here.  And that expired when the preliminary

7

1    injunction was decided.  My point in there is that they refrain

2    from transferring you because of your request for a single

3    cell.  What was the reason for the transfer, do you know?

4        MR. DeFRANCO:  All I know, I believe I sent the

5    court, I filed a grievance.  And all it said was if the court

6   will recall, if Mr. Bareford has a copy of your second

7   recommendation to the court, you basically believed Mr. Barr's

8   declaration that there was no such transfer planned for me.

9   So, therefore, you recommended that restraining order be

10  dismissed.  And the court, district Judge Cohill accepted that.

11  A week later after he adopted your opinion, your

12  recommendation, I was transferred.  I filed a grievance with

13  Albion, and their response was that I had a formal separation

14  in place from Mr. Barr.  It was felt with the pending

15  investigation it was in the best interests of all parties he

16  not be held at SCI-Albion.  No inmate has a right to determine

17  where he or she will be housed.  It says inmate was not

18  available for signature as he is currently at SCI-Smithfield.

19      THE COURT:  All right, let me talk to -- is it Mr.

20  Skindell?

21      MR. SKINDELL:  Mr. Skindell.

22      THE COURT:  Can you answer that question, do you

23  know why he was transferred?

24      MR. SKINDELL:  I have no records in front of me, my

25  recollection is that there was an administrative separation

1  that was requested for Mr. DeFranco, to be separated from Mr.

2  Barr.

3          THE COURT:  Was that request from Mr. Barr?

4          MR. SKINDELL:  I'm not exactly sure if it came from

5  Mr. Barr or it came from the superintendent.  I can't answer

6  that for sure.  I would imagine that Mr. Barr certainly had

7  some input to that.  But that was the reason for the transfer.

8          THE COURT:  All right.  Then I will take this motion

9  under advisement.  I'm going to look at all that stuff, we will

10  issue an order, a recommendation on this.

11         MR. BAREFORD:  May I be heard on this?

12         THE COURT:  Go ahead, Mr. Bareford.

13         MR. BAREFORD:  What the position of the defendants

14  in the case is that this is not an appropriate mechanism, the

15  temporary restraining order, as well as a preliminary

16  injunction, are not appropriate mechanisms to effectuate a

17  transfer back to the prison.

18         THE COURT:  That's correct, I don't have the power

19  to do that.

20         MR. BAREFORD:  Yes, ma'am.  We're not saying he may

21  not have a basis to state a claim under retaliation, under 42

22  U.S.C. 1983, however, given the fact that there is, as I think

23  the court is obviously aware of, there is no constitutional

24  interest to be transferred or not to be transferred.  In light

25  of that, there is no basis for injunctive relief here because

9

1  he does have no due process rights or no constitutional

2  substantive interests with respect to being moved back or not

3  being moved back.  So where he is now, while that may obviously

4  in the circumstances be read in the light most favorable to the

5  plaintiff, it may give him a cause for concern.  He cannot,

6  like I said, he cannot effectuate relief on that now.  Legally

7  this is not proper, it can't be a basis for an injunction.

8  Furthermore, he's indicated and we would agree that he has

9  initiated a grievance procedure with respect to that.  That has

10  not even reached the point of final completion.  It is totally

11  premature, notwithstanding the fact it's an inappropriate basis

12  of law in which to grant an injunction.  We're not even to the

13  point where he can do that until he actually exhausts his

14  remedies under the grievance procedure, he can never

15  demonstrate a likelihood of success on the merits.

16        THE COURT:  Okay.  I've got that, anything you want

17  to respond to, Mr. DeFranco?

18        MR. DeFRANCO:  I totally disagree with counsel's

19  interpretation on the law.  A case on point is Rauser v. Horn,

20  241 F.3d 330 (2001).

21        THE COURT:  Say that again for me?

22        MR. DeFRANCO:  Rauser v. Horn, if the transfer of me

23  was, and certainly appears that way, was motivated to punish me

24  further, you certainly have the right to bring that up.

25        THE COURT:  What his argument is, you have the right


                            10


1   to bring it as an amendment to your complaint.

2         MR. DeFRANCO:  I understand that, your Honor.  Right

3   now what they did is they've harmed me, I'm 240 miles away from

4   home.  They said they weren't going to do this.  They did it.

5         THE COURT:  That's exactly the point.  I can't give

6   you legal advice.  What the defendant says is you may have the

7   basis for a retaliation claim.

