IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO | : |
| Plaintiff, | : Case No.C.A-04-230-ERIE |
| vs. | : MAGISTRATE JUDGE BAXTER |
| WILLIAM WOLFE, et al., | : DISTIRCT JUDGE COHILL |
| Defendants. | : |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE**
**FOR MOTION FOR RECONSIDERATION**

To: **The Honorable Judge Maurice B. Cohill, Jr.**

AND NOW, comes plaintiff, Anthony DeFranco, and respectfully submit the following Reply to Defendants' Response to Plaintiff's Motion for reconsideration:

1. This matter comes before the Court based upon the request for a TRO and preliminary injunction to stop any further retaliatory transfers.

2. The defendants' have filed their Response to plaintiff's motion for reconsideration, which is currently pending before this Court. Contained in the body of the defendants Response, they state that the only threat plaintiff had received prior to the March, 2005 retaliatory transfer was by defendant Barr. However, a reading of plaintiff's complaints and other filings demonstrate that plaintiff had been threatened by numerous staff with a transfer; See complaint, ¶¶ 34, 36 and 38; Amended Complaint, ¶¶51, 53 and 62; 2nd Amended Complaint, ¶¶ 64-70; see also, Motion for Preliminary Injunction (Doc.#4), contained in the prayer plaintiff specifically asked the Court not to allow any retaliation; See Amended Preliminary Injunction (Doc.#6, filed 9/1/04) in the

prayer, plaintiff states "...and Order the defendants not to retaliate against plaintiff in the way of their *prior* threat of transferring him further away from his home."

3. All of the above were referenced inside plaintiff's documents filed with this Court *before* the retaliatory transfer.

4. The Magistrate Judge recommended the granting of the TRO, enjoining the defendants from transferring plaintiff (Doc.#11) and this Honorable Court adopted said recommendation as its own. This was based upon plaintiff's past pleadings and assertion that defendant Barr had threatened him after the TRO hearing (See Doc.##11 & 13). The Magistrate stated:

> "Plaintiff has also demonstrated a likelihood of success on the merits with regards to this claim of retaliation. In particular, plaintiff has alleged that he has received continued threats from one or more of the defendants that he will be transferred to another Correctional institution far away from his family if he continues to pursue reinstatement of his z-code status. The last of these threats allegedly occurred immediately after the telephone hearing of October 22, 2004, when plaintiff was allegedly informed by Mr. Barr that there would be a "single cell available for [him] at SCI-Dallas." Accepting plaintiff's allegations as true, this last threat is particularly disconcerting, as this Court was advised by Mr. Barr during the telephone hearing that there were single cells available at SCI-Albion. Thus, the only reason for transferring plaintiff to SCI-Dallas, or threating to do so, would be in retaliation for plaintiff's continued exercise of his First Amendment right to file grievances and to petition this Court for reinstatement of his z-code." The Magistrate goes on to recommend a TRO barring plaintiff's transfer.

See Magistrate Judge's R & R, Doc.#11, page 6.

## DISCUSSION

It was obviously conveyed to the Magistrate Judge, during the October 22, 2004 TRO hearing, by defendant Barr, that there were no intended transfer planned for plaintiff. Even during and after the preliminary injunction hearing, there was absolutely no evidence produced by the defendants to refute plaintiff's prior allegation of being threatened with a transfer (which was the basis for the Magisrtate Judge to recommend the TRO be granted and this Court adopting that recommendation). The only reason for the Magistrate Judge recommending that the TRO be

lifted as to the issuance of the TRO stopping any transfer was based upon an assertion made by defendant Barr, whether omitted by the record or not, that there were no planned transfers for plaintiff. While it is true that the Magistrate Judge does refer to defendant Barr's affidavit, a review of that quote reveals that the Judge was relying on the "testimony" of Barr *and then* goes on to further reference his November 8, 2004 affidavit. While plaintiff may have inadvertently mistated the Barr affidavit, certainly the Magistrate Judge knows what she heard defendant Barr testify to. The only confusion is that plaintiff mistakingly asserted that defendant Barr made the statement in his affidavit that there were no planned transfers when he actually "testified" to that effect during the 10/22/04 TRO hearing, as stated by the Magistrate Judge.

