IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO,<br>Plaintiff,<br><br>V.<br><br>WILLIAM WOLFE, et al.,<br>Defendants. | : <br>: No. C.A. 04-230-E<br>: Magistrate Judge Baxter<br>: District Judge Cohill<br>:<br>:<br>: |

### APPEAL OF MAGISTRATE JUDGE'S ORDER DOC. No. 171

**TO THE HONORABLE JUDGE COHILL, JR.**

AND NOW, comes plaintiff, who brings forth this appeal to the Magistrate Judge's Order (Doc.#171) denying the appointment of counsel, and in support avers:

1. Plaintiff has requested the appointment of counsel from the beginning of this case. In fact, the Magistrate Judge issued an Opinion regarding the appointment of counsel on December 6th, 2004. (Doc.#29), and denied that request. However, as the Magistrate stated in the Opinion, plaintiff's "claims have some arguable merit", page 4-5.

2. Additionally, the Magistrate's R & R recommending the issuance of a temporary restraining order stated plaintiff's issues have arguable merit (see Doc.#11). This Honorable Court then adopted the R & R (Doc.#13).

3. Since the time of filing for the appointment of counsel, plaintiff has been retaliated against by the defendants' (Department of Corrections) and was permitted to bring a retailiation claim.

4. The case is now in the discovery stage and plaintiff is experiencing considerable hardships in fully understanding the discovery rules. Additionally, the defendants have been objecting to almost every production of documents under the cloak of "security", to which it appears that the Magistrate is accepting.

1

5. While the defendants have allowed plaintiff to inspect some of his files, they were "redacted" so that he was only permitted to view what the defendants wanted him to see. They claim that by allowing him to view his unredacted medical and other files would be a breach of security somehow.

6. Recently the defendants have totally objected to plaintiff viewing his inmate file (DC-14) which contains information regarding this case and plaintiff's claims, or is likely to lead to other pertinent information.

7. Of import is the defendants total objection to allowing plaintiff to view the DOC "policy" concerning the z-code…this policy is the crux of plaintiff's argument and claims of civil rights violations. This policy is what plaintiff is challenging as being violative of his constitutional rights. Given these discovery difficulties, the defendants claims of security issues, plaintiff submits that the appointment of counsel is needed in this case.

8. While the Magistrate states in the May 23rd, 2006 Order denying the appointment of counsel that, "Since that time, (of plaintiff's prior request for counsel) no new argument has been raised by Plaintiff, nor have any new complexities arisen that would warrant the appointment of counsel in this case." This is factually inaccurate in the backdrop of the major discovery denials made by the defendants; the most important of which is the z-code "policy" which the defendants had claimed plaintiff failed to meet the criteria of, and plaintiff avers that he did. There is a factual dispute regarding the z-code policy and without providing it to plaintiff he could hardly make any reasonable argument. Of course, this is what the defendants want.

9. Moreover, plaintiff has been diagnosed with severe mental health problems, *inter alia*, a delusional disorder by prison psychiatrist, Dr. Longstreet (see exhibit attached to Doc.#170) where Dr. Longstreet wrote out this diagnosis.

## DISCUSSION

In denying plaintiff's motion for counsel at the beginning of the case, while the Magistrate found that plaintiff's case had merit, counsel was denied because it appeared the plaintiff's claims were not

sufficiently extraordinary to require counsel; the Court thought plaintiff was literate and that he properly cited appropriate constitutional bases for his claims. Further, the Magistrate stated that the Erie area does not have a referral system in place to appoint civil rights attorneys (see Opinion, Doc.#11). As stated, this was at the beginning of the case. Since that time, significant changes have occurred that warrants the appointment of counsel. Certainly the lack of a referral system in the Erie area should not preclude the appointment of counsel in this case.

As a threshold matter, in deciding to appoint counsel, a District Court must assess whether the claimant's case has some arguable merit in fact and in law under **_Tarbon v. Grace_**, 6 F.3d 147 (3rCir.1993), at 155. Provided that the claim has some merit, the Court must then consider the other six (6) factors to determine whether to appoint counsel. The Court has already determined that plaintiff's claims have some arguable merit and have thus passed the threshold test.

   A. *Plaintiff's Ability to Present his own Case*

The post-threshold factors to be considered in plaintiff's ability to present his own case, which include the plaintiff's education, literacy, prior work experience, and prior litigation experience. However, these factors are not conclusive to establish a plaintiff's ability to present his own case, see **_Parham v. Johnson_**, 126 F.3d 454 (3rd Cir.1997) at 459. In *Parham*, the Court found that a prisoner's lack of legal experience and the complex legal discovery rules clearly put him at a disadvantage. As the Court found in **_Montgomery v. Pinchak_**, 294 F.3d 492 (3rdCir.2002). *Montgomery* was not a sophisticated "jailhouse lawyer" and it was was his first and only claim brought since being incarcerated. The same as with plaintiff in this case. Clearly the discovery obstacles being put up is making litigation impossible for plaintiff. The z-code "policy" is *material* to the case and without its production plaintiff can not argue it. The defendants are making almost blanket security issues with producing documents and the Magistrate is entertaining those assertions. Counsel needs to be appointed in this case so complete discovery can occur. Further, this plaintiff also suffers from severe mental health, *inter alia*, a delusional disorder, as diagnosed by prison psychiatrists (see exhibit

3

attached to Doc.# 170). In **_Hamilton v. Leavy_**, 117 F.3d 742 (3rd cir.1999), the Court stated that because the inmate sufferd from this mental illness, counsel should be appointed.

