# ATTACHMENTS

# INTERROGATORIES OF DEFENDANTS BARR AND REILLY

# ATTACHMENTS

# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO,<br>Plaintiff, | :<br>: No. C.A. 04-230-E<br>: Magistrate Judge Baxter |
| V. | : District Judge Cohill<br>: |
| WILLIAM WOLFE, et al.,<br>Defendants. | :<br>: |

---

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S FIRST INTERROGATORIES
## TO DEFENDANT WILLIAM BARR, SUPERINTENDENT'S ASSISTANT

In accordance with Rule 33 of Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

1. How long have you been employed in the D.O.C.?

ANSWER:
>       SEE ATTACHED SHEET FOR RESPONSES.

2. Name, in order, the positions you have held in the D.O.C.

ANSWER:

3. What is your current position and why was your job changed?

ANSWER:

4. Have you ever worked in Central Office of the D.O.C.; under the Secretary or other Deputy? Please explain.

1

ANSWER:

5. When you moved to have plaintiff transferred in Febraury/March of 2005, did you receive the permission of the superintendent of SCI Albion? Or any other person? Please identify everyone and name how they knew and what their involvement was.

ANSWER:

6. Did you have conversations with friends and/or family of plaintiff in 2002?

ANSWER:

7. While having any of these converstaions, did you state that if you had it your way that you would have plaintiff moved to the center of the State right now (in 2002)?

ANSWER:

8. Do you recall the event of plaintiff allegedly threatening a guard in March of 2002?---Did the 'white shirts' (Lt.'s and Capt.'s) you spoke with regarding plaintiff, all speak highly of plaintiff? And did you summon the guard who was the alleged victim of plaintiff's threat in March of 2002 and try to have the misconduct lifted? If yes, please describe the events.

ANSWER:

Date:                                                    By:_____
                                                              William Barr

Served by U.S. Mail
on:___4/21/06___ by
plaintiff.

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DEFRANCO,                     )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )       C.A. No. 04-230 E
                                      )
WILLIAM WOLFE, ET AL.,                )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST
## INTERROGATORIES TO DEFENDANT WILLIAM BARR

1. Approximately 11 years.

2. Corrections Superintendent Assistant I, State Correctional Institution at Cambridge Springs; Administrative Assistant to the Secretary; Corrections Superintendent Assistant 2, State Correctional Institution at Albion; Corrections Superintendent Assistant 2/Acting Food Service Manager 2, State Correctional Institution at Albion.

3. Corrections Superintendent Assistant 2/Acting Food Service Manager 2, the responding defendant changed his position because of institutional need.

4. Yes, this defendant served as Administrative Assistant to the Secretary.

5. All transfers are made through Central Office.

6. Yes, several.

7. No; as a matter of fact this defendant spoke with the officer who wrote the misconduct to see if he would be satisfied with a East/West side of Institution separation.

8. This defendant recalls speaking with the Corrections Officer involved to see if a East/West separation would be adequate for separation. This defendant does not recall the specific staff that he spoke with.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA  15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: May 26, 2006

2

## VERIFICATION

I, William Barr, hereby state that the foregoing answers to Plaintiff's First Set of Interrogatories to Defendant William Barr are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

_____
William Barr

Date: 5/11/6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

***Defendant's Response to Plaintiff's First Interrogatories to Defendant William Barr***

was served upon the following, by first-class mail this May 26, 2006.

Anthony DeFranco, CZ-3518
State Correctional Institution
At Albion
10745 Route 18
Albion, PA  16475

MARY L. FRIEDLINE
Senior Deputy Attorney General

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,                    :
      Plaintiff,                 : No. C.A. 04-230-E
                      : Magistrate Judge Baxter
    V.                               : District Judge Cohill
                      :
WILLIAM WOLFE, et al.,               :
      Defendants.                :

---

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S FIRST INTERROGATORIES
### TO DEFENDANT STEVE REILLY, CHIEF PSYCHOLOGIST

In accordance with Rule 33 of Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

1. Please state whether your Office consult with any doctors, medical of mental health, before voting to approve or remove z-codes on inmates; and do any doctors get a vote on the z-code?

ANSWER:    SEE ATTACHED SHEET FOR RESPONSES.

2. Please explain how the z-code voting process works; how it is initiated and who determines whether the z-code is granted.

ANSWER:

3. Please state what mental health problems plaintiff was recorded to have in your Office in Demeber 1999 through June of 2002?

ANSWER:

4. It has became known that a Ms. Eichenlaub has purportedly stated that she was plaintiff's psychologist at a time in 2002; please state when and how many times your Office states this Ms. Eichenlaub consulted with plaintiff.

ANSWER:

5. Please state your duties of chief psychologist; do you over-see all psychologists and review what their decisions are, especially concerning the removal of z-codes?

ANSWER:

6. Does Albion have a PRT (psychiatric review team), and was plaintiff on the mental health rooster in May-June of 2002?

ANSWER:

7. Is plaintiff currently on the mental health rooster?

ANSWER:

8. What is the procedure at Albion as far as the psychiatric review team and who is on it?

ANSWER:

9. Was there a PRT meeting concerning the removal of plaintiff's z-code in 2002; if yes please state who.

ANSWER:

10. If there was not, please explain why.

ANSWER:

11. Do you believe it proper for a psychologist who has never met an inmate (or who has met once) is qualified to make a detrimental decision to vote whether the inmate needs z-code status?

ANSWER:


12. You were present in August of 2002 when the program review committee interviewed plaintiff regarding the planned transfer due to his misconducts for being in an unauthorized area and other minor infractions; did the PRC vote to remove the transfer with your input, and why was the transfer dropped?


ANSWER:


13. What was the exact converstaions between you, Dr. Lindemuth and counselor Webb in March 2004 regarding the restaffing of z-code for plaintiff?

