IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO, :
       Plaintiff, : No.C.A. 04-230-E
: Magistrate Judge Baxter
V. : District Judge Cohill
:
WILLIAM WOLFE, et al., :
       Defendants. :

FILED
'06 JUN 22 A10:28

## MOTION FOR PARTIAL SUMMARY JUDGMENT

AND NOW, comes plaintiff, respectfully bringing forth this motion for partial summary judgment based upon the retaliation claim and in support avers:

### STATEMENT OF THE CASE

This summary judgment motion is being sought with the retaliation claim, and in particular, the retaliatory transfer. On August 10, 2004, plaintiff filed the instant civil rights complaint under § 1983, alleging 1st, 8th and 14th Amendment rights violations against prison officials. In conjunction with the filing of this lawsuit, plaintiff also filed for preliminary injunctions and temporary restraining orders. On October 22, 2004, a telephonic hearing was held before Magistrate Judge Baxter and a temporary restraining order ensued regarding, *inter alia*, a recommendation that defendants' be restrained from transferring plaintiff (this came after plaintiff informed the Court that defendant Barr had threatened him with a retaliatory transfer immediately following the hearing). (Doc.#11). Subsequently District Judge Cohill adopted the recommendation barring plaintiff's transfer. (Doc.#13). On December 17, 2004, a preliminary injunction hearing was held. However, the defendants produced no evidence nor testimony regarding the restraining order on the retaliatory transfer threats, the last of which came from

1

defendant Barr. However, defendant Barr conveyed to the Magistrate Judge during the October hearing that there were no such planned transfers for plaintiff. In conjunction with that statement, Barr produced an affidavit in which he admitted to making comments to plaintiff regarding the possibilty of being transferred if he was given relief from the Court if there were no single cells available. However, Barr claimed this was not a threat. Following the preliminary injunction hearing where the defendants failed to produce any evidence to refute the issuance of the TRO based on retaliatory transfer, the Magistrate Judge recommended the TRO be lifted as it pertained to the transfer, accepting Barr's testimony and affidavit as true (that there were no such planned transfers). (Doc.#41). District Judge Cohill then adopted this recommendation on February 28, 2005 , (Doc.#62) and plaintiff was then transferred the following day, on March 8, 2005 .

As plaintiff stated through-out his complaints and preliminary injunction requests prior to the March 8, 2005 , transfer, he was threatened repeatedly with transfers if he continued his request for the medically required z-code status. On April 21, 2005 , while plaintiff was housed at SCI Smithfield, a preliminary injunction hearing was held regarding the retaliatory transfer with the Magistrate Judge. (Doc.#83). During this hearing, the court even statetd that it was surprised that the defendants transferred him in light of the allegations made previous. The Court further stated that plaintiff could file a retaliation claim and that the defendants would have to defend it. Specifically, the Court stated:

> The Court: "Here's what I can tell you, Mr. DeFranco. You have no luxury in the department of corrections' system to choose where you want to be. That's number one. Number two, *I am surprised that you were transferred, especially in light of the claims you made. The Department of Corrections, through the Attorney General, is going to have to deal with a retaliation claim. And they're probably not going to be happy to do that, but it's going to be a good one.* And with those two thoughts to give you, that's all I can say. You do not have a choice of where you get to be. And you worked hard to get where you ended up and then you were removed. I don't know what I can say to you."

(Trans. 4/21/05, page 12 ;Doc.#142).

The Court stated further:

> The Court: "I will put this on the record, I will say this. Mr. Skindell, you can tell Mr. Barr I said this. I never expected Mr. Barr to be so angry about the temporary restraining order ruling that he would move for a separation. It's just not the way my dealings with Mr. Barr have been. I was disappointed in that. If there were other reasons for his request, then I don't know them, I can't speak to them. If those were the reasons, I was disappointed to hear that Because Mr. Barr has always told me precisely the truth. And when he told me he didn't aniticipate---I'm not finished Mr. DeFranco. When he told me he had no plans to transfer you, I believed him. But that being the case, I cannot reverse that decision. But I will review your motion and I will write an opinion to that effect."

(Trans. 4/21/05, page 23-24; Doc.#142).

During this hearing, plaintiff was awaiting the exhaustion of his grievance regarding this issue. Plaintiff's grievance specifically stated that he was grieving the *retaliatory transfer*, requested a transfer back to SCI Albion, compensation and other relief. In response to this, SCI Albion's superintendent, defendant Brooks, stated that they were allowing plaintiff's return to Albion "in resolution of this grievance." Plaintiff was subsequently returned to Albion on August 2, 2005.

