DC-46
(Rev. 7/95)

# VOTE SHEET

Commonwealth of Pennsylvania
Department of Corrections/SCI Albion

| Facility SCI-Albion | Date 6/24/02 | Number CZ-3518 | Name Anthony DeFranco | Cus. Lev.& Code(s) 4YZ |
|---|---|---|---|---|

**Purpose** Annual Review for

| Z Code continuation | YES | NO | COMMENTS |
|---|---|---|---|
| Counselor  J. Jackson | | ✓ | Does not meet criteria for Z-code, Manipulated Albion staff upon his arrival. History of incarcerations did not necessitate a Z code. Incar. Since '96 w/ one misconduct on record, high levels of stress does not meet Z code criteria (See Psych Eval |
| Work Supervisor | | | |
| Corrections Officer | | | |
| Unit Manager  R. Showers | | ✓ | No need for Z code, Manipulative, psych. ref. Indicates medication is appropriate to handle psych need |
| Inmate Program Mgr. B. Boeh | | ✓ | Psychologist does not recomend and staff do not support. |
| Major Gause | N | | Per Psych |
| Lt. | | | |
| Votes Recorded | | | |

**STAFF RECOMMENDATIONS**     SCI-Pittsburgh 4/19/96 → SCI-Albion 10/20/99

**SERVING:  Criminal Homicide/Murder 2nd Degree**

| MINIMUM:    Life | MAXIMUM:  Life |
|---|---|

**DETAINERS:  93-Erie County Simple Assault 12-24 months**

**MISCONDUCTS: 3/26/02, A-15 Threaten an Employee  Received 45 DDC and removal from job**

**ESCAPE HISTORY:  83-Escape conviction Erie County**

**PRIORS: Escape, VCSDD & CA, Burglary, Retail Theft, Theft by Unlawful Taking, Firearm Carried Without License, Criminal Conspiracy, Criminal Attempt, and Corruption of Minors**

**PROGRAMS: He completed Peer Instructor Training for Citizenship on 5/13/01.  He is on the waiting list for vocational training, Long Timers, and Drug/Alcohol Education Classes. Attend self-help groups**

| Deputy-Centralized Services          Yes ☐      No ☑ | Deputy-Facility Management        Yes ☐      No ☑ |
|---|---|
| Comments  agree with staff rationale for denial of Z code | Comments  Noted. Does not meet criteria |
| | |

Superintendent

| | Approved | ☒ | Disapproved |
|---|---|---|---|

Comments  Bruce T. Marquardt
Dep Supt fn WJW

**EXHIBIT "A"**

# EXHIBITS

1. **Plaintiff's First set of Interrogatories to defendant Reilly and his Response**


2. **Plaintiff's Second set of Interrogatories to defendant Reilly and his Response.**

# EXHIBITS

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,                           :
          Plaintiff,                    : No. C.A. 04-230-E
                             : Magistrate Judge Baxter
   V.                                   : District Judge Cohill
                             :
WILLIAM WOLFE, et al.,                      : '
          Defendants.                   :

---

DEFENDANT'S RESPONSE TO
**PLAINTIFF'S FIRST INTERROGATORIES**
**TO DEFENDANT STEVE REILLY, CHIEF PSYCHOLOGIST**

    In accordance with Rule 33 of Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days.
    If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.
    These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

    1.  Please state whether your Office consult with any doctors, medical of mental health, before voting to approve or remove z-codes on inmates; and do any doctors get a vote on the z-code?

ANSWER:      SEE ATTACHED SHEET FOR RESPONSES.

    2.  Please explain how the z-code voting process works; how it is initiated and who determines whether the z-code is granted.

ANSWER:

    3.  Please state what mental health problems plaintiff was recorded to have in your Office in Demeber 1999 through June of 2002?

ANSWER:

4. It has became known that a Ms. Eichenlaub has purportedly stated that she was plaintiff's psychologist at a time in 2002; please state when and how many times your Office states this Ms. Eichenlaub consulted with plaintiff.

ANSWER:

5. Please state your duties of chief psychologist; do you over-see all psychologists and review what their decisions are, especially concerning the removal of z-codes?

ANSWER:

6. Does Albion have a PRT (psychiatric review team), and was plaintiff on the mental health rooster in May-June of 2002?

ANSWER:

7. Is plaintiff currently on the mental health rooster?

ANSWER:

8. What is the procedure at Albion as far as the psychiatric review team and who is on it?

ANSWER:

9. Was there a PRT meeting concerning the removal of plaintiff's z-code in 2002; if yes please state who.

ANSWER:

10. If there was not, please explain why.

ANSWER:

11. Do you believe it proper for a psychologist who has never met an inmate (or who has met once) is qualified to make a detrimental decision to vote whether the inmate needs z-code status?

ANSWER:


12. You were present in August of 2002 when the program review committee interviewed plaintiff regarding the planned transfer due to his misconducts for being in an unauthorized area and other minor infractions; did the PRC vote to remove the transfer with your input, and why was the transfer dropped?


