# Exhibit 8

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO, | : |
| Plaintiff, | : No. C.A. 04-230-E |
| | : Magistrate Judge Baxter |
| V. | : District Judge Cohill |
| | : |
| WILLIAM WOLFE, et al., | : |
| Defendants. | : |

DEFENDANT'S RESPONSE TO

PLAINTIFF'S FIRST INTERROGATORIES
TO DEFENDANT DENESE BUNNER, PSYCHOLOGIST

In accordance with Rule 33 of Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

1. Do you recall any meetings you had with the plaintiff and discussions you had involving his z-code?

ANSWER:       SEE ATTACHED SHEET FOR RESPONSES.


2. If yes, please explain the conversations you had.

ANSWER:



3. Did you or your office receive requests from the psychiatrists referring plaintiff for one-on-one counseling in the years 2002-2004? If yes, how many consults did you have with plaintiff and how many times were your office directed to have consults with plaintiff by the prison psychiatrist?

ANSWER:

1

4. Do you recall telling plaintiff that he could be transferred if he continued his z-code reinstatement? Please explain.

ANSWER:

5. Explain the job of the chief psychologist in your office; what his functions are and if he over-sees all z-code vote sheets?

ANSWER:

6. How much weight does the psychology department have in the z-code vote process and why?

ANSWER:

7. Are there any doctors, medical or otherwise on the voting rooster that actually "vote" on an inmates z-code?

ANSWER:

8. What is your professional opinion regarding this; by that I mean, do you believe that there should be medical doctors involved in the z-code voting process?

ANSWER:

9. What is the plaintiff's diagnosis in your office; by that I mean, what are his found mental troubles?

ANSWER:

10. Is it your professional opinion that plaintiff meets the z-code criteria and requirements as made by the DOC; please explain.

ANSWER:

2

11. Do you have knowledge or can you obatin knowledge about inmates who had their z-code removed, go to have "troubles"; by troubles I mean, assualts, increased mental problems, suicidal attempts or threats, etc.?

ANSWER:



12. In your professional opinion, do guards, counselors, unit managers, majors, inmate program personnel and deputies of a prison hold sincere "qualified" positions as to make (medical) detrimental determinations to whether an inmate needs a z-code? Please explain.

ANSWER:



13. Please attach plaintiff's complete psychological file in your office and state whether you concur with its findings.


14. Do you recall speaking with plaintiff and responding to his requests for counseling that you did not have the time to see him for any one-on-one counseling in 2002-2004?

ANSWER:



15. Do you believe it would adequate treatment or a reasonable vote for a psychologist who has never met with a client (or met once) to vote that the person does not need a z-code any further?

ANSWER:



Date:                                              By:_____
                                                          Denese Bunner, psychologist


Served by U.S. Mail
on: 4/4/06  by
plaintiff.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DEFRANCO,                )
                                 )
           Plaintiff,            )
                                 )
     v.                          )    C.A. No. 04-230 E
                                 )
WILLIAM WOLFE, ET AL.,           )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST
INTERROGATORIES TO DEFENDANT DENISE BUNNER**

1. Yes, the responding defendant recalls meeting with inmate DeFranco on several occasions.

2. Every conversation that this defendant had with this inmate has addressed his insisting that he needed a Z-code.

3. The responding defendant received one request from the psychiatrist for one-on-one counseling with inmate DeFranco. A one-on-one session was requested on September 22, 2003. This defendant followed through with the one-on-one session on September 23, 2003 with plans to follow through in one month if the inmate needed follow-up appointment.

4. No, the responding defendant does not recall telling the plaintiff that he could be transferred if he continued to insist on having a Z-code.

5. The Chief Psychologist supervises five psychological staff members in the Psychology Department. He reviews every psychological evaluation that is written by the psychological staff members as well as a variety of other supervisory tasks. Psychology staff

members can consult with the Chief Psychologist as needed on any issues pertaining to our assigned duties. The Chief Psychologist does not over-see every vote sheet.

6. The Psychology Department has some influence in the Z-code vote process due to the fact that Z-codes can be recommended on the basis of severe mental health symptoms and/or severe adjustment problems demonstrated by the inmate.

7. Doctors, Psychiatrists, and other medical staff do not actually vote on the Z-code process. They can, however, make recommendations on whether a Z-code would be warranted.

