*Exhibit 9*

# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO, | : |
| Plaintiff, | : No. C.A. 04-230-E |
| | : Magistrate Judge Baxter |
| V. | : District Judge Cohill |
| | : |
| WILLIAM WOLFE, et al., | : |
| Defendants. | : |

---

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S SECOND INTERROGATORIES
## TO DEFENDANT DENESE BUNNER, PSYCHOLOGIST

In accordance with Rule 33 of Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

1. During a hearing held in federal court in this matter on 12/17/04, it was revealed by a Doctor that plaintiff suffers from Borderline, Paranoia and Mixed Personality, noted by Dr. Pizzat in 1986; it was further noted that plaintiff suffers from an antisocial and panic disorder; these documents are located in plaintiff's Medical Chart held in Albion's Medical Department. Does psychology review an inmates Medical Chart? *And* confer with treating psychiatrists before voting on the z-code process?

ANSWER:      SEE ATTACHED SHEET FOR RESPONSES.

2. This information was in plaintiff's Medical Chart prior to 2002, was it taken into account before the z-code vote process? And should it have been?

ANSWER:

3. Again, what are plaintiff's specific mental disorders noted in his Medical Chart, after your careful review of his Medical Chart? In 2002 *and* currently?

ANSWER:

4. Do the above mentioned reports located in plaintiff's Medical Chart exist and was it at the psychologists disposal in 2002?

ANSWER:

5. Please state, after careful review, when a Ms. Eichenlaub was plaintiff's psychologist and on what dates she saw him? And attach any evulations or papers done by her regarding plaintiff.

ANSWER:

6. If plaintiff does suffer from the above mentioned mental troubles, would you agree that he meets the z-code criteria? e.g. Borderline, Paranoid, Mixed Personality, Antisocial & Panic?

ANSWER:

7. Was plaintiff on the Mental Health Rooster in 2002; and is he currently?

ANSWER:

8. Attached is a request slip to you from plaintiff dated 6/22/03. You did not respond nor see plaintiff until or about 9/29/03. Is this proper psychological treatment? (does the attached request accurately reflect plaintiff's request to you?)

ANSWER:

9. In 2000 Chief Psychologist Reilly recommended z-code status for plaintiff due to high stress levels: do you agree that an inmate suffering from high stress levels should be z-code—do you agree with Mr. Reilly's 2000 decision?

ANSWER:

10. Is there a PRT (psychiatric review team) in place at Albion; was there in 2002, and who is on it?

ANSWER:

11. In your prior response, you indicated no knowledge of any incident involving inmates who "acted out" (assaults, attempted suicide, etc.) after having their z-code; are you familiar with prior inmate David Bracco who had his z-code removed in 2002, the same year plaintiff's z-code was removed, (he was listed as a sexual prediator) and went on to sexually assault a younger cellmate? Please check/investigate before answering.

ANSWER:

12. Did you receive more than one request slip from plaintiff for counseling?

ANSWER:

13. Your prior answer was that the Chief Psychologist does not over-see all "vote sheets"; the question was specifically regarding z-code votes and decisions---does he, as a supervisor, check on all critical matters such as z-codes that psychologists perform since he over-sees all psychological evaluations as stated by you?

ANSWER:


14. Is a z-code situation or vote as important as a psychological evalution; please explain.

ANSWER:


15. In your previous response you indicated that while the Major, Inmate Program Manager and Deputy do not actually get to 'view' an inmates behavior, they go off of other staffs recommendations to vote on the z-code; wouldn't it make more sense to eliminate their voting because of this?

ANSWER:

16. You also stated in regards to the above that you had knowledge that when any of these people (Major, Deputy, etc.) have questions about the z-code vote they call staff who know the inmate; call you name an incident when this has occurred, and by whom?

ANSWER:

17. On September 23, 2002 and August 20, 2004, Dr. Lindemuth sent out Reports on plaintiff's that he should be conferred back to z-code. Did you and your Office receive these reports and what were your response to them?

ANSWER:


Date:                                    _____

                                         Denese Bunner


Served US Mail on
5/1/06 by plaintiff.

