IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO, :
    Plaintiff, : No. 04-230-E
     : Magistrate Judge Baxter
V. : District Judge Cohill
     :
WILLIAM WOLFE, et al., :
    Defendants. :

### PLAINTIFF'S REPLY TO DEFENDANTS SUBMISSIONS TO PARTIAL SUMMARY JUDGMENT

AND NOW, comes plaintiff, pro se, respectfully submitting his Reply to the defendants' submission in their Reply and Cross Motion regarding the relatiatory transfer issue and in support avers as follows:

PLAINTIFF INCORPORATES BY REFERENCE HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AS IF FULLY STATED HEREIN.

1. The defendants have filed a Reply and cross motion regarding plaintiff's motion for partial summary judgment dated August 1, 2006.

2. Plaintiff will only address the issue regarding his motion for partial summary judgment as it relates to the retaliatory transfer and the defendants' Reply (he is currently unable to effectively reply to the cross motion as it relates to the entire case as there is material, outstanding discovery issues and requests and need of further discovery which will be discussed further in a separate pleading.

3. The defendants have produced another declaration from defendant Barr (as plaintiff predicted they would in his partial summary judgment motion). Defendant Barr's declaration is self- serving and fails to support over-coming a summary judgment ruling.

The defendants referred and cited cases in their Reply, concerning the retaliatory transfer, that are unpublished and not accessible to plaintiff. And specifically, *Floyd v. Dugal*, 2003 WL 23101802 (E.D.Pa.). Since defendants' counsel failed to attach a copy of said case(s), plaintiff objects to their use. Without waiver of this objection, defendants still cannot over-come summary judgment.

**Discussion**

In Barr's declaration (Def.'s Ex. "2") Barr merely attempts to rationalize his motives to having plaintiff transferred to the central of the State based upon speculation, hypothetical situations and his own (self-serving) subjective thinking. For example, Barr states that he was concerned over plaintiff's well-being and wanted to give him a new start, free of conflict and conspiracy. These are all Barr's alleged thinking. Nothing in this record supports that. While plaintiff did state Barr made a threat to transfer him (which is true and actually happened); that Barr tampered with a witness (Dr. Lindemuth) to alter the truth; this too was true, as recorded by the testimony of Dr. Lindemuth herself admitting that Barr had summoned her to a room, admonished her for writing reports on inmates and was only concerned that it could set a dangerous precedent for other inmates to follow. Specifically the testimony reads:

> Q. And, Your Honor, I've got one last question: And if you could just—and I don't know if I'm going out of cross-examination or not—
> The Court: I'll tell you.
>
> Q. —but if I am, it's something I brought up. It's important to this case I believe in this respect: You wrote this report, this last report, in August of 2004 supporting—or getting a recommendation that I be Z Coded, I have a hearing subqesuent to that before Your honroable Judge Paradise Baxter—
> The Court: In November.

Q. —right, and November 8th you sign an affidavit and met with Mr. Barr, and you never answered the question on direct, I wanted to know what Mr. Barr said—who was present and what did Mr. Barr say to you to get you to sign that affidavit?

A. Well, it was my decision to sign the affidavit because—

Q. My question was: What did Mr. Barr say to you?

A. He had to tell me the reason why he was asking me to come to the office and what the particulars were.

Q. I want to know what that is.

A. Well, that you had taken the memo beyond the Z Code and went to argue for—in the judicial Federal lairs of the system and that it was—you know—it was a—

Q. Was there a precedent? Did he say that it was a dangerous precedent and it's never happened before? Did he say your memo created a dangerous precedent that never happened before?

The Court: Did you tell the Plaintiff that Mr. Barr told you that it was a dangerous precedent?

A. I had to tell him that, you know, this was—

Q. This is a yes or no.

A .—appropriate.

The Court: Did he say that to you?

Q. Mr. Barr told you that.

A. Well, how else was this—yeah, he had to tell me that.

Q. And by you making that recommendation was going to open the floodgate for other inmates to follow through, correct?

The Court: if he said that, he said that. Did he say that?

Q. You have to be honest.

A. Yeah. But I agree with that.

Q. I'm not asking what you agree with.

A. It's not possible, and it would be impractical.

Q. Did Mr. Barr call you into a room with another female that's unknown to me, that's unknown to you, and tell you that what you did is unacceptable about these memos and that what happened at Albion has never happened before?

