IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,
       Plaintiff,

v.

WILLIAM WOLFE, et al.,
       Defendants.

: No. C.A. 04-230-E
: Magistrate Judge Baxter
: District Judge Cohill

## APPEAL OF MAGISTRATE'S ORDER (MOTION TO COMPEL)

To: The Honorable Maurice B. Cohill, Jr.

    AND NOW, comes plaintiff, who brings forth the following appeal of the Magistrate Judge's Oral Order, issued August 24, 2006, and sets forth:

    1. There was a telephonic hearing held before Magistrate Judge Baxter on August 24, 2006, involving outstanding motions to compel discovery filed by plaintiff.

    2. The Magistrate ruled against plaintiff in his requests to the following documents: plaintiff submits the Magistrate was is error in the following and asks that this Honorable Court vacate those decisions:

**Plaintiff's Motion for Sanctions & Verification (Doc.# 200)**

    Plaintiff asked the Court to impose sanctions and force the defendants to verify that a Ms. Eichenlaub (psychologist) had ever met with plaintiff. The z-code committee had agreed with this person as a means to remove the medically required z-code after she allegedly stated plaintiff no longer met the z-code criteria. However, plaintiff avers, and has always averred, that this person and him had never met and no such interview ever transpired (which is deliberate indifference). In asking the Chief Psychologist interrogatories, the first set, this Court read the

interrogatories and answers and stated that defendant Reilly had answered the interrogatories and stated that plaintiff met with Ms. Eichenlaub "one time" and that it occurred on May 20, 2002. (See, this Court's Order, Doc.# 187). In conjunction with that answer, plaintiff sent defendant Reilly a second set of interrogatories and asked defendant Reilly the same basic question. However, his answer changed, now claiming that Ms. Eichenlaub had met with plaintiff twice, once May 29, and June 21, 2002. Based upon this clearly conflicting answer, plaintiff asked the Court to impose sanctions and force the defendants to produce "proof" that this Ms. Eichenlaub and plaintiff ever met (by deposition or other lawful means). Rather, the Magistrate just denied all motions except for the psychiatrist to decipher his notes. This was legal error. Due to defendant Reilly's very own self-contradictory answers to this simple question, the defendants should be required to produce factual proof by this Ms. Eichenlaub that there was ever an actual meeting between them. At the heart of plaintiff's claims, he is asserting retaliation by named defendants in that they entered into a collaboration to remove plaintiff's medically required z-code due to his alleged threatening of a prison guard, as further punishment, *and* his statements to defendant Showers about his intentions of suing the DOC over missing personal property. This was medical deliberate indifference and retaliation. And due to the claims and defendants very own self-conflicting answers, they should be required to produce real proof of this Ms. Eichenlaub and plaintiff ever shared an interview.

**Plaintiff Requested Additional Interrogatories and Sanctions (Verification)**

Due to the above confliciting answers by Reilly, plaintiff asked the Court to allow him to file additional interrogatories upon Reilly and Ms. Bunner (psychologist); this would have enabled him to ask follow up questions about his inconsistent answers and inquire more about the z-code and harm that its removal had done to other inmates. As this Honorable Court is

aware, plaintiff had previously filed an appeal of the magistrate's order regarding the answers given by defendant Reilly. This Court, under review of these interrogatories, stated that defendant Reilly did in fact answer the questions, stating that a Ms. Eichenlaub (psychologist) had met with plaintiff "one time" and that it occurred on May 20, 2002 (See, Doc. # 187). In plaintiff's second set of interrogatories, he re-asked defendant Reilly the same basic question; this time, however, Reilly gave a completely different answer, stating that Ms. Eichenlaub met with plaintiff twice, on May 29 and June 21, 2002. Based upon these self conflicting answers, plaintiff filed a motion for sanctions and for the defendants to "verify" through real proof that this Ms. Eichenlaub and plaintiff ever met. It is plaintiff's assertion that he has never met this Ms. Eichenlaub. While the defendants did file a motion and a follow up answer claiming that defendant Reilly was simply mistaken in his answer, and they did attach a "redacted" (alleged) interview paper, this is not proof of anything. Plaintiff requested sanctions and that the defendants actually prove any meeting took place. Unfortunately the Magistrate Judge denied the request. It is respectfully requested that this Court impose sanctions and Order the defendants to provide proof of this alleged meeting. Additionally, based upon this matter, plaintiff asks that he be allowed to file additional interrogatories to both defendants Reilly and Bunner (psychologist).

**Motion to Compel Subpoena Request**

Plaintiff has filed two (2) subpoenas upon non-parites pursuant to Rule 45. The first subpoena was granted by the Magistrate in ordering the Chief Psychiatrist for the Western District of the DOC to decipher his progress notes on plaintff, the second subpoena however, to the Medical Records Custodian at SCI Albion, asking that they provide plaintiff with the two heart test results mentioned by their doctor in his declaration filed with the Court, were denied.

