IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,  :
    Plaintiff,  : No. C.A. 04-230-E
  : Magistrate Judge Baxter
V.  : District Judge Cohill
  :
WILLIAM WOLFE, et al.,  :
    Defendants.  :

FILED
'06 OCT 16 A10:00
CLERK
U.S. DISTRICT COURT

## PLAINTIFF'S COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

AND NOW, comes plaintiff, who brings forth the following counterstatement of undisputed material facts, pursuant to Federal Rules of Civil Procedure, Rule 56:

1. For most of plaintiff's incarceration at SCI Pittsburgh, he was housed in a single cell.

2. In Febraury of 2000, shortly after plaintiff's arrival at SCI Albion, he was staffed and given a medically needed z-code. (Ex. "C", vote #1)

3. In March of 2002, plaintiff maintained his z-code.

4. On March 24, 2002, it was alleged that plaintiff threatened to kill a correctional officer. (Pl.'s Cplt.)

5. Due to the alleged threat, plaintiff was sent to the RHU and given 45 days. (Pl.'s Cplt.)

6. Plaintiff was released from the RHU at the end of April 2002. (Pl.'s Cplt.)

7. Plaintiff was released to defendant Showers and Jackson's Unit. (Pl.'s Amd. Cplt.)

8. In May of 2002 defendant Showers and plaintiff had a conversation about plaintiff's missing personal property (amend. cplt. ¶ 52-59).

9. Plaintiff advised Showers of his intent to sue to DOC. (pl.'s amd.Cplt. ¶52-59)

10. Showers threatened plaintiff about how he would see how the DOC deals with inmates who sue them (amend. cplt. ¶ 52-59).

11. Plaintiff wrote Major Gates about Showers threat (Ex. amend.cplt.).

12. On May 20, 2002, defendant Jackson began a staffing to remove plaintiff's z-code. (Def's MSJ Ex. "9" ¶3)

13. Defendant Jackson, wrote inside the DC-97 that plaintiff's medication should be handling his psych concerns involving panic disorder (Def.'s MSJ Ex. "9" ¶3).

14. Defendant Jackson is not a doctor and not qualified to make medical opinions.

15. Plaintiff never met a Ms. Eichenlaub (psychologist). (Pl.'s MSJ)

16. The defendants did not produce proof any meeting occurred between plaintiff and Ms. Eichenlaub. (Pl.'s MSJ)

17. It is the normal procedure at SCI Albion that if an inmate is moved off of his Long Term Housing Unit and a staffing is to be conducted shortly thereafter, the inmates staffing will normally be deferred back to that inmates Long Term Housing Unit where staff know him (Request slip by Unit Manager Skendall, Pl.'s Ex. "B").

18. Defendant Showers and Jackson failed to defer plaintiff's staffing back to his Long Term Housing Unit in May 2002.

19. The reason Showers and Jackson failed to defer the staffing was so that they could influence the outcome of the z-code vote to remove it. (Pl.'s MSJ)

20. In 2000, defendant, Chief Psychologist Reilly, recommended the z-code due to high stress levels. (Ex. "C" vote #1)

21. In 2000, plaintiff was given the z-code due to his high stress levels and mental health. (Ex. "C" #1)

22. Defendant Jackson, in her 2002 vote to remove the z-code, stated that high levels of stress do not meet the z-code criteria; and Jackson is not a medical professional. (Ex. "C" #2)

23. Defendant Jackson also stated that plaintiff manipulated staff upon his arrival at Albion to gain the z-code. (Ex. "C" #2)

24. Defendant Jackson had no evidence to support that statement.

25. High levels of stress do meet the z-code criteria. (Def.s' MSJ Ex. "8" ¶12)

26. Defendant Showers, wrote in the z-code comment section that plaintiff was manipulative. (Ex. "C" #2)

27. Defendant Showers also wrote that plaintiff's medication would handle his psych needs. (Ex. "C" #2)

2

28. Defendant Showers is not a doctor and not medically qualified to render any qualified opinion about an inmates medication needs. (Pl.'s MSJ)

29. Defendant Showers and Jackson made their statements as a means to sway other voters to remove the z-code. (Pl.'s MSJ)

30. Ms. Eichenlaub is not a doctor or qualified to state medication will handle any psyciatric disorder, including panic disorders. (Pl.'s MSJ)

31. Ms. Eichenlaub should had consulted with plaintiff's treating psychiatrist before rendering an opinion that plaintiff's medication would handle psychiatric needs. (Pl.'s MSJ)

32. None of the 2002 z-code "voters" were medically qualified to render a decision as to whether plaintiff required a medical z-code. (Pl.'s MSJ)

33. There are no doctors on the z-code committee, and no one sought a doctors opinion. Pl.'s MSJ)

34. Plaintiff was sent back to the RHU in June of 2002.

35. Plaintiff was released from the RHU on August 15, 2002, and informed his z-code was removed. (Pl.'s Cplt.)

36. On August 19, 2002, plaintiff was forced to double cell. (Pl.'s Cplt.)

37. On August 25, 2002, plaintiff had a grievance notarized and submitted regarding his z-code removal. (Ex. "K")

38. Plaintiff placed the prison on notice of his medical need of z-code. (Ex. "J")

39. Dr. Lindemuth, on September 23, 2002, sent out a Recommendation to the prison that plaintiff be converted back to z-code and stated the risks. (Ex. "G")

40. As a result of Dr. Lindemuth's September 2002 Recommendation, there was nothing done (Reilly's answer to interrogatory).