8         MR. DeFRANCO:  I would ask the court to amend my

9  complaint again, which I want to do, I plan on doing with the

10  court's permission.  I think in light of the circumstances,

11  your Honor, with all my filings, I informed the court over and

12  over again this was going to happen.  And now it's created such

13  a hardship on my family, on myself, taken away from my job, I'm

14  unemployed, they put me under the care of a psychiatrist who's

15  just -- I've been taken to medical a couple times, once in the

16  cart.  They're cutting my medication way down to almost nothing

17  now.

18        THE COURT:  And I understand that you believe that

19  the cause of all of your problems was your transfer at this

20  point.  But if you believe or the basis of all your problems

21  was the fact that you fought for a single cell at Albion --

22        MR. DeFRANCO:  I file a lawsuit and this is what

23  happens.

24        THE COURT:  That's why you need to look at the

25  retaliation claim.


11


1        MR. DeFRANCO:  I planned on doing that, also, your

2  Honor.  In the meantime, I mean why did the defendants ship me

3   240 miles away as opposed to closer.  My mother has health

4   problems, she can't travel the distance to see me.  My kids are

5   all from there.  I mean -- you know the law better than I do,

6   obviously.

7        THE COURT:  I can't rule on a claim there, this is a

8   basis for you to file a claim for retaliation.  And then you

9   proceed to get the remedies if you are successful, that you

10  could get for a retaliation claim.  That is correct.  But I

11  have to go on the basis for that is damages or other things.

12  But I have to decide the motion for preliminary injunction on

13  the basis that you had success as a matter of law and the only

14  way I can do that is on the basis of a due process claim

15  because that's what you have going now.  And the due process

16  claim tells me I'm not allowed to interfere with the transfer

17  procedures of the Department of Corrections.  All right.  But

18  you can bring that claim and we will look at it.  And I will

19  decide the motion for preliminary injunction on the law as the

20  case is right now.  And as far as what Mr. Bareford said to

21  you, you have to finish exhausting.

22        MR. DeFRANCO:  I've already filed my appeal to your

23  Honor.  I really filed a grievance on this, I really didn't

24  think I needed to because of the fact it's been before the

25  court already.  I placed the court on notice in every filing

12

1   that this was going to happen.

2        THE COURT:  Here's what I can tell you, Mr.

3   DeFranco.  You have no luxury in the Department of Corrections'

4   system to choose where you want to be.  That's number one.

5   Number two, I am surprised that you were transferred,

6   especially in light of the claims you made.  The Department of

7   Corrections, through the Attorney General, is going to have to

8   deal with a retaliation claim.  And they're probably not going

9   to be happy to do that, but it's going to be a good one.  And

10  with those two thoughts to give you, that's all I can say.  You

11  do not have a choice of where you get to be.  And you worked

12  hard to get to where you ended up and then you we were removed.

13  I don't know what I can say to you.

14        MR. DeFRANCO:  Your Honor, what they did is they

15  created such a hardship, I have to wait this out?

16        THE COURT:  That's correct.  But I mean, the courts

17  cannot be called every time someone is transferred to somewhere

18  they don't want to be.  Everybody wants to be near their

19  family.

20      MR. DeFRANCO:  Right, and I earned that a long time

21  ago, I was at Albion.

22      THE COURT:  It was very hard to get there and then

23  you complained about your cell status, and you lost your

24  transfer.

25      MR. DeFRANCO:  Right.  I believe that the court can

13

1  take into consideration the hardship on third parties.

2      THE COURT:  I will take everything you argued into

3  consideration, all right, and I will rule on that motion.  Our

4  next motion is for an order compelling summons acceptance.

5  This is with regard to Mr. Wolfe, is that correct?

6      MR. DeFRANCO:  That's correct, your Honor.

7      THE COURT:  All right.  Now, he's retired, Mr.

8  Skindell?

9      MR. SKINDELL:  That is correct.

10      THE COURT:  And, Mr. Bareford, why is the Attorney

11  General not accepting service for him?

12      MR. BAREFORD:  As to Mr. Wolfe, the Department of

13  Corrections is not entirely certain where they can locate

14  William Wolfe.  His last known address was somewhere in the

15  vicinity of North Carolina.  But since then he has left that

16  state for parts further south.  There had been some indications

17  down to Florida someplace.