Inside the defendants Response, page 6, they quote the transcript while purposely omitting the Magistrate's full response, which takes the statement out of context. The Magistrate was not talking about the TRO as it related to the future transfer but was actually speaking about plaintiff's "z-code". Compare defendants Response, page 6:

> The Court…The TRO lasted 10 days and then it dissolves automatically under the federal rules. And then I did not grant a preliminary injunction.
> Mr. DeFranco: You did that based on Mr. Barr's declaration affidavit. That was a later recommendation based on him telling you there was no planned transfer.
> The Court: No, I did that because of the court hearing we had. The hearing we had and the evidence that was in front of me. ***I believed I did not have, that we did not have enough to show the likelihood of success on the merits as to z-code status.***

See 9/2/05 transcript, page 4-5. The bolded quote is what the defendants purposely left out which goes to their continued deceitfulness.

5. The defendants claim plaintiff was transferred due to a conflict between defendant Barr, because Barr is the grievance coordinator. Supposedly defendant Barr did not want future conflicts with plaintiff over any *potential* grievances. This argument is outrageous in light of the fact that hundreds of inmates file grievances in the Department of Corrections each week. Does

the D.O.C. transfer those inmates? Even the inmates who actually have litigation filed against personnel located in the same prison.

6. What is very telling in this Response is the Magistrate Judge's own statement:

> The Court: "Mr. DeFranco, do you know how many lawsuits Mr. Barr has against him at Albion by prisoners at Albion?
> Mr. DeFranco: "I have no clue."
> The Court: "I don't either, I know it's a lot. He just does not transfer people around, he doesn't have the authority, quite candidly, to transfer people around because they sue him...."

See, 9/2/05 transcript, page 10. So the question becomes, why was plaintiff transferred by defendant Barr's request as opposed to those many other inmates who have sued him? Moreover, if this was not a retaliatory transfer, why did the superintendent bring plaintiff back to Albion "in resolution of the grievance?" Plaintiff's grievance clearly and repeatedly states that he was transferred in retaliation for filing this lawsuit. By the superintendent's granting plaintiff's grievance, in essence, admits that plaintiff's facts inside the grievance are true and that he was transferred in retaliation for filing the lawsuit.

7. What the Magistrate Judge stated during the hearings are even more revealing, for example:

> The Court: "Here's what I can tell you, Mr. DeFranco. You have no luxury in the department of Corrections' system to choose where you want to be. That's number one. Number two, **I am surprised that you were transferred, especially in light of the claims you made. The Department of Corrections, through the Attorney General, is going to have to deal with a retaliation claim. And they're probably not going to be happy to do that, but it's going to be a good one.** And with those two thoughts to give you, that's all I can say. You do not have a choice of where you get to be. And you worked hard to get to where you ended up and then you were removed. I don't know what I can say to you."

See 4/21/05 Transcripts, page 12. And again the Court stated:

> The Court: "I will put this on the record, I will say this. Mr. Skindell, you can tell Mr. Barr I said this. I never expected Mr. Barr to be so angry about the temporary restraining order ruling that he would move for a separation. It's just not the way my dealings with Mr. Barr have been. I was disappointed in that. If there were other reasons

Plaintiff's Reply- 4

for his request, then I don't know them, I can't speak to them. If those were the reasons, I was disappointed to hear that. Because Mr. Barr has always told me precisely the truth. And when he told me he didn't aniticipate---I'm not finished Mr. DeFranco. ***When he told me he had no plans to transfer you, I believed him.*** But that being the case, I cannot reverse that decision. But I will review your motion and I will write an opinion to that effect."

See 4/21/05 Transcripts, pages 23-24.

8. While plaintiff concedes that he may have mischaracterized Barr's affidavit by error, the Magistrate Judge clearly states that Mr. Barr specifically told her that he had no plans to transfer plaintiff. Above bolded statement by the Magistrate.

9. Even the Deputy Attorney General admitted plaintiff may have a basis to state a claim under retaliation:

> Mr. Bareford: Yes, ma'am. We're not saying he may not have a basis to state a claim under retaliation, under 42 U.S.C. 1983,...

See, 4/21/05 Transcripts, page 8.