B. *The complexity of the Legal Issues Involved*

The Court in *Montgomery* also instructed that the complexity of the particular issue involved must be considered. The Court already held that a § 1983 civil rights case alleging deliberate indifference to a prisoner's serious medical needs can raise sufficiently complex legal issues to require the appointment of counsel. See *Parham*, 126 F.3d at 459. (instructing that, in analyzing the complexity of the legal issues for purposes of appointing counsel, "courts must still look to the proof going towards the ultimate issue and discovery issue involved"). This is because even where "the ultimate [legal] issue appears relatively simple...[s]implicity in the allegation supporting the claim does not translate into simplicity in the presentation of the claim." Id. Plaintiff has raised a medical deliberate indifference claim and the issues involved are extremely complex. Plaintiff suffered a pre-existing heart condition that was made worse by the defendants' action/inactions.

C. *The degree to Which Factual Investigation is needed*

As with any prisoner, the circumstances of plaintiff's confinement limit his ability to conduct discovery in support of his claims. Court's should weigh a request from an indigent litigant for appointment of counsel, courts should consider a prisoner's inability to gather facts relevant to the proof of his claim. See *Tarbon* 6 F.3d at 156. "The court may...consider the extent to which prisoners and others suffering confinement may face problems in pursuing their claim [such as] where the claims are likely to require extensive discovery and compliance with complex discovery rules." As stated, the defendants are not providing much needed discovery under the cloak of security issues which takes away much of plaintiff's evidence.

D. *The Need for Expert Medical Testimony*

The Third Circuit has recognized the need for expert testimony in proving a claim based on medical injury. See *Parham*, 125 F.3d at 460 ("A medical malpractice case involves complex facts and

medical records that even most lawyers struggle to comprehend. Hence, most of these cases require expert testimony."). In plaintiff's case one psychiatrist testified during a preliminary injunction hearing and gave very confusing testimony. Additionally, it was revealed by the doctor that one of the named defendants had actually tampered with the doctor prior to the hearing (thus, causing confusing and conflicting testimony). However, the doctor has subsequently signed a new affidavit clarifiying the opinion which supports plaintiff's claim. Plaintiff suffers from a serious heart condition and psychiatric troubles. The need for medical expert opinion is needed and has been produce previously.

E. *Plaintiff's Capacity to retain Counsel*

Plaintiff has been granted *in forma pauperis* status and cannot afford counsel. There has been no change in plaintiff's financial situation. This is another factor suggesting that appointment of counsel is warranted.

F. *Credibility Determinations*

In this case, there have been times with defendants tampering with witnesses; as evidenced by doctor Lindemuth's own testimony. The doctor gave conflicting reports and testimony and has recently signed a new affidavit clarifiying the medical opinion. Moreover, one of the defendants had testified saying there were no planned transfers for plaintiff when in fact he was transferred "due to litigation" in this case. This named defendant gave a conflicting affidavit after plaintiff submitted with the Court a motion for tempory restraining order asserting that this defendant (Barr) had threatened him with a transfer. While defendant Barr claimed that his statements to plaintiff at that time were not meant to be construed as a "threat", plaintiff claimed otherwise and was subsequently actually transferred in the face of defendant Barr's denial. Additionally, the preliminary injunction hearing held on 12/17/04 show that there is severe conflicting testimony and credibility issues. For example, Dr. Lindemuth testified that mental health was not a criteria for z-code status in the 5 to 10 years she was the prison psychiatrist. However, Defendant Reilly submitted an interrogatory stating that mental health is a z-code criteria in which the psychiatrist is a part of, every 120 days (see Reilly's

5

interrogatoies attached to motion to compel discovery).  Moreover, defendant Reilly states in his interrogatories that he never shared a conversation with prison counselor Webb nor the prison psychiatrist Lindemuth regarding plaintiff's 2004 z-code re-staffing while both Webb and Lindemuth testified during the preliminary injunction hearing that they had shared converstaions with defendant Reilly regarding the z-code re-staffing. (see transcripts, 12/17/04).  The circumstances of this case implicate six of the *Tabron* factors.  "Where a plaintiff's case appears to have merit and most of the aforementioned [*Tabron*] factors have been met, courts should make every attempt to obtain counsel." *Id.* at 461.  Under *Montgomery*, 294 F.3d 492, plaintiff submits that he has satisfied the *Tarbon* test and that counsel should be appointed.

    WHEREFORE, plaintiff prays this Honorable Court vacate the Magistrate Judge's Order and appoint counsel to represent him in this case.

Date: June 1, 2006

                                                     Respectfully Submitted,

                                                     Anthony DeFranco CZ-3518
                                                     10745 Route 18
                                                     Albion, Pa. 16475-0002

**Certificate of Service**

Service was made by US First
Class Mail this date to the
Attorney General at 564
Forbes Ave., Pgh. Pa. 15219