ANSWER:


14. Did you support z-code status for plaintiff in 2000, 2002 and 2004, please explain.

ANSWER:


15. Is mental health a criteria for z-code status?

ANSWER:

16. Please state the changes in plaintiff between February 2000 and June 2002; that is, plaintiff was given a misconduct in March of 2002; a couple of months later the z-code was removed; please state what was different premisconduct and postmisconduct that warranted z-code removal?

ANSWER:


Date:                                      _____
                                           Steve Reilly, Chief Psychologist
Served by plaintiff on
4/21/06 by US Mail.

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY DEFRANCO,        )
                             )
        Plaintiff,          )
                             )
        v.             )    C.A. No. 04-230 E
                             )
WILLIAM WOLFE, ET AL.,    )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST**
**INTERROGATORIES TO DEFENDANT STEVE REILLY**

1. The Z Code approval/removal does not routinely involve medical doctors or psychiatry. If the subject has a significant mental health history, then Psychiatry is contacted. Doctors do not vote directly on Z Code removals or approvals.

2. From a psychological perspective, Z Codes are approved or removed based on the inmate's mental health stability.

3. DC-97: Sent to the Psychology Department on May 20, 2002. It was sent by Corrections Counselor, Judy Jackson, regarding annual Z Code review. Action taken indicates panic disorder - doing time for murder - stated his family is the Dr. Defranco family – also reports that Mr. Reilly guaranteed that he would never lose his Z Code – condescending – his medication should be addressing his need for panic disorder. Circulate vote sheet to determine continued need of Z code. Martha Eichenlaub, Psychologist 1.

DC-35 A, Inmate Requests to Staff: Sent by inmate DeFranco requesting an appointment within the Psychology Department.

Progress Note of December 20, 2002: Inmate was concerned with the threat of moving to single-cell status. Currently, inmate DeFranco is being treated for general anxiety disorder

through Psychiatry and he is member of the mental health roster. Inmate DeFranco stressed that he genuinely needed to maintain his Z Code. The subject appears in need of single-cell status at this time. Certainly treating his psychiatric needs is in the subject's best interest. It appears that inmate DeFranco is requesting reassurance that his single cell would not be abruptly removed. Maintain Z Code status for inmate. Staff for Z Code status. S. Reilly, Chief Psychologist.

DC-14, April 2, 2001: Met with inmate DeFranco filing a request he placed "to meet him as scheduled". He requested as wanting a referral to Psychiatry for an evaluation for psychotropic medication. He stated that he has been diagnosed as having a panic disorder for the past ten years. He began to have panic attacks more frequently; have been increasing in intensity. He states that he has used non-psychopharmacological interventions, but that with the increase in symptoms, these measures have not been enough lately. He states that he does not want to have to take medication every day; prefers an as-needed basis. Will place referral for psychiatry; Wendell Patz, Psychology intern.

DC-35 A, Inmate Request to Staff dated July 17, 2001: Inmate sent request slip to Psychology regarding written warnings concerning contact with his daughter in the visiting room. Superintendent responded by indicating that the inmate should consult with his primary counselor.

DC-35 A, Inmate Request to Staff and response by staff in March of 2001: Inmate requesting referral to Psychiatry.

4. One time.

5. The Chief Psychologist supervised all other Psychology staff members within the department. The Chief Psychologist is a consultant to adding or removing Z Codes.

2

6. The State Correctional Institution at Albion has a Psychiatric Review Team and the plaintiff was on the Mental Health Roster in May and June of 2002.

7. Yes.

8. The procedure at SCI-Albion regarding the Psychiatric Review Team is to review all inmates assigned to the latter team regarding their mental health stability. These reviews are conducted within the Medical Department every 120 days. Individual Treatment Plans are reviewed and signed off by the PRT. Generally, the PRT consists of the Consulting Psychiatrist, Mental Health Coordinator, Chief Psychologist, Unit Psychologist, Unit Manager and Unit Counselor.

9. Psychological records do not reflect that the PRT met regarding the removal of the subject's Z Code.

10. The PRT reviews inmates who are members of the PRT. At that time, inmate DeFranco was a member of the MH roster and, subsequently, was not reviewed by the team for Z Code removal or approval.

11. The responding defendant Objects to this interrogatory as the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible evidence.

12. The responding defendant advised the PRT to not transfer inmate DeFranco due to his relatively good conduct at the institution.

13. No such conversation was ever held.

14. This defendant recalls consulting with staff regarding the plaintiff's difficulties in 2000. Subsequently, it is this defendant's impression that no subsequent reviews were submitted by him in 2002 and 2004.

3

15.  Mental health conditions for Z Code criteria include significant mental illness.

16.  Misconducts do not directly influence Z Code removals within the Psychology

Department.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA  15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date:  May 26, 2006

4

MAY-26-2006 14:07  FROM:SCI-ALBION 814-7569735            TO:814105655361        P.1/2
  05/25/2006 12:33 FAX 8147569733          SCI ALBION                          ☒005

## VERIFICATION

I, Steve Reilly, hereby state that the foregoing answers to Plaintiff's First Set of

Interrogatories to Defendant Steve Reilly are true and correct to the best of my personal

knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C.

§1746 relating to unsworn declarations under penalty of perjury, which provides that if I

make knowingly false averments, I may be subject to criminal penalties.

_____
Steve Reilly

Date:

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

***Defendant's Response to Plaintiff's First Interrogatories to Defendant Steve Reilly*** was

served upon the following, by first-class mail this May 26, 2006.

Anthony DeFranco, CZ-3518
State Correctional Institution
At Albion
10745 Route 18
Albion, PA  16475


MARY L. FRIEDLINE
Senior Deputy Attorney General