Upon his return, plaintiff filed a temporary restraining order/preliminary injunction to enjoin the defendants from further retaliatory transfers as he was threatened with during the August 2, 2005, transfer process (Doc.# 107 ). A hearing was held and the Magistrtate Judge denied the request due to the fact that plaintiff did not have a "transfer order" as proof (prisoners cannot possess transfer orders). After the District Court adopted the Magistrate's recommendation, plaintiff filed for reconsideration which was granted (Doc.# 136). In reconsidering the Order, Judge Cohill stated that if the facts presented were true, plaintiff has demonstated a likelihood of success on the merits.

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if proof of its existense or nonexistence might affect the outcome of the suit under applicable substantive law. See *Anderson v. Liberty Lobby*, Inc. 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. See *id.* at 248. And issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. See Charles Alan Wright & Arthur R. Miller, Federal Practice and procedure: Civil 2d § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. See *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving

4

party's contention that the facts entitle it to judgment as a matter of law. See *Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusionary allegations, whether they are made in the complaint or a sworn statement. <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871,888 (1990). In deciding a motion for summary judgment, "the judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**Argument**

In plaintiff's filings, from the beginning of this action he has stated that numerous individuals working at the DOC had threatened him with transfers (if he continued his pursuit of z-code status); see, Complaint, ¶¶ 64-70; Amended Complaint, ¶¶ 51, 53 & 62; 2nd Amened Complaint, ¶¶ 64-70; Motion for Pleiminary Injunction; Amended Preliminary Injunction (Doc.#6). The last of the stated threats of transfer came from defendant Barr immediately following the October 22, 2004 , TRO hearing (Doc.# 11). The Magistrate Judge recommended that a TRO ensue due to the stated threats, and particularly, defendant Barr's last threat. (See Doc.#11, page 6).

On March 8th, 2005 , a week after the District Judge adopted the Magistrate's R & R, plaintiff was indeed transferred to the central of the state. Plaintiff immediately filed a grievance regarding this action (see exhibit "A"). The response to this grievance, responded by the inmate program director, with the initials of defendant Barr, stated that plaintiff was transferred *due to litigation.* (See exhibit "B"). Plaintiff then filed an appeal to the superintendent. The superintendent, defendant Brooks, responded stating that she was allowing plaintiff's return to SCI Albion "in resolution of the grievance" (see exhibit "C"). Plaintiff's grievance stated repeatedly that his transfer was retalitory; that he wanted the same pay as his top paying job;

wanted returned to Albion and other relief (see ex. "A"). It can certainly be inferred that the superintendent, in granting plaintiff's grievance, conceded that the transfer was retalitory particularly in light of the fact that he was transferrd back to Albion.

Even the Assistant Attorney General admitted plaintiff may state a claim under retaliation;

> Mr. Bareford: "Yes, ma'am. We're not saying he may not have a basis to state a claim under retaliation, under 42 U.S.C. 1983..."

(Trans. 4/21/05, page 8; Doc.#142).

Through discovery it has became known that defendant Barr had allegedly requested a separation against plaintiff on **Febraury 15, 2005**, stating that plaintiff had filed litigation against him (see exhibit "D"), when in fact, plaintiff did not file any litigation against defendant Barr until **March 7th, 2005**. (See Doc.#63). Therefore, it is undisputed, accepting the transfer order (exhibit "D") as true, defendant Barr fabricated the rationale to transfer plaintiff.

A prisoner alleging retaliation must show (1) constitutionallly protected conduct, (2) an adverse action by prison officials "sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) a "casual link between the exercise of his constitutional rights and the adverse action taken against him." <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3r Cir.2003).

It has long been established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desrire to punish an individual for the exercise of a constitutional right, such as filing lawsuits or grievances. See, <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir.2000). As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the

alleged retaliation was constiutionally protected. There is no question that plaintiff's filing the grievance's and instant lawsuit was constiutionally protected.

Next, a plaintiff must show that he suffered some "adverse action" at the hands of prison officials. *Allah*, 229 F.3d at 225. Here, plaintiff has produced evidence that he was transferred to a distant prison where his family could not visit him regularly, and penalized financially by losing his top paying prison job; being harmed at the new prison and losing property. In *Castle V. Clymer*, 15 F.Supp.2d 640, 660 (Pa.1998), the Court noted that a prison is free to transfer a prisoner so long as it serves a legitimate penological interest; the Castle Court further stated, "there is a widespread agreement among the Court of Appeals as to the unconstitutionality of transfers based upon inmate's exercise of substantive constitutional rights---such as the freedom of speech" which includes filing grievances and lawsuits. Transfer to different prison and loss of prison job in retaliation for an inmates's exercise of his 1st Amendment rights constitutes an adverse act, at 668 *id*. Also see, *Lodato v. Ortiz*, 314 F.Supp.2d 379 at 386 (D. N.J.2004) "same". This action by the defendants would deter a person of ordinary firmness from exercising his constitutional right. Moreover, right in the face of plaintiff's repeated allegations of threats of transfer if he continued his z-code reinstatement, the defendants transferred him.