ANSWER:


13. What was the exact converstaions between you, Dr. Lindemuth and counselor Webb in March 2004 regarding the restaffing of z-code for plaintiff?

ANSWER:


14. Did you support z-code status for plaintiff in 2000, 2002 and 2004, please explain.

ANSWER:


15. Is mental health a criteria for z-code status?

ANSWER:

16. Please state the changes in plaintiff between February 2000 and June 2002; that is, plaintiff was given a misconduct in March of 2002; a couple of months later the z-code was removed; please state what was different premisconduct and postmisconduct that warranted z-code removal?

ANSWER:



Date:                                    _____
                                         Steve Reilly, Chief Psychologist

Served by plaintiff on
4/21/66 by US Mail

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY DEFRANCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-230 E |
| | ) | |
| WILLIAM WOLFE, ET AL., | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST
INTERROGATORIES TO DEFENDANT STEVE REILLY**

1.  The Z Code approval/removal does not routinely involve medical doctors or psychiatry. If the subject has a significant mental health history, then Psychiatry is contacted. Doctors do not vote directly on Z Code removals or approvals.

2.  From a psychological perspective, Z Codes are approved or removed based on the inmate's mental health stability.

3.  DC-97: Sent to the Psychology Department on May 20, 2002. It was sent by Corrections Counselor, Judy Jackson, regarding annual Z Code review. Action taken indicates panic disorder - doing time for murder - stated his family is the Dr. Defranco family – also reports that Mr. Reilly guaranteed that he would never lose his Z Code – condescending – his medication should be addressing his need for panic disorder. Circulate vote sheet to determine continued need of Z code. Martha Eichenlaub, Psychologist 1.

DC-35 A, Inmate Requests to Staff: Sent by inmate DeFranco requesting an appointment within the Psychology Department.

Progress Note of December 20, 2002: Inmate was concerned with the threat of moving to single-cell status. Currently, inmate DeFranco is being treated for general anxiety disorder

through Psychiatry and he is member of the mental health roster. Inmate DeFranco stressed that he genuinely needed to maintain his Z Code. The subject appears in need of single-cell status at this time. Certainly treating his psychiatric needs is in the subject's best interest. It appears that inmate DeFranco is requesting reassurance that his single cell would not be abruptly removed. Maintain Z Code status for inmate. Staff for Z Code status. S. Reilly, Chief Psychologist.

DC-14, April 2, 2001: Met with inmate DeFranco filing a request he placed "to meet him as scheduled". He requested as wanting a referral to Psychiatry for an evaluation for psychotropic medication. He stated that he has been diagnosed as having a panic disorder for the past ten years. He began to have panic attacks more frequently; have been increasing in intensity. He states that he has used non-psychopharmacological interventions, but that with the increase in symptoms, these measures have not been enough lately. He states that he does not want to have to take medication every day; prefers an as-needed basis. Will place referral for psychiatry; Wendell Patz, Psychology intern.

DC-35 A, Inmate Request to Staff dated July 17, 2001: Inmate sent request slip to Psychology regarding written warnings concerning contact with his daughter in the visiting room. Superintendent responded by indicating that the inmate should consult with his primary counselor.

DC-35 A, Inmate Request to Staff and response by staff in March of 2001: Inmate requesting referral to Psychiatry.

4. One time.

5. The Chief Psychologist supervised all other Psychology staff members within the department. The Chief Psychologist is a consultant to adding or removing Z Codes.

2

6. The State Correctional Institution at Albion has a Psychiatric Review Team and the plaintiff was on the Mental Health Roster in May and June of 2002.

7. Yes.

8. The procedure at SCI-Albion regarding the Psychiatric Review Team is to review all inmates assigned to the latter team regarding their mental health stability. These reviews are conducted within the Medical Department every 120 days. Individual Treatment Plans are reviewed and signed off by the PRT. Generally, the PRT consists of the Consulting Psychiatrist, Mental Health Coordinator, Chief Psychologist, Unit Psychologist, Unit Manager and Unit Counselor.

9. Psychological records do not reflect that the PRT met regarding the removal of the subject's Z Code.

10. The PRT reviews inmates who are members of the PRT. At that time, inmate DeFranco was a member of the MH roster and, subsequently, was not reviewed by the team for Z Code removal or approval.

11. The responding defendant Objects to this interrogatory as the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible evidence.

12. The responding defendant advised the PRT to not transfer inmate DeFranco due to his relatively good conduct at the institution.

13. No such conversation was ever held.

14. This defendant recalls consulting with staff regarding the plaintiff's difficulties in 2000. Subsequently, it is this defendant's impression that no subsequent reviews were submitted by him in 2002 and 2004.