8. The responding defendant Objects to this interrogatory on the grounds that the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible information. Defendant further Objects to this question as it seeks improperly to elicit expert opinion testimony. Subject to and without waiving these Objections, the responding defendant offers the following comments concerning her understanding of the process. If a medical professional is making a recommendation concerning the need for an individual to have a z-code, that recommendation can be reviewed by each individual who is part of the voting process. If the recommendation falls within the criteria for an inmate to have a z-code, then those individuals who vote on whether the inmate should have the Z-code would vote accordingly.

9. The question asked is, "What is the plaintiff's diagnosis in your office". The responding defendant responds by indicating that, to the best of her knowledge, there was never any significant mental illness and/or mental health diagnosis of inmate DeFranco generated by the Psychology Department.

10. The responding defendant Objects to this interrogatory as the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible evidence. This

defendant did not vote on the Z-code process. Further this interrogatory improperly seeks to elicit expert opinion testimony. Without waiving this Objection, defendant believes that the plaintiff did not meet the requirements for Z-code criteria as outlined in policy. When inmate DeFranco attended individual sessions, he did not present as excessively anxious or stressed out. He appeared to have one issue to address and that issue was his being given a Z-code. Whenever an attempt was made to work on ways that he could cope with living with a cellmate, he was disinterested and would not follow through with any of the stress-reducing recommendations. Any suggestions that were made that pertained to coping methods; relaxation, etc. were immediately dismissed by inmate DeFranco.

11. The responding defendant does not have knowledge of any inmates who have had mental health problems, suicide attempts, engaged in assaults and have been assaulted as a result of having their Z-code removed.

12. The responding defendant Objects to this interrogatory as the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible evidence. Further this interrogatory improperly seeks to elicit expert opinion testimony. Without waiver of this Objection, Correction Officers, Unit Managers, and Counselors are very qualified to make determinations as to whether an inmate requires a Z-code. They have the opportunity to observe the inmate on a regular basis and are in a very good position to be able to determine whether an inmate is adjusting to their cell situation or not. The Major, Inmate Program Manager and Deputy may not have the benefit of observing the inmate first hand, however, they depend on the decisions of those personnel who are observing the inmate first hand to assist with their decision. From this defendant's experience, Administrative Personnel take the time to review the relevant documentation in these matters and, if they do not have enough information to make an informed

decision, will call a staff member who has first hand knowledge about an inmate to personally discuss the situation further.

13. Defendant understands that these records were already made available for inmate DeFranco to view. Further, the responding defendant Objects to this interrogatory as unintelligible in that it refers generally to "findings" in his complete psychological file. To the extent that there are documents in his file reflecting conclusions or recommendations that plaintiff did not meet the requirements for Z-code criteria as stated in answer to interrogatory number 10 and/or observations as reflected in answers 2 and 9, defendant is in agreement with the contents of those documents.

14. According to the documentation in DeFranco's psychology file, this defendant met with him on September 16, 2002, October 28, 2002, February 7, 2003, and September 23, 2003. This defendant did on one occasion return a request to inmate DeFranco where she apologized to the inmate for not responding to his request is a timely manner and made a point of scheduling an appointment with him.

15. The responding defendant Objects to this interrogatory as the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible evidence. Further this interrogatory improperly seeks to elicit expert opinion testimony. Without waiver of this Objection, if a psychologist has never met with an inmate, the psychologist would be in a difficult position to make a recommendation as to whether an inmate requires a Z-code or does

not require one. It is not unusual for a psychologist to see an inmate once, review his record and make a decision pertaining to his need for a Z-code.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

*Mary L. Friedline*
Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3520
Fax: (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: April 27, 2006

## VERIFICATION

I, Denise Bunner, hereby state that the foregoing answers to Plaintiff's First Set of Interrogatories to Defendant Denise Bunner are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

*Denise Bunner*
Denise Bunner

Date:

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Defendant's Response to Plaintiff's First Interrogatories to Defendant Denise Bunner* was served upon the following, by first-class mail this April 27, 2006.

Anthony DeFranco, CZ-3518
State Correctional Institution
At Albion
10745 Route 18
Albion, PA 16475

Mary L Friedline
MARY L. FRIEDLINE
Senior Deputy Attorney General