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

1. To: (Name and Title of Officer) *Ms Bunner Psychologist*
2. Date: *6/22/03*

3. By: (Print Inmate Name and Number) *Anthony DeFranco CZ-3518*
_Inmate Signature_

4. Counselor's Name *Ms Webb*
5. Unit Manager's Name *M. Stonefelt*

6. Work Assignment *law library*
7. Housing Assignment *D/A 57*

8. Subject: State your request completely but briefly. Give details.

*Would you please schedule me for an Apt? I am having a difficult time dealing w/ this situation, living w/ other people.*

*Thank-you very much,*
*Ms Bunner*

9. Response: (This Section for Staff Response Only)

*I'm sorry that I did not respond to your request in a timely manner. My workload has been quite heavy and I did not have the time to schedule a lot of individual appointments. If you still need to talk to someone, please submit another request and I will schedule an appointment for you.*

To DC-14 CAR only ☐     To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ Print _____ M. Bunner Sign _____ Date *9/29/3*

Revised July 2000     *I received this on Sept 25th, 2003*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY DEFRANCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-230 E |
| | ) | |
| WILLIAM WOLFE, ET AL., | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND
## INTERROGATORIES TO DEFENDANT DENISE BUNNER

1. Psychology does not routinely review every inmate's medical chart. The medical chart is reviewed by Psychology when addressing complicated mental health issues and when further information is required about an inmate's mental health status when voting on his O Code, Z code, and other security related issues. Psychology confers with Psychiatry when special issues arise and weekly during Psychiatric Review Team meetings. The Psychologist may consult with the Psychiatrist before voting on an inmate's Z code. The Psychologist is also very likely to discuss the need for an inmate to have a Z code with the Unit Staff. The staff on a Housing Unit has frequent contact with the inmate and is in a better position to determine how well the inmate is adjusting to his housing situation. The Psychiatrist is an expert in terms of the inmate's mental health status, but may not be quite as knowledgeable about his actual adjustment issues on the Unit.

2. To the best of the responding defendant's knowledge, the Psychologists who voted on Mr. DeFranco's Z code reviewed his medical chart before voting.

3. After careful review of the medical file, Mr. DeFranco's prominent diagnosis in 2002 was Panic Disorder with Agoraphobia. His current diagnosis is Delusional Disorder.

4. The Psychological Evaluation completed by Dr. Pizzat is currently located in the plaintiff's medical chart. To the best of this defendant's knowledge, the evaluation was in the plaintiff's medical chart in 2002.

5. According to the medical records, Ms. Eichenlaub was sent a referral to review Mr. DeFranco's Z code on May 20, 2002. The referral was completed by Ms. Eichenlaub and returned to Ms. Jackson on May 29, 2002 or June 21, 2002 (there are two dates at the bottom of the referral). There are no other psychological progress notes completed by Ms. Eichenlaub in the medical file. Production of any psychiatric/mental health evaluations are Objected to as seeking information that is privileged and confidential. Further, these records have already been made available for plaintiff to view.

6. Mr. DeFranco was given the diagnosis of Mixed Personality, features of Borderline and Paranoid by Dr. Pizzat in 1986. Mr. DeFranco was given the diagnosis of Adjustment Disorder with Depression in 1990 by Dr. Litton. Dr. Litton gave Mr. DeFranco the diagnosis of Adjustment disorder with Anxiety and Anorexia one month later. Dr. Lindemuth gave Mr. DeFranco the diagnosis of Panic Disorder without Agoraphobia in 2001through 2005. Dr. Longstreet gave Mr. DeFranco the diagnosis of Panic Disorder with Agoraphobia in 2005. Dr. Longstreet changed his diagnosis of Mr. DeFranco to Delusional Disorder in 2006. These mental health conditions do not necessarily meet the criteria for a Z code. A mental health diagnosis alone does not meet the criteria for a Z code.

7. The plaintiff was on the Mental Health Roster in 2002 and is currently on the Mental Health Roster.

8. This request is Objected to as seeking improper opinions, information that is also irrelevant and not likely to lead to the discovery of admissible information.

2

9. The responding defendant would agree that an inmate suffering from high levels of stress would be given a Z code for a short period of time in order to help that individual adjust to a certain stressful situation. In Mr. DeFranco's case, if Mr. Reilly felt that he would benefit from having a Z code for a while, this defendant does not see any reason to disagree with that decision. However, policy recommends that Z codes be reviewed on a yearly basis. In accordance with policy, this defendant feels that an inmate should not consider their Z code to be permanent.

10. A Psychiatric Review Team has been in place ever since this defendant began working at SCI Albion in June of 1999. The Psychiatric Review Team consists of the Mental Health Coordinator, the Psychiatrist and various Psychologists, Counselors and Unit Managers. The Mental Health Coordinator and Psychiatrist are present at every PRT meeting. The other staff members who are involved will change from week to seek depending on which inmates are being reviewed.

11-17. The responding defendant Objects to these requests pursuant to Fed.R.Civ.Proc. 33, which limits parties to twenty five interrogatories.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: June 2, 2006

3

## VERIFICATION

I, Denise Bunner, hereby state that the foregoing answers to Plaintiff's Second Set of Interrogatories to Defendant Denise Bunner are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

Denise Bunner

Date:

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

***Defendant's Response to Plaintiff's Second Interrogatories to Defendant Denise***

***Bunner*** was served upon the following, by first-class mail this June 2, 2006.

Anthony DeFranco, CZ-3518
State Correctional Institution
At Albion
10745 Route 18
Albion, PA  16475

 

_____
MARY L. FRIEDLINE
Senior Deputy Attorney General

# *Exhibit 10*

IN THE UNITED STATES DISTRICT COUR'
FOR THE WESTERN DISTRICT OF PENNSYLV

ANTHONY DeFRANCO,                          )
                                           )
                     Plaintiff,            )
                                           )          Civil Action No.
          v.                               )
                                           )          Judge Maurice ᴅ. ᴄᴏᴍᴍ, ᴊʀ.
SUPERINTENDENT WILLIAM WOLF;)              Mag. Judge Susan P. Baxter
STEVE REILLY; DENESE BRUNNER;  )
MANAGER ROD SHOWERS; CASE      )
MANAGER GECAC JUDY JACKSON;   )
DR. JOHN DOE;  JANE DOE;        )
JEFFREY BEARD; ASSIST. SUPER.   )
WILLIAM BARR; MARILAND          )
BROOKS,                         )
                     Defendants.  )

## DECLARATION OF JOHN SKENDALL

I, John Skendall, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.      I am employed by the Pennsylvania Department of Corrections (DOC) at SCI-Albion. I am a Unit Manager and have held that position at SCI-Albion since April 17, 1994. The unit officially opened August 4, 1994. I previously held the position of Superintendent's Assistant at SRCF-Mercer from February, 1984 through April, 1994. Other positions include part-time evening Adult Basic Ed. teacher at SCI-Cambridge Springs from January, 2000 through June, 2001; and part-time evening Adult Basic Ed. at SCI-Albion from September, 2001 through the present. In addition, I was designated Acting Major of Unit Management during the months of December, 2004 and January, 2005.

1

2.      As a Unit Manager, my duties include care, custody and control of the inmates assigned to my care in a General Population/Sex Offender Program housing unit. I supervise a staff consisting of two corrections counselors, one clerical, and numerous corrections officers and sergeants assigned to the unit. I am directly responsible for the security and program functions of the unit, and have contact with the inmates assigned to my unit as well as staff on a daily basis. General duties include chairing unit inmate staffings and unit staff meetings, consulting with inmates concerning routine issues, supervising and monitoring cell moves, and providing support and direction to my staff, to name a few duties.

3.      Unit Managers also participate in classification reviews for Z-code (single cell) status as part of a committee of staff members (consisting of the inmate's Counselor, Unit Manager, three (3) regular housing unit officers, a Psychologist, the Program Manager, Major, Deputy-Facility Management and Deputy-Centralized Services). A vote sheet is prepared reflecting individual member recommendations. This is sent to the Superintendent (or Deputy Superintendent), who considers the recommendation of the committee, as well as the information presented to the committee, and then makes his or her own decision on the Z-code status.

4.      In the Z-Code review process, facility staff review appropriate documentation including, without limitation, misconduct reports, recommendations from medical and/or psychiatric or psychological staff, and reports from other staff who have knowledge of the inmate's behavior. Z-code classification is not permanent and is not a right. It does not necessarily preclude an inmate from dormitory housing.

2

5.      Generally, assignments are based upon documented behavior of an inmate in an institutional or similar setting or upon staff's evaluation of the inmate and review of available information which indicates an inability to be housed in a cell with others, which can include information reflecting medical, mental health, victimization concerns, and behavioral problems, etc., which may indicate a need for single-celling.

6.      Whether to provide Z-code status to a particular inmate is a decision made by institution Corrections Officials in the day-to-day operation of the institution, and is made based upon the assessment of the individual inmate.   Security and safety concerns are primary issues and often the driving force in determining the status.

As a unit manager, I must review and evaluate the total picture of the inmate's background, behavior and history, as it affects and is affected by Z-code status. I must also take into consideration all input provided by other institutional staff and departments, including Psychology, Psychiatry and Health Care practitioners. All input is reviewed and considered, but the final decision (vote) by me is an individual one, and need not be in agreement with recommendations/suggestions from the aforementioned areas or departments. In fact, any staff member involved in the voting process may vote as they choose and do not influence, nor are influenced by, the votes of other staff.

7.      I was Unit Manager for inmate DeFranco on D/A Unit from August 2002 to the present. This, of course, would exclude any occasions when inmate DeFranco was away from the unit or institution due to Authorized Temporary Absence (ATA), transfer, or placement on a different housing unit, for whatever reason.

8.      As Unit Manager, I participated in his Z-code staffing on March 10, 2004. As reflected in the vote sheet, this review was conducted at the request of the inmate

3

through his psychiatrist, Dr. Lindemuth: "Dr. Lindemuth requests re-evaluation for Z-code due to the increased Anxiety, etc."

9.      I did not agree that inmate DeFranco needed to be Z-coded. From my own personal experience, he had successfully resided on Unit D for some time, while sharing a double cell. He could interact with other inmates without being disruptive and he certainly was not threatening to himself or to other inmates. Based on his records, he was receiving ongoing medical and psychological treatment, including anti-anxiety medications. In addition to that, he was (and still is) maintaining successful employment in the institution library as a law library clerk.

10.     In my many years of experience with inmate DeFranco, he has proved to be extremely manipulative with staff and has persistently lobbied for Z-code, constantly badgering staff about the process, sending multiple and at times repetitive requests and correspondence to the unit staff and institution staff, including the Superintendent.

I declare under penalty of perjury that the foregoing is true and correct, per 28 U.S.C. § 1746.

Date: July 21, 2006

John Skendall

4

*Exhibit 11*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY DeFRANCO,** | : |
| **Plaintiff,** | : **No. C.A. 04-230-E** |
| | : **Magistrate Judge Baxter** |
| . **V.** | : **District Judge Cohill** |
| | : |
| **WILLIAM WOLFE, et al.,** | : ⋅ |
| **Defendants.** | : |

---

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S FIRST INTERROGATORIES
### TO DEFENDANT STEVE REILLY, CHIEF PSYCHOLOGIST

In accordance with Rule 33 of Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days.

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

1. Please state whether your Office consult with any doctors, medical of mental health, before voting to approve or remove z-codes on inmates; and do any doctors get a vote on the z-code?

ANSWER:    SEE ATTACHED SHEET FOR RESPONSES.

2. Please explain how the z-code voting process works; how it is initiated and who determines whether the z-code is granted.

ANSWER:

3. Please state what mental health problems plaintiff was recorded to have in your Office in Demeber 1999 through June of 2002?

ANSWER:

1

Case 1:04-cv-00203-HBS-PB Document 20-7 Filed 08/02/2006 Page 18 of 40

4. It has became known that a Ms. Eichenlaub has purportedly stated that she was plaintiff's psychologist at a time in 2002; please state when and how many times your Office states this Ms. Eichenlaub consulted with plaintiff.

ANSWER:

5. Please state your duties of chief psychologist; do you over-see all psychologists and review what their decisions are, especially concerning the removal of z-codes?

ANSWER:

6. Does Albion have a PRT (psychiatric review team), and was plaintiff on the mental health rooster in May-June of 2002?

ANSWER:

7. Is plaintiff currently on the mental health rooster?

ANSWER:

8. What is the procedure at Albion as far as the psychiatric review team and who is on it?

ANSWER:

9. Was there a PRT meeting concerning the removal of plaintiff's z-code in 2002; if yes please state who.

ANSWER:

10. If there was not, please explain why.

ANSWER:

11. Do you believe it proper for a psychologist who has never met an inmate (or who has met once) is qualified to make a detrimental decision to vote whether the inmate needs z-code status?

ANSWER:

12. You were present in August of 2002 when the program review committee interviewed plaintiff regarding the planned transfer due to his misconducts for being in an unauthorized area and other minor infractions; did the PRC vote to remove the transfer with your input, and why was the transfer dropped?

ANSWER:

13. What was the exact converstaions between you, Dr. Lindemuth and counselor Webb in March 2004 regarding the restaffing of z-code for plaintiff?

ANSWER:

14. Did you support z-code status for plaintiff in 2000, 2002 and 2004, please explain.

ANSWER:

15. Is mental health a criteria for z-code status?

ANSWER:

16. Please state the changes in plaintiff between February 2000 and June 2002; that is, plaintiff was given a misconduct in March of 2002; a couple of months later the z-code was removed; please state what was different premisconduct and postmisconduct that warranted z-code removal?

ANSWER:

Date:

_____
Steve Reilly, Chief Psychologist

Served by plaintiff on
4/21/06 by US Mail

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DEFRANCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-230 E |
| | ) |
| WILLIAM WOLFE, ET AL., | ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST
## INTERROGATORIES TO DEFENDANT STEVE REILLY

1. The Z Code approval/removal does not routinely involve medical doctors or psychiatry. If the subject has a significant mental health history, then Psychiatry is contacted. Doctors do not vote directly on Z Code removals or approvals.

2. From a psychological perspective, Z Codes are approved or removed based on the inmate's mental health stability.

3. DC-97: Sent to the Psychology Department on May 20, 2002. It was sent by Corrections Counselor, Judy Jackson, regarding annual Z Code review. Action taken indicates panic disorder - doing time for murder - stated his family is the Dr. Defranco family – also reports that Mr. Reilly guaranteed that he would never lose his Z Code – condescending – his medication should be addressing his need for panic disorder. Circulate vote sheet to determine continued need of Z code. Martha Eichenlaub, Psychologist 1.

DC-35 A, Inmate Requests to Staff: Sent by inmate DeFranco requesting an appointment within the Psychology Department.

Progress Note of December 20, 2002: Inmate was concerned with the threat of moving to single-cell status. Currently, inmate DeFranco is being treated for general anxiety disorder

through Psychiatry and he is member of the mental health roster. Inmate DeFranco stressed that he genuinely needed to maintain his Z Code. The subject appears in need of single-cell status at this time. Certainly treating his psychiatric needs is in the subject's best interest. It appears that inmate DeFranco is requesting reassurance that his single cell would not be abruptly removed. Maintain Z Code status for inmate. Staff for Z Code status. S. Reilly, Chief Psychologist.

DC-14, April 2, 2001: Met with inmate DeFranco filing a request he placed "to meet him as scheduled". He requested as wanting a referral to Psychiatry for an evaluation for psychotropic medication. He stated that he has been diagnosed as having a panic disorder for the past ten years. He began to have panic attacks more frequently; have been increasing in intensity. He states that he has used non-psychopharmacological interventions, but that with the increase in symptoms, these measures have not been enough lately. He states that he does not want to have to take medication every day; prefers an as-needed basis. Will place referral for psychiatry; Wendell Patz, Psychology intern.

DC-35 A, Inmate Request to Staff dated July 17, 2001: Inmate sent request slip to Psychology regarding written warnings concerning contact with his daughter in the visiting room. Superintendent responded by indicating that the inmate should consult with his primary counselor.

DC-35 A, Inmate Request to Staff and response by staff in March of 2001: Inmate requesting referral to Psychiatry.

4. One time.

5. The Chief Psychologist supervised all other Psychology staff members within the department. The Chief Psychologist is a consultant to adding or removing Z Codes.

2

6. The State Correctional Institution at Albion has a Psychiatric Review Team and the plaintiff was on the Mental Health Roster in May and June of 2002.

7. Yes.

8. The procedure at SCI-Albion regarding the Psychiatric Review Team is to review all inmates assigned to the latter team regarding their mental health stability. These reviews are conducted within the Medical Department every 120 days. Individual Treatment Plans are reviewed and signed off by the PRT. Generally, the PRT consists of the Consulting Psychiatrist, Mental Health Coordinator, Chief Psychologist, Unit Psychologist, Unit Manager and Unit Counselor.

9. Psychological records do not reflect that the PRT met regarding the removal of the subject's Z Code.

10. The PRT reviews inmates who are members of the PRT. At that time, inmate DeFranco was a member of the MH roster and, subsequently, was not reviewed by the team for Z Code removal or approval.

11. The responding defendant Objects to this interrogatory as the opinion/information sought is irrelevant and not likely to lead to the discovery of admissible evidence.

12. The responding defendant advised the PRT to not transfer inmate DeFranco due to his relatively good conduct at the institution.

13. No such conversation was ever held.

14. This defendant recalls consulting with staff regarding the plaintiff's difficulties in 2000. Subsequently, it is this defendant's impression that no subsequent reviews were submitted by him in 2002 and 2004.

3

15. Mental health conditions for Z Code criteria include significant mental illness.

16. Misconducts do not directly influence Z Code removals within the Psychology

Department.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: May 26, 2006

4

MAY-26-2006 14:07 FROM:SCI-ALBION 814-7569735 TO:814125653019 P:1/2

05/25/2006 12:33 FAX 8147569733 SCI ALBION @005

## VERIFICATION

I, Steve Reilly, hereby state that the foregoing answers to Plaintiff's First Set of Interrogatories to Defendant Steve Reilly are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

Steve Reilly

Date:

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

***Defendant's Response to Plaintiff's First Interrogatories to Defendant Steve Reilly*** was

served upon the following, by first-class mail this May 26, 2006.

Anthony DeFranco, CZ-3518
State Correctional Institution
At Albion
10745 Route 18
Albion, PA 16475

MARY L. FRIEDLINE
Senior Deputy Attorney General

*Exhibit 12*

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO, | : |
| Plaintiff, | : |
| | : No. C.A. 04-230-E |
| | : Magistrate Judge Baxter |
| V. | : District Judge Cohill |
| | : |
| WILLIAM WOLFE, et al., | : |
| Defendants. | : |

DEFENDANT'S RESPONSE TO
**PLAINTIFF'S SECOND INTERROGATORIES TO
DEFENDANT STEVE REILLY, CHIEF PSYCHOLOGIST**

In accordance with Rule 33 of the Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on the plaintiff within 30 days.

If you cannot answer the following interrogatoires in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions. These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

1. Did your Office receive Dr. Lindemuth's Report's dated September 22, 2002 and August 20, 2004, advising that plaintiff be conferred back to z-code status due to his mental and physical health?

ANSWER: SEE ATTACHED SHEET FOR RESPONSES.

2. What were your *exact* actions when you received these Report's regarding plaintiff's health?

ANSWER:

3. Is it your claim that a Ms. Eichenlaub actually "met" with plaintiff or is it your statement that she reviewed plaintiff's z-code status one time? In other words, do your records show an actual meeting between plaintiff and Ms. Eichenlaub? And if so, give *exact date* of meeting.

ANSWER:

4. Plaintiff was given a z-code for mental health reasoning in 2000. In 2002 it was determined that he no longer met the requirements for the z-code. Please state the changes in plaintiff that he no longer met the z-code requirement?

ANSWER:

1

5. What changed in plaintiff's condition in 2002 that warranted z-code removal?

ANSWER:

6. Plaintiff is specifically requesting what changed in his condition, between 2000 (the issuance of z-code) and June 2002 (the z-code removal), what was specifically different in plaintiff in 2002 that he no longer met the z-code status?

ANSWER.

7. In you prior response you gave a list of events in ¶ 3., the first paragraph, you stated that a DC-97 sent to psychology on May 20, 2002, that it was sent by counselor Jackson. However, at the end of the paragraph you state, Martha Eichenlaub, Psychologist 1. Was this report or DC-97 filled out by counselor Jackson or Ms. Eichenluab?

ANSWER:

8. What is the exact difference between being on a mental health roster and psychiatric roster?

ANSWER

9. Is plaintiff on the psychiatric roster now?

ANSWER.

Date:

_____
By: Steve Reilly, Chief Psychologist

Mailed by plaintiff
on June 22, 2006

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY DEFRANCO,        )
                                )
        Plaintiff,         )
                                )
        v.              )   C.A. No. 04-230 E
                                )
WILLIAM WOLFE, ET AL.,     )

<u>**DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND
INTERROGATORIES TO DEFENDANT STEVE REILLY**</u>

1. The Psychology Department possesses a memo from Dr. Angela Lindemuth, DO psychiatrist, dated September 23, 2002 recommending Anthony DeFranco be converted to Z code status.

2. The result of a psychiatric recommendation for Z code status to the unit psychologist activates discussion of the inmate's case during psychiatric team meetings as well as encouraging unit staff to initiate a Z code staffing. The responding defendant does not recall his exact actions after receiving this correspondence.

3. The Psychology records reflect that on May 29 and June 21 of 2002 inmate DeFranco met with Ms. Eichenlaub.

4. Changes in Z code requirements normally reflect an increase or decrease in mental health stability. In a broad sense, if Mr. DeFranco's mental health stability improved, his Z code would be reviewed and possibly terminated.

5. Medication compliance, good attendance with psychiatric appointments and no evidence of serious mental or emotional maladjustment.

6. This question cannot accurately be answered in the clinical sense. Any changes in an inmate's overall emotional and mental stability will certainly effect the removal or activation of Z code status.

7. Ms. Jackson.

8. Mental Health Rosters consists of all inmates with a mental health stability rating of "C" who have shown a history of mental health treatment. Psychiatric Review Team Rosters consists of inmates who have mental health stability ratings of "D" and possess serious mental health adjustment difficulties.

9. No.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Susan J. Forney
Chief Deputy Attorney General

Date: July 21, 2006

2

## VERIFICATION

I, Steve Reilly, hereby state that the foregoing answers to Plaintiff's Second Set of Interrogatories to Defendant Steve Reilly are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

Steve Reilly

Date:

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

*Defendant's Response to Plaintiff's Second Interrogatories to Defendant Steve Reilly*

was served upon the following, by first-class mail this July 21, 2006.

Anthony DeFranco, CZ-3518
State Correctional Institution
At Albion
10745 Route 18
Albion, PA 16475

MARY L. FRIEDLINE
Senior Deputy Attorney General

*Exhibit 13*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO, | ) |
| | ) |
|                       Plaintiff, | ) |
| | ) Civil Action No. 04-230-ERIE |
|        V. | ) |
| | ) Judge Maurice B. Cohill, Jr. |
| SUPERINTENDENT WILLIAM WOLF; | ) Mag. Judge Susan P. Baxter |
| STEVE REILLY; DENESE BRUNNER; | ) |
| MANAGER ROD SHOWERS; CASE | ) |
| MANAGER GECAC JUDY JACKSON; | ) |
| DR. JOHN DOE; JANE DOE; | ) |
| JEFFREY BEARD; ASSIST. SUPER. | ) |
| WILLIAM BARR; MARILAND | ) |
| BROOKS, | ) |
|                  Defendants. | ) Electronically Filed. |

## DECLARATION OF TRACY POLLOCK

I, Tracy Pollock, verify that the foregoing information is true and correct to the best of my personal knowledge or information and belief.

1.     I am presently employed by the Commonwealth of Pennsylvania, Department of Corrections, as Grievance Review Officer. As part of my duties, I am in charge of grievance records of appeals. The Secretary's Office of Inmate Grievances and Appeals conducts the final review of inmate grievances, in accord with Administrative Directive 804. This directive is part of the Inmate Handbook, which is provided to each inmate and serves as the rules and regulations of the institution.

2.     A grievance must be appealed through all administrative levels of appeal at an inmate's institution and the Department of Corrections. Administrative directive DC-ADM 804 outlines the necessary steps.

3.     When a grievance is submitted by the inmate, it is immediately assigned a grievance number. Once numbered, the grievance then proceeds to Initial Review.

4.      Once an inmate has complied with all of the procedural requirements and a grievance has proceeded through Initial Review, an inmate must file an Appeal from Initial Review to the Superintendent.

5.      Once an inmate has received a disposition of an appeal from Initial Review, the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals and seek a Final Review.

6.      The Department of Corrections maintains a hard copy file and a computer database of all appeals that are made to the Secretary's Office of Inmate Grievances and Appeals. I am the custodian of these records, which are kept in the ordinary course of business. The computer system is a modified foxpro application data retrieval tracking system which contains grievance records dating back to the year 1995.

7.      I have reviewed these records and found the following with respect to inmate Anthony DeFranco inmate number CZ-3518:

a)      he has not appealed any grievance through the final review stage;

b)      there is no record of a grievance relating to Z-code staffing at any time, including on or about August 25 2002, December 16, 2002, or March 23, 2004 ;

c)      inmate DeFranco did not properly seek Final Review of grievance #112276, dated March 15, 2005. As reflected in the attached May 17, 2005 memorandum from the Secretary's Office of Inmate Grievances & Appeals, DeFranco failed to comply with DC-ADM 804 because he did not attach the Facility Manager's decision with amendment. According to that memorandum, he was given ten working days to provide the required documentation and advised that failure to do so would result in dismissal of his appeal. This office did not receive any further correspondence from

2

inmate DeFranco in response to the May 17, 2005 memorandum, which resulted in dismissal of his appeal. There is no letter from DeFranco dated May 23, 2005 in the DOC hard copy file, and the only letter received from him was his appeal dated May 8, 2005.

       I declare under penalty of perjury that the foregoing is true and correct, per 28 U.S.C. § 1746.

*Tracy Pollock*

**Tracy Pollock**

Date: _7-21-06_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO, )
                      )
              **Plaintiff,** )
                      )        **Civil Action No. 04-230-ERIE**
      **V.**                )
                      )        **Judge Maurice B. Cohill, Jr.**
SUPERINTENDENT WILLIAM WOLF;)    **Mag. Judge Susan P. Baxter**
STEVE REILLY; DENESE BRUNNER; )
MANAGER ROD SHOWERS; CASE  )
MANAGER GECAC JUDY JACKSON; )
DR. JOHN DOE; JANE DOE; )
JEFFREY BEARD; ASSIST. SUPER. )
WILLIAM BARR; MARILAND )
BROOKS, )
              **Defendants.** )

## DECLARATION OF JOHN SKENDALL

      I, John Skendall, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

      1.      I am employed by the Pennsylvania Department of Corrections (DOC) at SCI-Albion. I am a Unit Manager and have held that position at SCI-Albion since April 17, 1994. The unit officially opened August 4, 1994. I previously held the position of Superintendent's Assistant at SRCF-Mercer from February, 1984 through April, 1994. Other positions include part-time evening Adult Basic Ed. teacher at SCI-Cambridge Springs from January, 2000 through June, 2001; and part-time evening Adult Basic Ed. at SCI-Albion from September, 2001 through the present. In addition, I was designated Acting Major of Unit Management during the months of December, 2004 and January, 2005.

2.      As a Unit Manager, my duties include care, custody and control of the inmates assigned to my care in a General Population/Sex Offender Program housing unit. I supervise a staff consisting of two corrections counselors, one clerical, and numerous corrections officers and sergeants assigned to the unit. I am directly responsible for the security and program functions of the unit, and have contact with the inmates assigned to my unit as well as staff on a daily basis. General duties include chairing unit inmate staffings and unit staff meetings, consulting with inmates concerning routine issues, supervising and monitoring cell moves, and providing support and direction to my staff, to name a few duties.

3.      Unit Managers also participate in classification reviews for Z-code (single cell) status as part of a committee of staff members (consisting of the inmate's Counselor, Unit Manager, three (3) regular housing unit officers, a Psychologist, the Program Manager, Major, Deputy-Facility Management and Deputy-Centralized Services). A vote sheet is prepared reflecting individual member recommendations. This is sent to the Superintendent (or Deputy Superintendent), who considers the recommendation of the committee, as well as the information presented to the committee, and then makes his or her own decision on the Z-code status.

4.      In the Z-Code review process, facility staff review appropriate documentation including, without limitation, misconduct reports, recommendations from medical and/or psychiatric or psychological staff, and reports from other staff who have knowledge of the inmate's behavior. Z-code classification is not permanent and is not a right. It does not necessarily preclude an inmate from dormitory housing.

5.      Generally, assignments are based upon documented behavior of an inmate in an institutional or similar setting or upon staff's evaluation of the  inmate and review of available information which indicates an inability to be housed in a cell with others, which can include information reflecting  medical, mental health, victimization concerns, and behavioral problems, etc., which may indicate a need for single-celling.

6.      Whether to provide Z-code status to a particular inmate is a decision made by institution Corrections Officials in the day-to-day operation of the institution, and is made based upon the assessment of the individual inmate.   Security and safety concerns are primary issues and often the driving force in determining the status.

As a unit manager, I must review and evaluate the total picture of the inmate's background, behavior and history, as it affects and is affected by Z-code status.  I must also take into consideration all input provided by other institutional staff and departments, including Psychology, Psychiatry and Health Care practitioners.  All input is reviewed and considered, but the final decision (vote) by me is an individual one, and need not be in agreement with recommendations/suggestions from the aforementioned areas or departments.  In fact, any staff member involved in the voting process may vote as they choose and do not influence, nor are influenced by, the votes of other staff.

7.      I was Unit Manager for inmate DeFranco on D/A Unit from August 2002 to the present.  This, of course, would exclude any occasions when inmate DeFranco was away from the unit or institution due to Authorized Temporary Absence (ATA), transfer, or placement on a different housing unit, for whatever reason.

8.      As Unit Manager, I participated in his Z-code staffing on March 10, 2004. As reflected in the vote sheet, this review was conducted at the request of the inmate

3

through his psychiatrist, Dr. Lindemuth: "Dr. Lindemuth requests re-evaluation for Z-code due to the increased Anxiety, etc."

9.     I did not agree that inmate DeFranco needed to be Z-coded. From my own personal experience, he had successfully resided on Unit D for some time, while sharing a double cell. He could interact with other inmates without being disruptive and he certainly was not threatening to himself or to other inmates. Based on his records, he was receiving ongoing medical and psychological treatment, including anti-anxiety medications. In addition to that, he was (and still is) maintaining successful employment in the institution library as a law library clerk.

10.     In my many years of experience with inmate DeFranco, he has proved to be extremely manipulative with staff and has persistently lobbied for Z-code, constantly badgering staff about the process, sending multiple and at times repetitive requests and correspondence to the unit staff and institution staff, including the Superintendent.

I declare under penalty of perjury that the foregoing is true and correct, per 28 U.S.C. § 1746.

Date: July 21, 2006

John Skendall

4