> The Court: That's a lot of things; did he say all those things?
>
> Q. I'm just trying to make it faster, was this a conversation we had?
>
> A. Yes, that's true. And that's what was significant about it and I—yes.
>
> The Court: You had written that in one of your—
>
> Mr. DeFranco: That's obstruction of justice, Your Honor, and intimindating this witness.
>
> The Court: Mr. DeFranco, you can make that argument to me at another point. Let's finish this; do you have any other questions for the witness?
>
> Mr. DeFranco: I have no other questions, Your Honor.

(See Preliminary Injunction Hearing transcripts, 12/17/04 pages 74-76). It was made clear by the prison's own doctor that defendant Barr had in fact influenced her by his statements, as testified to. Even the Magistrate Judge was surprised that defendant Barr made those assertions to this witness.

The agument that Barr somehow wanted to maintain order in the grievance system as a reason for moving plaintiff is further absurd. To accept this rationale the Court would be allowing the Department of Corrections to retalitorily transfer any inmate, at any time, if that inmate *might* file a grievance. Or even if any inmate filed a grievance against the grievance coordinator or superintendent. To allow such would undermine the grievance process and instill a fear in inmates to file a grievance (or even think about it) because the DOC could transfer the inmate using the rationale of "what if's", "could be's", etc. The fact of the matter is that even Barr admits that he was only (supposedly) concerned about *possible future grievances* and that plaintiff would not feel he received a "fair shake" at Albion. These are obviously not real events, they are, *at best*, Barr's subjective thinking. How could anyone conceivably believe that sending plaintiff 240 miles further away from his family where they could hardly visit; losing his top paying employment in the prison library and losing personal property (among others) would be

of any possible help? Defendant Barr's motives, as this record clearly shows, was to punish the plaintiff for the filing of this lawsuit. Moreover, as stated in <u>Ennis v. Nation Assin of Business and Ed. Radio, Inc.,</u> 53 F.3d 55, 62 (4thCir.1995), "Summary judgment rule would be rendered sterile...if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." It is clear that defendant Barr filed a false document to have plaintiff transferred (*due to litiagtion* plaintiff had [not] filed against him); Barr made prior threats of transferring plaintiff as reflected in plaintiff's earlier filed documents and TRO's and the declaration of Michele Flavell filed well before the transfer (Doc.#26) stating Barr wanted to transfer plainff back in 2002.

It is further interesting that the defendants want the Court to focus exclusively on the last part of Barr's reasoning to request plaintiff's transfer (transfer order) while the first part is particulaly telling. Defendant Barr specially stated that he was requesting (on February 15, 2005) plaintiff's transfer "***due to litigation against William Barr***". But the record is very clear that Barr had no litigation filed against him by the plaintiff. Plaintiff did not file litigation against Barr until March 7, 2005 (Doc.#63). Defendant Barr, without question, misrepresented the truth in the transfer petition on February 15, 2005 when he moved for the transfer of plaintiff.

Even more telling in defendant Barr's motives is the Declaration submitted by Michele Flavell (Doc.#26) which she submitted with the Court back in November of 2004, three (3) months *before* plaintiff's transfer, explaining that defendant Barr had personally told her (back in the summer of 2002) that if he had it his way that plaintiff would be transferred to the central of state. (See Ex. "A" attached).

While the defendants claim they would have taken the same action absent the lawsuit, the reason plaintiff was transferred (even accpeting Barr's new declaration true) was based upon the

lawsuit and *potential future grievances*. The transfer did not further any legitimate penological interest. The defendants allowed his return due to the filing of a grievance. If the Court accepted this self-serving rationale for the transfer, it would have a chilling effect on every other inmate who dared filed a grievance, or even, possibly filing one. Filing grievances is a constitutional protected activity in and of itself, <u>Turner v. Safley</u>, 482 U.S. 78, 84, (1987). In <u>Thomas v. Dragovich</u>, 142 Fed.Appx. 33 (3dCir. 2005)(Inmate grievances are admissable evidence at trial and can not be excluded under the hearsay rule). The reasoning offered by defendant Barr in his self-serving declaration, based upon the evidence before this Court, it is respectfully submitted that the defendants, Barr and Brooks, cannot defeat summary judgment and summary judgment should be granted as a matter of law.

**Exhaustion**

Under the PLRA, 42 U.S.C. § 1997(e), provides that, "no action shall be brought with respect to prsion conditions under [§1983] or any other Federal law, by a prisoner…until such adminstrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). Plaintiff has submitted documented proof that he has appealed the grievance system, through final review. See attachment to Amended Complaint. The defendants now argue they did not receive the May 23, 2005 letter and enclosed amendment mailed to them by plaintiff. Plaintiff avers that he did mail them the document (See, plaintiff's sworn affidavit, attached, Ex. "C") and if they now claim otherwise it is an attempt to procedurally bar plaintiff from litigating his claim. It would make absolutely no sense for plaintiff to appeal the decision all the way to final review and then default his own claim by not mailing one piece of paper. However, plaintiff avers that he did and has exhausted *all available* remedies and complied with § 1997(e). The defendants have the burden of producing and proving plaintiff has not exhausted all of his *available* remedies in the

grievance process; this is a question of law and fact. Noteworthy is the case of *Kirk v. Roan*, 160 Fed.Appx. 188 (CA 3 Pa. 2005); here, inmate-appellant Kirk had filed his grievance through final review however, Central Office (the same Pa. Central Office here) produced an affidavit stating that Kirk failed to file a paper (as they have in this case) but Kirk had a mailing receipt as further proof. An official from Central Office submitted an affidavit alleging inmate Kirk failed to properly exhaust administrative remedies because he did not send them a photocopied paper of a grievance document related to his appeal; while the Middle District dismissed complaint but the Third Circuit remanded the case back stating that insufficient evidence existed to find that inmate Kirk failed to exhaust his administrative remedies because inmate provided Court with a mail receipt proving he sent the documents the official claims she never received. This is factually on point with plaintiff and how the Depratment of Corrections are attempting exploit the exhaustion process to bar § 1983 review. Also, in *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir.2003)(holding that failure to exhaust is an affirmative defense and finding that the District Court erred in imposing an improperly heightened pleading standard that required the prisoner not only to plead, but also prove, exhaustion in the complaint); see also *Mitchell v. Horn*, 318 F.3d 523, 529 (3dCir.2003). And it appears a course of conduct that Pa. Central Office purposely claiming not to receive inmate final appeals as a means to procedurally default legitimate inmate claims.

    Additionally and of great relevance, is the declaration of a Tracy Pollock from Central Office who claimed that plaintiff has never filed any grievance through final review. Specifically,

> 6. The Department of Corrections maintains a hard copy on file and a computer database of all appeals that are made to the Secretary's Office of Inmate grievances and Appeals. I am the custodian of these records, which are kept in the ordinary course of business. The

7

computer system is modified fox pro application data retrieval tracking system which contains grievance records dating back to the year 1995.

7. I have reviewed these records and found the following with respect to inmate Anthony DeFranco inmate number CZ-3518:

   a) he has not appealed any grievance through the final review stage.

(See, Def.'s Ex. 13). And then she goes on to state her office has no record of plaintiff filing some additional paper, thus, supposedly defaulting his retaliation claim. (See Def.'s Ex. 13). However, once again, the defendants have caught themselves misrepresenting the truth to this Court. Attached hereto, marked Exhibit "B" are just three (3) of plaintiff's final review decisions, completed by Central Office, which holds grievance appeals from 1995 until the present. These exhibits are from 2005 and 2006. The defendants and their agents have filed a false and perjured declaration attempting to bar plaintiff's retaliation claim. Ms. Pollock's sworn declaration specifically states that plaintiff had not filed *any* grievance through the final review stage (Def.'s Ex. 13, ¶ 7(a)). The attached exhibits by plaintiff prove this to be completely inaccurate. (Ex. "B", plaintiff's Final Review deicisons by Central Office).

Our Circuit and sister-circuits have stated that "prison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable." *Brengettcy v. Horton*, 423 F.3d 674, 681 (C.A. 7 (Ill.) 2005. Also, "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable'....we join them (Eighth and Fifth Circuits) on this because we refuse to interpret the PLRA so narrowly as to…permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Foulk v. Charrier*, 262 F.3d 687, 698 (8thCir.2001); *Underwood v. Wilson*, 151 F.3d 292, 295 (5thCir.1998)(per curiam). Plaintiff avers he has filed grievances and this grievance to completion. (See, Ex. "C").

WHEREFORE, Plaintiff prays this Court grant summary judgment.

Date: 8/7/06

Respectfully submitted,

*[signature]*
Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**
Service was made by U.S. First
Mail to Attorney General at
564 Forbes Ave., Pgh. Pa. 15219, this date