At issue is damage done to plaintiff's heart. These heart test results are material to this case and were brought up by the defendants very own doctor (Mark Baker) in their summary judgment motion. Plaintiff submits that these test results are needed and material to his case. Moreover, they will show and refute Dr. Baker's statements. That is why they did not include those specific test results in their exhibits. While they mentioned them, they have failed to produce them. Plaintiff is asking this Court to issue an Order upon the defendants to abide by the subpoena and turn over to him a copy of the 1997 stress test results as well as the 1996 echocardiogram results, as they were made reference to by the defendants themselves and, they bear directly upon plaintiff's claims and his allegations that the defendants actions caused further heart damage.

**Request For Z-Code policy**

As this Court is aware, the DOC's z-code policy is at the heart of plaintiff's claims. While the defendants claim that plaintiff all-of-a-sudden failed to meet the z-code criteria (only months after he had allegedly threatened a prison guard and a converstaion where defendant Showers had made a threat over how the DOC handles inmates who sue them) was plaintiff's medically needed z-code removed. When the z-code was given to him in early 2000, the Chief Psychologist, defendant Reilly "highly recommended" it due to "high stress levels" (see 2000 Z-code Vote-sheet). In June of 2002, after the above stated incidents, the defendants, along with a alleged Ms. Eichenlaub, voted to remove the z-code now claiming that high stress levels were not z-code criteria (see, 2002 Z-code Vote sheet). Either high stress levels are a factor or they are not. The defendants very own Vote sheets and Answers to Interrogatories and testimony all conflict with one another. For example: During the preliminary injunction hearing, the prison psychiartist testified regarding mental health being a criteria for z-code, asked by Magistrate Judge Baxter if mental health is a criteria:

4

> **Dr. Lindemuth:** "No, because their mental health criteria or mental health state is not—or no longer—or I don't know if it was or not, it's not a criteria."
> **THE COURT:** "Mental health is not a criteria for Z code status."
>
> **Dr. Lindemuth:** "That's how it has been at our facility."

(See transcripts 12/17/04, page 31).

While Dr. Lindemuth was the Chief Psychiatrist and at many times the only Psychiatrist at SCI Albion, the Doctor clearly testified to the Court's question that mental health was never a criteria for z-code status at SCI Albion. Comparing that testimony to defendant Reilly's answer to interrogatories;

> **8.** "The procedure at SCI Albion regarding the Psychiatric Review Team is to review all inmates assigned to the latter team regarding their mental health stability. These reviews are conducted within the Medical Department every 120 days. Individual Treatment Plans are reviewed and signed off by the PRT. Generally, the PRT consists of the Consulting Psychiatrist, Mental Health Coordinator, Chief Psychologist, Unit manager and Unit Counselor."
>
> **And, 15.** "Mental health conditions for Z-code criteria include significant mental illness."

(Defendants Reilly's Answers to Interrogatories, attached to Doc.#182).

There is a clear and important dispute as to the truth of this matter. While defendant Reilly states that mental health is a criteria and that there is a meeting every 120 days regarding those inmates who suffer severe mental illness, Doctor Lindemuth, who was the Chief Psychiatrist testified that mental health is not a criteria. The testimony conflicts to the core. Plaintiff submits that disclosure of this z-code policy and procedure is of absolute necessity, as it bears directly upon plaintiff's claims. Moreover, plaintiff is challenging the "policy" itself as being unconstitutional. For all the above stated reasons, plaintiff asks this Court to issue an Order that this policy and procedure be turned over to plaintiff so that he may effectively and meaningfully challenge it and how it was (not) applied to him.

**Inspection of Inmate Files**

Plaintiff has requested that he be permitted to inspect his inmate file (DC-14) as it contains evidence relating to his z-code and likely to lead to other evidence. Specifically, the defendants themselves stated in their summary judgment motion that written on the z-code Vote Sheet at SCI Smithfield that inside of his file is the Report of the Magistrate Judge regarding the granting of the TRO. Obviously, since plaintiff has no access to this file, a staff member placed that document inside the file. And because of this document being inside, the defendants raised the issue of why plaintiff did not inform SCI Smithfield staff about the Court's previous ruling. While plaintiff did inform inquiring staff, he submits that all documentation regarding the TRO and subsequent preliminary injunction hearing are inside this file and his inspection of such is warranted. Plaintiff requests that he permitted to inspect and copy any document from his DC-14 file. Further, plaintiff has requested that he be permitted to inspect his 'block file' (this file is kept on the unit and used by officers to document inmates' behavior). This file is not a security matter and bears directly upon this case as it pertains to plaintiffs behavior.

WHEREFORE, plaintiff prays this Honorable Court grant the requests made herein.

Date: 8/28/06

Respectfully submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**
Service was made by US First Class Mail this date to Attorney General's Office 564 Forbes Ave., Pgh. Pa. 15219.