41. Plaintiff spoke with Superintendent Wolfe and defendant Reilly regarding his z-code needs in 2002. (Plaintiff's MSJ, Ex "T")

42. In June of 2003, plaintiff was prescribed Nitroglycerin, Aspirin and Lopressor due to chest pain. (Def.s' MSJ "10")

43. Plaintiff was only prescribed these medications approximately nine (9) months after being forced to double cell. (Def.'s MSJ Ex. "7")

44. Plaintiff required these medications because of his severe hostility and inability to cohabitate (See Dr. Lindemuth's Report, August 20, 2004).

45. Plaintiff required more Nitroglycerin due to his chest pain (experienced due to his anger and hostility of cohabitation). (EX. "E")

46. Anger and hostitlity are dangerous for angina sufferers (Dr. Lindemuth's and Dr. DeFranco's Reports).

47. In April 2004, plaintiff was seen by the Chief Psychiatrist for the Western Region of Pennsylvania (Dr. E. Polmueller) and he wrote in plaintiff's file, "Anger, Impulsivity and Panic"; also, "Clear Antisocial Persoanlity Disorder."

48. Dr. Polmueller assessed plaintiff as: "Anger and Impulsivity" in April 2004, from their first and only meeting. (Def.'s MSJ Ex. "14")

49. Dr. Polmueller gave a subsequent declaration regarding his progress notes but failed to address his "notes" referring plaintiff's Anger and Impulsivity. (Def.s' Ex. "14")

50. Dr. Polmueller failed to address the Anger and Implusivity diagnosis purposely as it would hurt the defendants case. (Def.'s Ex. "14")

51. Dr. Polmueller's assessment in 2004 and his subsequent declaration did not include plaintiff's diagnoses of having a Mixed Personality Disorder with the Features of the Borderline and Paranoid. (Def.'s Ex. "14", Pl.'s MSJ)

52. Dr. Polmueller, in his 2006 declaration, only considering the stated Antisocial and Panic Disorder by the doctor, listed only these two diagnosis as "questionable" as if it were a serious mental illness. (Def.'s Ex. "14")

53. Dr. Polmueller, in stating plaintiff's presentation as being a serious mental illness, he was only considering plaintiff's Antisocial and Panic Disorders. (Def.'s Ex. "14")

54. In plaintiff's file, diagnosed by Dr. Pizzat in 1986, plaintiff suffered from Mixed Personality Disorder with the features of the Borderline and Paranoid. (Def.s MSJ Ex."9" A/I ¶6).

55. All of these diagnoses meet the z-code criteria.

56. It is dangerous for plaintiff and any potenital cellmate to place him in a cell with. (Dr. Lindemuth Reports)

57. Nitroglycerin is only prescribed for cardiac related chest pain (angina)(Pl.'s MSJ Ex. "D", PDR)

58. Dr. Lindemuth testified during the preliminary injunction hearing that defendant Barr had summoned her to a room and admonished her about writing reports on inmates; worrying

about a dangerous precedent and stating that the Court had never ruled that way before; he also directed her not to write the reports again (Trans. 12/17/04, page 74-76).

59. While transferred to SCI Smithfield plaintiff was given a new z-code staffing.

60. It was determined by "all" of SCI Smithfield voting staff, including the Psychiatric Review Team, Deputy Superintents and the Superintendent that plaintiff required the medical z-code. (Ex. "C" #4)

61. Since being back in a z-code status, plaintiff's Nitroglycerin intake has decreased dramatically and the doctors lowed his Lopressor from 50 mgs. to 25 mgs. daily. (Ex. "E")

62. Due to the prison's forced double celling of plaintiff, caused irreparable harm to his pre-existing heart condition. (Dr. Lindemuth's 10/2/05 Declaration; Dr. DeFranco's Report).

63. Defendant Reilly is the most qualified person on the z-code committee to render an opinion on a medical z-code need. (Pl.'s MSJ)

64. Ms. Eichenlaub was not a doctor and not qualified to render a medical opinion based on an inmates medical needs. (Pl.'s MSJ)

65. Inmate April gave a declaration involving his heart attack and that Dr. Baker and others put him under single cell status in 2004. (Ex. "11")

66. Dr. Baker and others put April in single cell status due to his heart and to avoid stress (Ex. "U", April declaration).

67. Staff at SCI Albion support z-code status for plaintiff, and state that it is best for the securtiy of the institution, other inmates and plaintiff's safety. (Ex. "L")

Date: 10/10/06

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

5