18       MR. DeFRANCO:  I can't hear him.

19       MR. BAREFORD:  We don't know and the Department of

20  Corrections does not know exactly where William Wolfe is.  This

21  doesn't have anything to do with any role he would have in the

22  case, just administratively the Department's inability to

23  locate him causes the problem that he may or may not be willing

24  to participate with his own defense.  Or we don't have any

25  mechanism by which he can even consent to have our office


14


1  represent him just by virtue of his whereabouts or the lack of

2  knowledge on where his whereabouts are.

3       THE COURT:  If Mr. Bareford on behalf of the

4  defendants and on behalf of the Commonwealth does not know how

5  to reach him, then the burden is left to the plaintiff to find

6  him to serve him.  So I'm afraid that leaves the burden with

7  you.  I can't compel to accept summons when they don't know

8  where he is.

9      MR. DeFRANCO:  Okay, your Honor.  I mean if the

10  court, I have the summons returned, they held Mr. Wolfe's

11  complaint, until the Clerk, it was sent out January 27th, along

12  with the rest of the complaint.  It was never returned to the

13  Clerk's Office until March 18th.

14      THE COURT:  Is that correct, Mr. Bareford?

15      MR. DeFRANCO:  They hung onto that --

16      MR. BAREFORD:  I cannot answer that, ma'am.

17      THE COURT:  What does that have to do with anything,

18  what's your point?

19      MR. DeFRANCO:  I'm just wondering why they were

20  holding the complaint.

21      THE COURT:  He doesn't know.  I just asked him, he

22  doesn't know.  But he's saying on the record here that he

23  doesn't know where Mr. Wolfe is.  And so, therefore, he can't

24  get Mr. Wolfe's acceptance of him as his counsel is the point.

25  So he can't accept summons without that defendant accepting him

15

1  as his counsel.

2        MR. DeFRANCO:  I don't understand how to proceed if

3  they're not going to give me an address.

4        THE COURT:  You proceed like any other plaintiff,

5  you have to find him yourself if you're going to sue him.

6        MR. DeFRANCO:  Then what would I do once I locate

7  his address?

8        THE COURT:  Then you can send it, send the U.S.

9  Marshal, you can send a new complaint form for the U.S. Marshal

10  to serve, once you find his address.

11        MR. DeFRANCO:  They're basically saying they don't

12  know where he's at?

13        THE COURT:  That's what he just said.

14        MR. DeFRANCO:  The phone was going in and out.

15        THE COURT:  What he said was he knew that he was in

16  North Carolina but since left that address and moved further

17  south, and they haven't been able to find him.

18        MR. DeFRANCO:  Okay.  Your Honor, I believe I was on

19  the basis of my transfer -- if Mr. Skindell can answer me

20  this -- they wouldn't tell me what it was, apparently Albion

21  came up with an additional reason to transfer me beside Mr.

22  Barr putting in for a formal separation, maybe Mr. Bareford

23  could tell me?

24      MR. SKINDELL:  This is Mr. Skindell, I can't give

25  you no more, I have no other knowledge, other than


16


1  administrative separation from Mr. Barr, that's all I know.

2      THE COURT:  Is there anything you want to add, Mr.

3  Bareford?

4      MR. DeFRANCO:  Attorney Bareford, the reason I was

5  transferred --

6      MR. BAREFORD:  I think in light of the fact of where

7  we are in the proceedings, ma'am, and especially in light of --

8      MR. DeFRANCO:  I can't hear anything.

9      THE COURT:  Can you hear me now?

10      MR. DeFRANCO:  Yes.

11      MR. BAREFORD:  Ma'am, I think just in light of our

12  position with respect to the preliminary injunction, our

13  position is this isn't the appropriate forum or stage in which

14  the remedy that he seeks is to be accomplished, especially in

15  light of the fact that we're anticipating even a further

16  amendment to the complaint, there has yet to be a responsive

17  pleading, I think that this is more appropriately a discussion

18  for discovery.

19        MR. DeFRANCO:  Your Honor, I think I should be

20  entitled to know what the reasons are for transfer.  If he came

21  out with other reasons for transferring me.

22        THE COURT:  You can discover that when they write

23  their briefs.  You will then learn what their case in chief is

24  and what your case in chief is, they will learn when you file

25  documents as well.  You can't force them to divulge their trial


                          17


1  strategy at this point if they don't wish to.  First off, I

2  want to say the motion for an order compelling summons

3  acceptance is denied.  On the basis that the defendants have

4  alleged here on the record that they do not know the

5  whereabouts of Mr. Wolfe, William Wolfe, and are therefore

6  unable to secure his consent to their representation.  And on

7  that basis the motion is denied.  That is document number 76.

8  I have one or two other housekeeping matters.  Mr. DeFranco, we

9  have not received any money from you for your filing fee.  And

10  in a normal case, this is by no means a normal case, we've had

11  so much paper in this case, it's unbelievable.  In a normal

12  case I would dismiss the case for failure to prosecute because

13  you haven't paid any part of your filing fee.

14          MR. DeFRANCO:  Your Honor, I sent that form in and,

15  in fact, I can tell you what the document is.

16          THE COURT:  Where did you send it in -- is your

17  counselor in the room with you?

18          MR. DeFRANCO:  Nobody is in the room with me right

19  now.

20          THE COURT:  We will check with the accounting office

21  in your institution and see why that hasn't happened.

22          MR. DeFRANCO:  Yes, I'll put a request in, your

23  Honor.

24          THE COURT:  At some point I'm required to do a rule

25  to show cause and then institute dismissal procedures for


18


1  failing to pay your filing fee, all right.  Let's move on to

2  another issue.  I want to talk to you a little about the

3  medication problems you say you're having at your new

4    institution.  I cannot interfere with a medical specialist, a

5    medical professional's treatment of his or her patient.  And

6    you know that from my prior discussions about this in court.

7    Are you being treated at your new institution?

8         MR. DeFRANCO:  I'm not being treated.  As the court

9    knows, I have family members who are physicians.  And I've had

10   two -- medical professionals concur on what I should be given.

11   What I have is a conflict of interest down here in regard

12   because the treating psychiatrist here is related to the

13   department's head psychiatrist, and the department's head

14   psychiatrist, your Honor, less than a year ago, that is the

15   doctor we have trouble reading his handwriting -- I've since

16   been able to have it deciphered.  But he left me on my complete

17   prescription regiment when he was specifically sent to Albion

18   to take inmates off of unneeded anxiety and pain medication.

19   Now, this doctor at SCI-Smithfield happens to be related to

20   this doctor, a psychologist or psychiatrist -- who had me on

21   panic and anxiety medication to the point where I'm having

22   panic attacks quite frequently.  His idea is to put me on blood

23   pressure medication for high blood pressure -- I already have

24   low blood pressure.  My family needs to say they disapprove.

25   Although, they can't prescribe anything.  I don't know why I'm

19

1  being sent 240 miles away from home.  I lost my job, I'm

2  unemployed.  I'm seeing a new psychiatrist, when I arrive into

3  the institution, he cuts my medication in half, he doesn't even

4  know me.  Steadily over a month he's been taking away the

5  medication.  His goal is to take me off it completely and try

6  this high blood pressure medication, I don't have high blood

7  pressure.  I'm going through severe panic anxiety attacks.

8  Every time I go into medical forms, they're charging me to see

9  me because I don't know if it's -- or panic.  Because they feel

10  the same.

11        THE COURT:  All right.

12        MR. DeFRANCO:  I have a problem of not being

13  treated.  I have a problem with the whole thing.

14        THE COURT:  I will decide that, take that under

15  advisement, I will write opinions on all of them.  My last

16  comment I want to make is this.  You send regularly to the

17  court these letters, they're addressed to me --

18        MR. DeFRANCO:  I couldn't hear you.

19        THE COURT:  I'm regularly receiving letters from you

20  addressed to me.  And I'm not aware that you are sending copies

21  of these letters to the defendants.  And you can't do that.

22  You're not allowed to have ex-parte communications with me.

23  Separate communications with me that the defendants don't know

24  about.  And so I am not reading these letters.  We put them in

25  the file and I don't read them.  And I can't read them, that's

20

1  why I don't.  If you send a copy to me, send a copy to the

2  defendants as well.  And you have to have a notation to that

3  effect, then it will be treated as a motion or something to

4  that effect and I will then docket it.  But you cannot

5  correspond with me privately, do you understand?

6        MR. DeFRANCO:  Okay, yes.

7        THE COURT:  All right.  Good.  Is there anything

8  pending that I didn't discuss.  We have then a motion, docket

9  number 68 -- I'm sorry, that one is moot.  I decided 68 and I

10  decided the motion to compel.  So I have a motion for

11  preliminary injunction that is pending that I will decide and

12  take under advisement.  And you know what you have to do if

13  you're going to amend the complaint, let us know?

14          MR. DeFRANCO:  Right.  I asked you to amend it a

15   second time, your Honor, and I believe you thought it was, that

16   you said was in duplication.  I was asking to amend it a second

17   time once I got here.  And finally I got my property.  I was

18   able to type out a petition to amend the second time.

19          THE COURT:  But you don't want to amend it until you

20   get your exhaustion in line.

21          MR. DeFRANCO:  I didn't think I had to do that given

22   the circumstances.

23          THE COURT:  It will get dismissed right away.  It's

24   a requirement by Congress.

25          MR. DeFRANCO:  Okay.  Under the PLRA?


21


1          THE COURT:  Exactly.  Anything else you want to say,

2   Mr. Bareford?

3          MR. BAREFORD:  Just with respect to medication,

4   ma'am, couple of quick points.  I know the court is well aware

5   of the fact that once again a preliminary injunction --

6          MR. DeFRANCO:  I can't hear you, Attorney Bareford.

7          MR. BAREFORD:  Maybe if I stand up, it will project.

8   The preliminary injunction that is seeking to be obtained now,

9   he's asking the court to take an action with respect to a

10   number of individuals that the court has no personal

11   jurisdiction over at this point.  Furthermore, once again,

12   there's no indication whatsoever that there's been an attempt

13   to exhaust, therefore, the likelihood of success on the merits

14   he will not be able to show.  Furthermore, he concedes the fact

15   that he's under a doctor's care right now.  As the court is

16   aware, disagreements with the type of treatment, even rising to

17   the level of something like malpractice, does not constitute an

18   8th Amendment violation with respect to medical treatment.

19   Therefore, no injunction is appropriate at this point is our

20   position.

21       THE COURT:  All right.

22       MR. DeFRANCO:  May I respond for a minute.

23       THE COURT:  Sure.

24       MR. DeFRANCO:  I believe that I understand

25   malpractice, I believe the court can intervene if it's a


22


1   continuing cycle, what the doctors are doing, of showing harm.

2  I have exhausted all the way up to the superintendent's level

3  grievances about my medication and my panic attacks.  And right

4  now one is going out to Camp Hill.  I have in fact grieved the

5  medical department and the psychiatrists in the way I'm being

6  treated.

7      THE COURT:  You can bring that as an extra claim.

8  But I do understand both sides of the argument, I just have to

9  make a ruling, all right.

10      MR. DeFRANCO:  Okay.  Being so far away from home --

11      THE COURT:  Pardon me, what did you say, I'm sorry,

12  I missed that?

13      MR. DeFRANCO:  There is nothing you can do because

14  I'm so far away from home, you can't intervene in this?

15      THE COURT:  I can't get you transferred back or

16  closer to home --

17      MR. DeFRANCO:  Near my family, particularly, my

18  mother.

19      THE COURT:  Who was your trial judge?

20      MR. DeFRANCO:  Shad Connelly.

21      THE COURT:  He might be able to help in that regard.

22  But the federal courts cannot.

23          MR. DeFRANCO:  Okay.

24          THE COURT:  I'm just telling you that straight out,

25   I'm just being honest with, you'll see the law on that and the


                                    23


1   precedent on that in my R and R.  But I just cannot.

2          MR. DeFRANCO:  Okay.  They create a real hardship.

3   And that's a shame -- a shame that my family has to go through

4   this along with myself, your Honor.

5          THE COURT:  I understand.  It's a very difficult

6   thing to be incarcerated.

7          MR. DeFRANCO:  I understand about the incarceration,

8   I've been doing it for 13 years.  The way they did it, I mean,

9   you took the declaration from Mr. Barr and in your

10  recommendation to deny the temporary restraining order and

11  leave me at Albion you accepted the declaration as true, that

12  there was no planned transfer for me.

13          THE COURT:  I will put this on the record, I will

14  say this.  Mr. Skindell, you can tell Mr. Barr I said this.  I

15  never expected Mr. Barr to be so angry about the temporary

16  restraining order ruling that he would move for a separation.

17  It's just not the way my dealings with Mr. Barr have been.  I

18  was disappointed in that.  If there were other reasons for his

19  request, then I don't know them, I can't speak to them.  If

20  those were the reasons, I was disappointed to hear that.

21  Because Mr. Barr has always told me precisely the truth.  And

22  when he told me he didn't anticipate --

23        MR. DeFRANCO:  I sent you a copy of the grievance

24  reply, your Honor.

25        THE COURT:  I'm not finished Mr. DeFranco.  When he


                              24


1   told me he had no plans to transfer you, I believed him.  But

2   that being the case, I cannot reverse that decision.  But I

3   will review your motion and I will write an opinion to that

4   effect.

5         MR. DeFRANCO:  Okay.

6         THE COURT:  And the case will continue here, Mr.

7   DeFranco.  So when and if it goes to trial, you will brought

8   here.

9         MR. DeFRANCO:  Okay, your Honor.

10        THE COURT:  All right.  Anything else from any of

11  the parties?

12      MR. BAREFORD:  Your Honor, just with respect to the

13  issue that is pending on appeal, what is the next step you

14  would anticipate in the case --

15      THE COURT:  Before we started on this topic, I asked

16  the question what is on appeal and Mr. Bareford is about to

17  answer that.

18      MR. BAREFORD:  The question that I understand is

19  what is frankly the effect of the ruling on the preliminary

20  injunction, that was an order by Judge Cohill at the end of

21  February is the issue that's on appeal.  So my question would

22  be that that is somewhat of an isolated matter with respect to

23  responding to the complaint.  So I'm under the assumption you

24  still anticipate a responsive pleading to the complaint and

25  amended complaint that have already been filed, I just would


                                25


1  like to confirm that?

2      MR. DeFRANCO:  I didn't hear part of what you said.

3      THE COURT:  What he asked was, Mr. DeFranco, do I

4  still require him to answer the complaint and amended complaint

5    or respond to it in some way, even though you have the

6    injunction order on appeal.  The answer he anticipated is

7    accurate.  Yes.

8         MR. DeFRANCO:  I filed this and he will get a copy

9    of everything that I sent you probably today.  I sent a motion

10   to compel an answer.

11        THE COURT:  He must answer it.  And the order on the

12   preliminary injunction is an interlocutory appeal that you can

13   take.  Therefore, the case continues.  The problem for me and

14   the district court is that we lose our file.  The file goes up

15   to the appellate court, I cannot work my file without the

16   papers.  So although you're required to respond, everything

17   kind of sits until the appellate court decides the issue.

18        MR. DeFRANCO:  One last thing, your Honor.  Just so

19   you're aware of it, I appealed one of your rulings in regard to

20   transcripts.  And Judge Cohill denied that ruling on 4/11/05.

21   Judge Cohill denied my request --

22        THE COURT:  For transcripts?

23        MR. DeFRANCO:  Right, on April 11th.  He said they

24   were already transcribed, the December 17th transcript,

25   document number 14, that was an error, they have not been

26

1    transcribed.

2           THE COURT:  Lists the docket entry as November 5th.

3           MR. DeFRANCO:  We didn't have the preliminary

4    hearing until December 17th.

5           THE COURT:  I see his mistake.  You can ask him to

6    reconsider his order, I can't.

7           MR. DeFRANCO:  I just wanted to let you know they're

8    not part of the record on appeal.  I guess he must have had

9    impression that they are.

10          THE COURT:  The circuit will ask for them.  And you

11   can move to reconsider, but that's all we can do.

12          MR. DeFRANCO:  Okay.

13          THE COURT:  If the circuit wants them, they'll ask

14   for them, okay.

15          MR. DeFRANCO:  Okay, your Honor.

16          THE COURT:  I have no reason to require the court

17   reporter to transcribe them for me, I don't need them right

18   now.  All right.  Well, then, thank you for everyone getting on

19   this call, I appreciate it.

20          MR. DeFRANCO:  Thank you, your Honor.

21          THE COURT:  Remember, whenever you need to contact

22   me, make sure you let the other side know you've done it.

23          MR. DeFRANCO:  I will definitely do that.

24          THE COURT:  Okay.

25          MR. DeFRANCO:  If you can answer this or not, your


                              27


1   Honor, is it true or not true that you can't compel a prison to

2   give me the proper medical treatment?

3          THE COURT:  I haven't ruled on that order yet.  That

4   is a motion I've taken under advisement, you'll get my ruling,

5   okay.

6          MR. DeFRANCO:  Okay, thank you, your Honor.

7          THE COURT:  We're adjourned.

8

9          (Whereupon, at 3:00 p.m., the proceedings were

10   concluded.)

11

12                    - - -

13

14

15

16

17

18

19

20

21

22

23

24

25


28


1          C E R T I F I C A T E
           – – – – – – – – – –

2

3

4

5       I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11  _____

12  Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25