10. The following events are undisputed: plaintiff filed this lawsuit on August 10, 2004. Contained inside every one of his pleadings he either asks the Court to stop any retaliation or transfers and states that he had been threatened by transfers by numerous individuals at SCI Albion. The Magistrate Judge recommends a TRO ensue due to the threats made by defendant Barr and other staff, which this Court adopts. After a preliminary injunction hearing, to which not one piece of evidence was offered to refute the Courts granting the TRO stopping transfers in regards to the pursuit of z-code status. Even though the ruling was against plaintiff in regards to making a showing strong enough to warrant the issuance of a preliminary injunction, the case was not over. Further, as stated, the Magistrate Judge took defendant Barr's *testimony* that he had no plans on transferring plaintiff as true (Magistrate's own words, 4/21/05 transcripts, page 24). Also, a Michele Flavell provided the Court with a signed declaration that she personally had

conversations with Barr back in the summer of 2002 where Barr specifically told her that if he had it his way plaintiff would be moved to the center of the state right now (Declaration of M. Flavell, Doc.#26)—attached hereto. The superintendent then addresses the issue of plaintiff's grievances about the retaliatory transfer and allows his return to Albion "in resolution of the grievance." Attached hereto. This admits the allegations made by plaintiff inside his grievance (attached hereto) that the transfer was retaliatory.

11. During the September 2, 2005, hearing, the Magistrate Judge asked plaintiff if he had a "transfer order" to produce as proof that he was being transferred. See 9/2/05 Transcript pages 4, 7-8 and on page 9, where the Judge states:

> "...so if you get a transfer order, you can renew the TRO." Further, "That's not enough. What I need from you is some sort of transfer order. And if you don't have a transfer order, then anything you say is going to happen is speculation, we just don't know." Page 10, id.

12. Plaintiff is asking the Court to issue a preliminary injunction barring any future retaliatory transfers---and if the defendants plan to transfer him that they provide him with information of the planned transfer, giving him at least thirty (30) days notice so he may file for a TRO. The past transfer was "due to litigation" and <u>completely</u> violated plaintiff's Constitutional rights; a clearly established constitutional right.

13. Attached is a request slip signed by a unit officer saying that he does not know why there is no 'inmate block file' for plaintiff when there is a file for every other inmate. This is a clear indicator of the defendants plan on plaintiff not being kept at SCI Albion long.

14. Plaintiff has received continued comments alluding to future transfers. The last of these comments came from the head of transport, Sgt. Rhoades, on February 21, 2006, while he ran the unit made a statement to the effect that plaintiff should not get "too comfortable here (at SCI-Albion)".

**ARGUMENT II**

**Defendants' Response is Self Contradictory and Attaches Alterated Documents**

The defendants have submitted a forged/altered document as an exhibit for this Court's review. Specifically, defendants exhibit "A", attached to their Response (Doc.#153), a "transfer petition", is altered/forged. A review of the facts, as admitted in defendants Response, prove this. Plaintiff only added Mr. Barr as a defendant on *March 7, 2005* (Doc.#63) and the *"transfer petition was initiated weeks before, on February 15, 2005."* See defendants Response, ¶ 24.

The defendants response goes on to state, *"Further, the transfer petition, which was requested on February 15, 2005 and approved on Febraury 23, 2005, noted that the Administrative/Separation transfer is being requested due to litigation against William Barr, SCI-Albion's Superintendent Assistant."* See defendants Response ¶ 25. Indeed, the transfer petition states this as the reason for the transfer request. Unfortunately for the defendants, they have exposed themselves for altering this document as it would be impossible for Mr. Barr to claim he was requesting a transfer of plaintiff *due to litigation against him* on *February 15, 2005* when he had no litigation against him by the plaintiff until *March 7, 2005*---almost a month after Mr. Barr purportedly requested this transfer (according to the transfer petition supplied by the defendants). Said another way, there was no litigation against Mr. Barr on Febraury 15, 2005, when he supposedly requested the transfer of plaintiff. Mr. Barr had no litigation against him until March 7, 2005 (admitted by defendants in their Response and reflected by the record). This transfer petition is altered and/or forged as there was no way for Mr. Barr to know plaintiff was filing litiagtion against him on Febraury 15, 2005, as he stated and used as reasoning in transferring plaintiff; counsel for the defendants uses this rationale in the Response filed. The

Plaintiff's Reply- 7

only logical scenario is that Mr. Barr had plaintiff transferred after he knew plaintiff named him as a defendant on March 7, 2005.

When plaintiff alleged that the defendants transferred him after this Court adopted the Magistrate Judge's R & R (Doc.#41) on Febraury 28, 2005 (Doc.#62), did the defendants transfer him (on March 8, 2005), once the TRO was lifted. In order to defeat this claim they altered a transfer petititon to make it appear that Mr. Barr requested the transfer *before* this Court made its Ruling (Doc.#62) and then backdated the transfer petition.

Giving the defendants the best "benefit of the doubt", accepting the transfer petition as not being forged or altered, then Mr. Barr and defendants, falsified the transfer petition to have plaintiff transferred when they submitted it on February 15, 2005. As stated and proved by the record, plaintiff had no litigation against Mr. Barr on Febraury 15, 2005 when they claimed he did in making the excuse for the transfer petition. At the very least, they falsified the transfer petition in the first instance to have plaintiff transferred.

However, the only scenario that would make sense is that the defendants forged or altered the transfer petition as there was no litigation against Mr. Barr until **March 7, 2005**, and no way for them to make reference to it until the date it was filed and notified.

## CONCLUSION

As this Honorable Court stated in its Order of November 29, 2005 (Doc.#136), it appears that plaintiff can show a likelihood of success on the merits. This Court further stated, citing **Castle v. Clymer**, 15 F.Supp 2d at 661, "there is a widespread agreement among the Courts of Appeals as to the unconstitutionality of transfers based upon inmates' exercise of substantive constitutional rights—such as the right of freedom of speech.". (Doc.#136 at pages 4-5). Given

the facts of this case, including the retaliatory transfer and the way the defendants now attempt to defend it; asserting reasoning that proves that they have been deceitful, even to this day with the Court, a preliminary injunction should ensue. The harm to the defendants will be none, and the affect on public policy will best be served by protecting plaintiff's substantive constitutional rights. The defendants' have shown this Court via the record that they have violated plaintiff's constitiutional rights and plan to do so again.

WHEREFORE, plaintiff prays this Honorable Court will issue a preliminary injunction enjoining the defendants' from any future retaliatory transfers; that if they plan to transfer plaintiff that he be given at least thirty (30) day prior notice so that he may file a TRO with the Court. And any other relief the Court sees fit.

March 3, 2006

Respectfully Submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**
Service of the foregoing was
made by U.S. First Class mail this
date to the Attorney General's Office,
564 Forbes., Manor Complex, Pgh., Pa. 15219

# EXHIBITS

A—Plaintiff's Grievance on Retaliatory Transfer

B---Superintendent's Grievance Response granting Grievance

C---Reply to Plaintiff's Grievance by SCI Albion

D---Correspondence from Superintendent

E---Declaration of M. Flavell stating retaliatory transfer

F---Request slip from unit officer

G---TRANSFER PETITION

EXHIBITS

Case 1:04-cv-00230-MBC   Document 156   Filed 03/08/2006   Page 11 of 17
04/20/2005 14:43 FAX 814 756 9737   SCI ALBION SUPT   ☒003
Case 1:04-cv-00230-MBC-SPB   Document 153   Filed 02/23/2006   Page 2 of 12

DC-804
Part 1
SCI-Smithfield
MAR 15 2005

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
112276
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Super / Mr. Barr | Albion | 3/8/05 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| Anthony DeFranco  CZ-3518 | [signature] |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| — | at SCI-Smithfield |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.**

This is in regards to a retalitory transfer that I have been saying would happen for years - in which the Federal courts are aware. During a interview this date, it was told to me by SCI Smithfield officials that I was moved for making Mr. Barr a Defendant, which created a "conflict of Interest". The DOC has moved me approx. 4 hours away from home, just as I predicted on paper previously. As Mr. Barr knows, this court action is no reason to transfer me. He distributes almost all grievances filed to other staff to handle (which I can prove). So, moving me from my home jail was strickly retalitory. Which has cost my family considerable hardship. It has cost me my top paying job, which has kept me surviving (money wise) in prison. As the DOC knows, when an inmate files suit on the Superintendant he is not automatically removed (And the Super. must review all grievance appeals). I am requesting my immediate return to SCI Albion - In the mean time, I would like to keep my same inmate pay that I was receiving before this retalitory transfer which has caused all this damage.

**B. List actions taken and staff you have contacted, before submitting this grievance:**

Spoke w/ SCI Smithfield officials who said this is why I was moved. No law clerk job available now.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____  3-15-05
Signature of Facility Grievance Coordinator   Date
Transfer / Mr. Bryant

WHITE - Facility Grievance Coordinator Copy   CANARY - File Copy   PINK - Action Return Copy   GOLDENROD - Inmate Copy
Revised

Case 1:04-cv-00230-MBC   Document 156   Filed 03/08/2006   Page 12 of 17

04/20/2005 14:43 FAX 814 756 9737   SCI ALBION SUP1   ☐002
Case 1:04-cv-00230-MBC-SPB   Document 153   Filed 02/23/2006   Page 3 of 12

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO.   112276

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| DeFranco, Anthony   CZ-3518 | SCI Albion | B/B 49 | 3/15/05 |

The following is a summary of my findings regarding your grievance:

Mr. DeFranco has a formal separation in place from Mr. Barr. It is felt that based on pending litigation it is in the best interest of all parties that he not be housed at SCI-Albion. No inmate has the right to determine where he or she will be housed.

Inmate was not available for signature as he is currently at SCI-Smithfield.

RESOLVED: _____  DATE: _____
            Inmate's Signature

UNRESOLVED: _____  DATE: _____
              Inmate's Signature

cc:   Original – Ms. McWilliams
      Grievance Officer
      Inmate          UAB 3-24-05
      DC-15

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| Ronald J. Bryant, CCPM | Bryant | 3/28/05 |

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778
May 10, 2005

**SUBJECT:**  **APPEAL TO SUPERINTENDENT**
**GRIEVANCE #112276**

**TO:**  Anthony DeFranco
CZ-3518
SCI-Smithfield

**FROM:**  Marilyn S. Brooks
Superintendent

I have reviewed the original grievance and the Grievance Officer's response.

I do not find an appeal on file for 112276. However, I will allow you to be returned to SCI-Albion in resolution of the grievance.

Your transfer back to SCI-Albion will be done as a routine transfer and will be done when it can be scheduled. In anticipation of property shipment, if you are over the allowable limit and it is shipped by means other than the DOC, payment for shipping will be your responsibility.

Upon return you will be housed according to your classification.

After thorough review and evaluation, I amend the Grievance Officer's decision.

MSB/ljm

cc:   Deputy Harlow
Deputy Wilkes
Mr. Bryant
Superintendent's Assistant
DC-15
File

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

**COMMONWEALTH OF PENNSYLVANIA**
Department of Corrections
State Correctional Institution at Albion
(814) 756-5778

JUL 2 5 2005

**SUBJECT:** INMATE REQUEST TO SUPERINTENDENT
**RE:** TRANSFER

**TO:** Anthony DeFranco
CZ-3518
SCI Smithfield

**FROM:** Marilyn S. Brooks
Superintendent

Mr. DeFranco, I received your letter regarding your transfer back to SCI Albion. I verified that your transfer has been approved. You will be transferred according to the schedule for transfers; however, I am not at liberty to discuss those schedule issues with you.

As to your concern over the length of time that it is taking, I can appreciate your concern for your family. Transfers are a lengthy process and I can assure you that no one is purposely impeding your transfer.

MSB/MK/dls

cc:   Unit Manager
      Counselor
      DC-15
      File

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"



(Doc # 26)

# UNSWORN DECLARATION

Case Reference: <u>DeFranco V. Wolfe, No. CA 04-230 Erie</u>

I, <u>Michele Flavell</u>, make the following statement in regards to my telephone conversations with Bill Barr, the man in charge at the Albion Prison. During the time that Anthony DeFranco was in the hole I had made numerous telephone calls and spoke with Bill Barr. On either the last phone call, or the one before, Bill Barr directly told me in regards to keeping Anthony DeFranco at Albion Prison, rather than transfer him, that **"if it were up to him that he (Anthony DeFranco) would be transferred to the central of the state (Rockview) right now."** His tone was one of seriousness.

Anthony DeFranco was not transferred due to some program committee at Albion who actually stopped the transfer. Bill Barr was not on Anthony DeFranco's side in staying at Albion, he was against it. However, a few months before this, he was or at least acted like he was, on Anthony DeFranco's side and stated he would help to keep him at Albion due to his mother's heart troubles and family being so close. But in the summer of 2002, Bill Barr was in no way on Anthony DeFranco's side in trying to keep him at Albion. He actually told me that if he had it his way that Anthony would be transferred **right now**.

I make this Declaration under the penalty of perjury.

_Michele Flavell_    Date: 11-26-04
Michele Flavell (814) 452-0339

I have sent copies of this to: U.S. District Courthouse          Attorney Generals Office
                               Clerk's Office, P.O. Box 1820    564 Forbes Ave. Manor
                               Erie, Pa. 16507                   Pgh., Pa. 15219

Honorable Judge Paradise Baxter
17 South Park Row
Erie, Pa. 16501

| Form DC-135A<br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections |
|---|---|
| | **INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

PORTERFIELD

1. To: (Name and Title of Officer)
   Officer Potterfield (Unit Officer)

2. Date: 12/12/05

3. By: (Print Inmate Name and Number)
   Anthony DeFranco C23518
   _Anthony DeFranco_ (Inmate Signature)

4. Counselor's Name: Mr. Webb

5. Unit Manager's Name: Mr. Kendall

6. Work Assignment: Law Lib

7. Housing Assignment: D/A 31

8. Subject: State your request completely but briefly. Give details.

Would you be able to tell me why there is no inmate block file for me, when there is one for every other inmate?

9. Response: (This Section for Staff Response Only)

**NO I CAN NOT!**

☐ To DC-14 CAR only      ☐ To DC-14 CAR and DC-15 IRS

Staff Member Name: PORTERFIELD (Print) / (Sign)     Date 12-15-05

Revised July 2000

# Pennsylvania Department of Corrections

Return to DocNet

dkagarise 4/20/2005 4:17:51 PM

Transfer Petition System - Permanent Petition

Production

Inmate Info \ Reports \ Photos \ JNET

DOC Info

**Return to Last Inmate**

Inquiry \ Reports \ Help

**Inmate #:** CZ3518 ACTIVE   **Name:** DEFRANCO, Anthony Wayne   **Cust Lvl:** 3   **Prog Cd:** Y,Z   **Perm Loc:** Smithfield
**Race:** White   **DOB:** 12/23/1963   **Sex:** Male   **Housing Unit:** C-A-1016-01   **Temp Loc:**
**SID:** 149-70-82-7   **FBI #:** 242913AA6   **PBPP #:**   **Counselor:**

**Detainers:** YES

**Problematic offense:** YES

Cancel

---

**Purpose Of Transfer:** Adm./Separation   **Other:**

**Priority Transfer:** NO

**Approval Required:**
(Applies to CCC or PV return only)

**From:** ALB - ALBION   **To:** SMI - SMITHFIELD

**Requesting Official:** Habursky, Christine Marie

**Status:** Transferred   **Trip Id:** 037-B1-03/08/2005

**Approved by:** Williamson, Donald   **Request Date:** 2/15/2005 11:09:10 AM

**Approval Comments:** PER REVIEW BY CENTRAL OFFICE PSYCH. STAFF   **Approval Date:** 2/23/2005 2:24:50 PM

**Layover Location:**   **History Date:** 3/8/2005 3:04:57 PM

**Layover Comments:**   **Custody Level:** 3

---

**Sentence Explanation:**

**Commutation:** NO   **Confidential Info:** NO   **Individual Treatment Plan:** YES
**Mental Health Transfer:** NO   **Other Info:** NO

---

**Passenger List Comments:** Panic Disorder without Agoraphobia

**Rationale for Transfer & Institutional Recommendations:**

Serving a Life sentence for Criminal Homicide. Detainer for Simple Assault. Escape History: 1982 Escape. Completed Citizenship and is currently a peer leader for Citizenship. Needs to complete A.O.D. Education and Violence Prevention. An Administrative/Separation transfer is being requested due to litigation against William Barr, SCI-Albion's Suerintendent's Assisstant. Mr. Barr is the Institutional Grievance Coordinator and doesn't want any potential problems between this inmate and future potential grievances.