In *Rauser v. Horn*, 241 F.3d 330 (C.A.3 (Pa.) 2001), the Third Circuit found that prison officials violated his 1st Amendment rights, in a case factually on point with that of plaintiff. Although, plaintiff's case is even stronger by the fact that he had placed the Court on notice almost 9 months earlier that the defendants threatened him with a transfer and would do so.

Plaintiff has also demonstrated a suggestive proximity between his insistense on his First Amendment right and his transfer and wage reduction. See, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000)(stating that suggestive timing is relevant to causation in

retaliation case).   Motive to retaliate by defendant Barr is noted by his comments and ultimate transfer of plaintiff.  Comments made by a defendant can meet a casual connection prong as well.  See, *Pate v. Peel*, 256 F.Supp.2d 1326, 1338 (N.D.Fla. 2003)( A prisoner can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendant could reasonably be inferred.) See, *Rauser v. Horn;* citing *Farrell,* at 280 *id.*(stating that suggestive timing is relevant to causation in retaliation cases).  The TRO hearing held on October 22, 2004, which concluded with the Magistrate issuing a R & R enjoining the defendants from transferring him (Doc.#11).  Plaintiff had a preliminary injunction hearing on December 17, 2004.  The District Court adopted the Magistrate's R & R on Febraury 28, 2005 and plaintiff was transferred on March 8, 2005, one week later.  Of interest is the "transfer order" submitted by the defendants, and specifically, defendant Barr (Ex."D").  This goes to the state of the mind---the transfer order is requested by defendant Barr on *Febraury 15, 2005* stating:

> "An Administrative/Separation transfer is being requested due to litigation against William Barr, SCI-Albion's Suerintendent's (sic) Assissant..."

(See Ex."D").  However, a review of the record clearly shows that there was no litigation against defendant Barr until *March 7, 2005*.  Therefore defendant Barr and others fabricated this transfer order or forged the date it was requested as there was no litigation against Barr on Febraury 15, 2005 when he moved for the transfer.  Plaintiff only filed litigation against Barr on March 7, 2005 (Doc.#63).   Defendant Barr either fabricated his rationale to transfer plaintiff to the DOC's Central Office back on Febraury 15, 2005, or, he forged the date on the document for the Court to make it appear he moved for the transfer before Judge Cohill's Order of February 28, 2005, adopting the Magistrate's R & R.   No matter which way the Court view's this, the document is fraudulent and goes to *the state of mind* of Barr and all defendants.

There was no legitimate penological interest in this transfer of plaintiff, particularly in light of the fact that the defendants allowed his return back to Albion in response to his grievance claiming, *inter alia*, retaliatory transfer. The superintendent allowed his return (Ex."C"). While defendant Barr will probably file an affidavit putting forth his motives for this transfer, the Court may still look at the evidence at a whole and enter summary judgment. Although Court's must carefully consider summary judgment when intent is at issue, "the summary judgment rule would be rendered sterile...if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion", *Ennis v. Nation Assin of Business and Education Radio, inc.*, 53 F.3d 55, 62 (4thCir.1995). Moreover, the constitutional violation and law was clearly established at the time that the retaliatory transfer occurred. Defendant Barr has worked in the Department of Corrections for 11 years and served at one time as an Administrative Assistant to the Secretary.

**Burden-Shifting**

In *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 (1977), the Supreme Court used a burden-shifting framework to decide a retaliation case that arose in the public employment context. The Court held that the plaintiff bore the initial burden of proving that his constiutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him. See *id*. The burden then shifted to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity. See *id*. Here, it is without dispute that defendant Barr, in the face of allegations by plaintiff that he threatened him with a transfer immediatelly following the October 22, 2004 TRO hearing, and, the Report and Recommendation of the Magistrate Judge enjoining the defendants from transferring plaintiff (Doc.#11) which the District Court adopted (Doc.#13),

did move to transfer plaintiff, with the help of the superintendent and Sectretary Beard, *due to litigation*, as stated in the defedants response to plaintiff's grievance (Ex."B"). Further, as defendant Barr admitted in his interrogatories (that he was at one point an Administrative Assistant to the Sectretary), he used his prior higher position as the Administrative Assistant to the Sectretary of the Department of Corrections to accomplish plaintiff's transfer.

The burden-shifting in this case, under *Mount Healthy*, the defendants cannot produce any fact to over-come summary judgment in this case. Based upon the facts and record there are no genuine issues or material fact that the defendant's can produce to over-come summary judgment. Plaintiff is entitled to judgment as a matter of law.

WHEREFORE, plaintiff prays this Honorable Court grant partial summary judgment.

Date: 6/18/06

Respectfully submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**
Service was made by U.S. First
Mail to Attorney General at
564 Forbes Ave., Pgh. Pa. 15219, this date