3

15. Mental health conditions for Z Code criteria include significant mental illness.

16. Misconducts do not directly influence Z Code removals within the Psychology Department.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA  15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date:  May 26, 2006

4

## VERIFICATION

    I, Steve Reilly, hereby state that the foregoing answers to Plaintiff's First Set of

Interrogatories to Defendant Steve Reilly are true and correct to the best of my personal

knowledge or information and belief.

    This statement and verification is made subject to the penalties of 28 U.S.C.

§1746 relating to unsworn declarations under penalty of perjury, which provides that if I

make knowingly false averments, I may be subject to criminal penalties.

_Steve T Body_

Steve Reilly

Date:

# EXHIBITS

## PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANT REILLY

## AND

## DEFENDANT REILLY'S ANSWERS

# EXHIBITS

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY DeFRANCO,** | : |
| **Plaintiff,** | : **No. C.A. 04-230-E** |
| | : **Magistrate Judge Baxter** |
| **V.** | : **District Judge Cohill** |
| | : |
| **WILLIAM WOLFE, et al.,** | : |
| **Defendants.** | : |

---

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S SECOND INTERROGATORIES TO
### DEFENDANT STEVE REILLY, CHIEF PSYCHOLOGIST

In accordance with Rule 33 of the Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on the plaintiff within 30 days.

If you cannot answer the following interrogatoires in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions. These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materializes.

1. Did your Office receive Dr. Lindemuth's Report's dated September 22, 2002 and August 20, 2004, advising that plaintiff be conferred back to z-code status due to his mental and physical health?

ANSWER:  SEE ATTACHED SHEET FOR RESPONSES.


2. What were your *exact* actions when you received these Report's regarding plaintiff's health?

ANSWER:


3. Is it your claim that a Ms. Eichenlaub actually "met" with plaintiff or is it your statement that she reviewed plaintiff's z-code status one time? In other words, do your records show an actual meeting between plaintiff and Ms. Eichenlaub? And if so, give *exact date* of meeting.

ANSWER:


4. Plaintiff was given a z-code for mental health reasoning in 2000. In 2002 it was determined that he no longer met the requirements for the z-code. Please state the changes in plaintiff that he no longer met the z-code requirement?

ANSWER:

5. What changed in plaintiff's condition in 2002 that warranted z-code removal?

ANSWER:

6. Plaintiff is specifically requesting what changed in his condition, between 2000 (the issuance of z-code) and June 2002 (the z-code removal); what was specifically different in plaintiff in 2002 that he no longer met the z-code status?

ANSWER:

7. In you prior response you gave a list of events in ¶ 3., the first paragraph, you stated that a DC-97 sent to psychology on May 20, 2002, that it was sent by counselor Jackson. However, at the end of the paragraph you state, Martha Eichenlaub, Psychologist 1. Was this report or DC-97 filled out by counselor Jackson or Ms. Eichenluab?

ANSWER:

8. What is the exact difference between being on a mental health roster and psychiatric roster?

ANSWER

9. Is plaintiff on the psychiatric roster now?

ANSWER:

Date: _____          _____
                                        By: Steve Reilly, Chief Psychologist

Mailed by plaintiff
on June 22, 2006

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DEFRANCO,          ) | |
|                              ) | |
|          Plaintiff,        ) | |
|                              ) | |
|          v.              ) | C.A. No. 04-230 E |
|                              ) | |
| WILLIAM WOLFE, ET AL.,    ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND INTERROGATORIES TO DEFENDANT STEVE REILLY

1.  The Psychology Department possesses a memo from Dr. Angela Lindemuth, DO psychiatrist, dated September 23, 2002 recommending Anthony DeFranco be converted to Z code status.

2.  The result of a psychiatric recommendation for Z code status to the unit psychologist activates discussion of the inmate's case during psychiatric team meetings as well as encouraging unit staff to initiate a Z code staffing. The responding defendant does not recall his exact actions after receiving this correspondence.

3.  The Psychology records reflect that on May 29 and June 21 of 2002 inmate DeFranco met with Ms. Eichenlaub.

4.  Changes in Z code requirements normally reflect an increase or decrease in mental health stability. In a broad sense, if Mr. DeFranco's mental health stability improved, his Z code would be reviewed and possibly terminated.

5.  Medication compliance, good attendance with psychiatric appointments and no evidence of serious mental or emotional maladjustment.

6. This question cannot accurately be answered in the clinical sense. Any changes in an inmate's overall emotional and mental stability will certainly effect the removal or activation of Z code status.

7. Ms. Jackson.

8. Mental Health Rosters consists of all inmates with a mental health stability rating of "C" who have shown a history of mental health treatment. Psychiatric Review Team Rosters consists of inmates who have mental health stability ratings of "D" and possess serious mental health adjustment difficulties.

9. No.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA  15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: July 21, 2006

2

## VERIFICATION

I, Steve Reilly, hereby state that the foregoing answers to Plaintiff's Second Set of Interrogatories to Defendant Steve Reilly are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

_Steve Reilly_
Steve Reilly

Date: