IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO, )<br>)<br>    **Plaintiff,** )<br>)<br>    V. )<br>)<br>SUPERINTENDENT WILLIAM WOLF; )<br>STEVE REILLY; DENESE BRUNNER; )<br>MANAGER ROD SHOWERS; CASE )<br>MANAGER JUDY JACKSON; )<br>DR. JOHN DOE; JANE DOE, JEFFREY )<br>BEARD; ASSIST. SUPER. WILLIAM )<br>BARR; MARILAND BROOKS, )<br>)<br>    **Defendants.** ) | Civil Action No. 04-230-ERIE<br><br>Judge Maurice B. Cohill, Jr.<br>Mag. Judge Susan P. Baxter |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL UNDISPUTED FACTS

AND NOW, come the defendants, Superintendent William Wolfe, Steve Reilly, Denise Bunner (incorrectly identified as Denese Brunner), Unit Manager Rod Showers, Case Mgr.—GECAC Judy Jackson, Jeffrey Beard, Assistant to the Superintendent William Barr, and Marilyn Brooks (incorrectly identified as "Mariland") by their attorneys, Thomas W. Corbett, Jr., Attorney General, Mary Lynch Friedline, Senior Deputy Attorney General, and Susan J. Forney, Chief Deputy Attorney General, Chief Litigation Section, and respectfully submit the following Response to Plaintiff's Counterstatement of Undisputed Material Facts in accordance with Local Rule 56.1:

**Objection**: Defendants object to plaintiff's statement to the extent that the paragraphs set forth unsupported allegations and legal conclusions, not facts. Without waiver of this objection, defendants respond as follows:

1.      Denied.  There is no evidence in plaintiff's DC-15 or counselor files that DeFranco was formally staffed for Z code at SCIP. (Deft. Exh. 18 – Skendall Declaration, ¶ 4.)

2.      Denied.  Plaintiff admitted that he arrived at Albion on October 20, 1999 and was housed in general population with a cellmate. (Defendants' Counterstatement ¶ 11, 14 – Doc. 202 and 207.)  He was not assigned z-code status until February 7, 2000, over three months later. (See Defts' Exh. # 3, Doc. #204.)[1]

The record does not establish that the z-code status conferred on February 7, 2000 was "medically needed" or in any way intended to be permanent.  Nor does it establish that evidence of high stress automatically meets Z code criteria.  Psychologist Reilly simply stated on the February 7, 2000 vote sheet that Z code status was "highly recommended due to stress levels." (Deft. Exh. 3 and 17.)  As psychologist Bunner stated in response to plaintiff's interrogatories:

> The Psychology Department has some influence in the Z code vote process due to the fact that Z codes can be recommended on the basis of severe mental health symptoms **and/or severe adjustment problems demonstrated by the inmate**.

(Deft. Exh. 8, ¶6.)   Bunner then explained: "there was never any significant mental illness and/or mental health diagnosis of inmate DeFranco generated by the Psychology Department." (Id. ¶ 9.)  Indeed, while DeFranco was and is on the mental health roster (inmates who have a stability rating of "C" and a history of mental health treatment), he was not on the Psychiatric Review Team roster, which is for inmates who have a "D" mental health stability rating and possess serious mental health adjustment difficulties. (Deft. Exh. 9 ¶ 7;  Exh. 11 ¶ 10 – Reilly A/I;  Exh. 12 ¶ 8, 9 – Reilly 2nd A/I).  Above all, Dr. Polmueller, Chief Psychiatrist who met with

---

[1] Defendants' Exhibits  1 – 13 are attached to defendants'  brief in support of cross motion for summary judgment (Doc. #204, filed 8/1/06).  Defendants' Exh. 14 was attached to defendants' motion for leave to file additional exhibit – Doc. #224.  That Motion was granted on 9/13/06, Doc. #226.  Defendants' Exhibits 15-19 are attached to defendants' Brief in Opposition to Plaintiff's Cross Motion for Summary Judgment, filed simultaneously herewith.

DeFranco in April 2004 notes that characterizing DeFranco as having a serious mental illness would be questionable. (Deft. Exh. 14.)

According to Bunner, Reilly' recommendation for Z code in 2000 would have been made in order to help DeFranco to adjust to a stressful situation:

> The responding defendant would agree that an inmate suffering from high levels of stress would be given a Z code for a short period of time in order to help that individual adjust to a certain stressful situation. In Mr. DeFranco's case, if Mr. Reilly felt that he would benefit from having a Z code for a while, this defendant does not see any reason to disagree with that decision. However, policy recommends that Z codes be reviewed on a yearly basis. In accordance with policy, this defendant feels that an inmate should not consider their Z code to be permanent.

(Deft. Exh. 9, ¶9.)

Defendant Reilly echoes this. His recommendation for Z code in February 2000, just a few months after DeFranco's arrival at Albion, was a temporary recommendation. (Deft. Exh. 17 – Reilly Declaration, ¶ 4.) DeFranco appeared to be experiencing high levels of stress in connection with his life sentence and recent transfer and recommending Z code in such situations may help with the inmate's adjustment. Z code is not permanent but is subject to annual review. Id. A year later, based on DeFranco's specific request to see a psychiatrist and possibly obtain psychotropic medication, Reilly requested a psychiatric referral. (Deft. Exh. 17 - ¶ 5.) By the time of the June 2002 Z code annual review, DeFranco's records reflected medication compliance, good attendance with psychiatric appointments and no evidence of serious mental or emotional maladjustment. (Deft. Exh. 17 - ¶6; Deft. Exh. 12, ¶ 4, 5.)

3.  Denied as stated for the reasons stated in response #2 above.

4.  Denied as stated. Plaintiff admitted that he received a misconduct for the threat and that he pled guilty. (Defts' Counterstatement ¶ 12 – Doc. 202 and 207.)

5. Denied as stated. Plaintiff admitted that he pled guilty to the misconduct charge arising from the threat, and that he was placed in the RHU pending transfer. (Defts' Counterstatement ¶ 12 – Doc. 202 and 207.)

6. Admitted.

7. Admitted.

8 - 9. Denied. Defendant Showers does not recall such a conversation. (Deft. Exh. 19, ¶3 – Showers A/I 1st set.)

10. Denied. (Deft. Exh. 19, ¶5 – Showers A/I 1st set.)

11. Denied. There is nothing attached to the Amended Complaint indicating DeFranco wrote to Gates about a threat. Exhibit B to the amended complaint consists of a request form dated 5/7/02 in which DeFranco says that he would like to talk to Gates privately "regarding a couple of important matters" and that "I'm having trouble w/Mr. Showers and things he said." However, according to paragraph 54 of the amended complaint, this request to Gates "preceded" the alleged Showers threat. Nor do any of the grievances or subsequent requests during the summer of 2002 (attached to the Amended Complaint) even mention Showers.

12. Denied. The exhibit referenced by plaintiff does not address this issue.

In any event, the record does not suggest, let alone establish, that Jackson started a staffing process to "remove" plaintiff's Z code. Rather, on May 20, 2002 she sent Psychology a referral form (a DC-97) to review DeFranco's Z code on which she wrote: "Evaluate for annual Z code review **to maintain or discontinue**." (Deft. Exh. 15, Jackson Declaration - ¶ 3, 4; see also Deft. Exh. 9, ¶ 5 – Bunner A/I.) The referral was then completed by Ms. Eichenlaub and returned to Jackson. (Deft. Exh. 15 - ¶ 5,6.; Deft Exh. 17 – Reilly Dec. ¶ 9.))

4

The referral form without redaction is attached to Jackson's Declaration (Exh. 15) because plaintiff now claims he never met with Ms. Eichenlaub (the psychologist) in 2002, and that Jackson, not the psychologist, wrote the comment about him being condescending. DeFranco is wrong. The referral reflects Eichenlaub's interview with DeFranco on 5/29/02 and the comments by the psychologist (not by Jackson). In particular, under the heading "To be completed by Psychology Department" Eichenlaub wrote:

> Panic Disorder – doing time for murder. States his family is the Doctor DeFranco family – also reports that Mr. Reilly guaranteed him he would never loose [sic] his Z-code. Condescending – his medications should be addressing his needs for his panic disorder. Circulate Vote sheet to determine continued need for Z-code.

(Exh. 15.) Eichenlaub also indicates an interview on 5/29/02 and psychological report on 6/21/02, but no psychiatric referral. Id.

13.    Denied – defendants' response to ¶12 is incorporated herein. As stated in response to ¶12, this comment was made by Psychologist Eichenlaub, not by Jackson.

14.    Denied as stated. While Jackson is not a doctor, she did not "make medical opinions" when she sent the referral form to the Psychology Department.

15.    Denied. Defendants incorporate herein their response to ¶12. The DC-97 Form attached to Exh. 15 clearly reflects that Ms. Eichenlaub interviewed DeFranco on 5/29/02.

16.    Denied. Defendants incorporate herein their response to ¶12 and 15.

17.    Denied. This "statement" is objected to since it is clear from plaintiff's exhibit B that he improperly submitted a hypothetical request to Unit Manager Skendall for purposes of obtaining statements that should have been sought through discovery and directed to undersigned counsel. As such, this exhibit is improper and should be stricken.

Without waiving this objection, the request is an inaccuate hypothetical about staffing "shortly after moving to the new unit." DeFranco was staffed on June 24, 2002, **over two months after coming to his new unit** from the RHU. Further, Skendall states "that's normally how it's done" but then cautions "there <u>could</u> be exceptions, due to circumstances." (Pltf. Exh. B.)

Furthermore, plaintiff ignores the answers to this question that he sought and received through the discovery process. In response to a similar question (whether it's normal procedure when an inmate is moved to a new unit for the new unit to defer the staffing process to the old unit), defendants Showers and Jackson both said "No." According to Showers: "There is no requirement as to the length of time an inmate is on a unit for staffing. J-Unit had sufficient experience with this inmate, as well as access to relevant records, to make staffing recommendations.) (Plt. Exh. A, ¶1, 2 – Showers A/I 3rd Set.) Jackson responded clearly that the current housing Unit Counselor process the paperwork. (Deft. Exh. 16, ¶ 1, 2 – Jackson A/I 3rd Set.)

18. Denied. Defendants Jackson and Showers were not under any obligation to "defer" staffing decisions to plaintiff's prior housing unit for the reasons stated in response to paragraph 17 above. Plaintiff was on their unit for more than two months before the staffing occurred on June 24, 2002.

19. Denied. This is not a fact but plaintiff's own unfounded assumption or conclusion. In any event, Defendants incorporate their responses to paragraphs 17 and 18.

20. Denied as stated. Defendants incorporate herein their response to ¶ 2 and 3.

21. Denied as stated. Defendants incorporate herein their response to ¶ 2 and 3.

22. Denied. Plaintiff misstates Jackson's comments on the June 24, 2002 vote sheet. She said said that high levels of stress did not meet Z code criteria and referenced the psychology evaluation, where Ms. Eichenlaub noted that DeFranco's medications should be addressing his needs for his panic disorder. In addition, Eichenlaub voted "no" in the staffing, noting that plaintiff "does not meet Z code criteria." (Deft. Exh. 3.)

23. Denied. Plaintiff misstates Jackson's comments on the June 24, 2002 vote sheet. She notes only that plaintiff "manipulated Albion staff upon his arrival." (Deft. Exh. 3.)

24. Denied. This is not a fact, but a conclusion or argument by plaintiff.

25. Denied. Defendants incorporate herein their response to ¶ 2 and 3, including Deft. Exh. 17 in which Chief Psychologist Reilly explained that high stress levels can (and did) support a recommendation for Z code on a temporary basis, in order to help an inmate adjust. By way of further response, defendants incorporate herein their Brief in support of motion for summary judgment and supporting exhibits, including Exh. 10 – Skendall Declaration.

26. Denied as stated. Defendant Showers wrote: "No need for Z code. Manipulative. Psych. Rep. indicates medication is appropriate to handle psych. needs.) (Deft. Exh. 3.)

27. Denied as stated. Defendant Showers wrote: "No need for Z code. Manipulative. Psych. Rep. indicates medication is appropriate to handle psych. needs.) (Deft. Exh. 3.)

28. Denied as stated. While Showers is not a doctor, he was not rendering any medical opinion but referring to the Psychology report.

29. Denied. This is not a fact but a conclusion or argument by plaintiff and plaintiff cites to no evidence in the record to support such a conclusion.

30.     Denied as stated. While Ms. Eichenlaub, a licensed Psychologist, is not a medical doctor, she is qualified to evaluate and draw conclusions about plaintiff's claimed panic disorder and the medication's effect in that regard.

31.     Denied. This is not a fact but a conclusion or argument by plaintiff.

32.     Denied. Plaintiff did not have a "medical" Z-code for the reasons stated in response to paragraphs 2 and 3 (which are incorporated herein.) There has never been a Z code recommendation by medical. (See Deft. Exh. 7 – Baker Declaration; and Dr. Lindemuth Testimony referenced at Defts' Counterstatement of Facts, ¶¶41 - 43, Doc. # 202.)

33.     Denied as stated. While medical doctors do not formally vote in annual Z code reviews, the opinions and recommendations of medical staff are considered in the Z code staffing process. (See Defts' Counterstatement of Undisputed Material Facts, ¶¶48, 49, 50 – Doc. #202, and defendants' Exhibits cited therein.)

34.     Denied as stated. Plaintiff's misconduct record indicates he was returned to the RHU on July 11, 2002. (Deft. Response to 2nd Request for Production.)

35.     Admitted for purposes of this motion.

36.     Admitted for purposes of this motion.

37.     Denied as stated. It is admitted that Exhibit K appears to be a notarized form used for grievances. However, this grievance was never submitted to SCI-Albion as it has no grievance number assigned, and SCI-Albion has no record of receiving that grievance. (Deft. Exh. 13.)

38.     Denied. The exhibit cited by plaintiff appears to be 2003 or 2004 cellmate statements, not notices to defendants. Further, DeFranco did not have a "medical need" for a Z

code for the reasons set forth in the responses to paragraphs 2 and 3, which are incorporated herein. It is admitted that he constantly advised prison staff of his desire and wish for a Z code.

39. Denied as stated, inasmuch as Dr. Lindemuth explained her reasoning for her recommendation (to provide supportive therapy for plaintiff because his insistence on the Z code had become a stumbling block in his treatment). (Defts' Counterstatement ¶¶42 – 43, citing 12/17/04 Lindemuth Test. at 10-12, 51-52.)

40. Denied. No particular action was mandated by the memo and in any event, DeFranco continued to treat with the psychiatrist, and had several counseling sessions with psychology in which he refused any attempts at alternate forms of stress release. (Deft. Exh. 8, ¶ 10, 14 – Bunner A/I.) Defendant Barr also indicated that the memo would have been taken into consideration, along with numerous other factors that play a part in the Z code review. (10/22/04 Hrg. Tr. 5.)

By way of further response, it is noteworthy that the 9/23/02 Lindemuth memo does not mention stress or medical need. Rather, Lindemuth reported that DeFranco is "plagued by bitterness and resentment, consumed by the probablility of spending the rest of his life in prison," and then notes that DeFranco "asserts that his frustration tolerance has reached its limit" and that in his view, contending with a cell mate "will only serve to fuel his brewing anger and agitation." She states that the likely result is erupting in an explosive rage.

41. Denied as stated. Defendant Wolfe does not recall such a conversation which, according to plaintiff's own affidavit covered multiple topics and grievances. Further, the exhibit cited by plaintiff does not mention Reilly.

42. Denied as stated. Defendant's Exhibit 10, cited by plaintiff, does not address this. In any event, Dr. Baker explained the prescriptions in his prior Declaration (Deft. Exh. 7.)

9

43. Denied. This is not a fact but a conclusion or argument by plaintiff. Dr. Baker's prior Declaration (Deft. Exh. 7) explains the reasoning for the medications which had nothing to do with double celling

44. Denied. This is not a fact but a conclusion or argument by plaintiff.

45. Denied. This is not a fact but a conclusion or argument by plaintiff. Dr. Baker's prior Declaration (Deft. Exh. 7) explains the reasoning for the medications.  In addition, plaintiff's brother, an obstetrician who does not have access to plaintiff's medical record, is not qualified to offer an opinion about plaintiff's alleged heart condition (as he seeks to do in Pltf. Exh. E). Further, during the 12/17/04 hearing, RN Rebele made it clear that plaintiff's nitroglycerin prescriptions and intake had not increased over time while double celled, but had **decreased**. (12/17/04 Hrg. Tr. at 54-57.) According to his medical chart, DeFranco had only sought one refill of nitroglycerin in the ten months between November 2003 and September 2004. Id.

46. Denied. As stated by Dr. Baker (Deft. Exh. 7), plaintiff experiences nontypical angina pectoritis, not actual cardiac chest pain.

47. Denied as stated. Dr. Polmueller transcribed his notes in his declaration submitted as Exh. 14 to defendants' cross motion for summary judgment.

48. Denied as stated. Dr. Polmueller transcribed his notes and explained his conclusions in his declaration submitted as Exh. 14 to defendants' cross motion for summary judgment.

49. Denied as stated. Dr. Polmueller transcribed his notes and explained his conclusions in his declaration submitted as Exh. 14 to defendants' cross motion for summary judgment.

50. Denied. This is not a fact but a conclusion or argument by plaintiff.

51. Denied as stated. Dr. Polmueller transcribed his notes and explained his conclusions in his declaration submitted as Exh. 14 to defendants' cross motion for summary judgment.

52. Denied as stated. Dr. Polmueller transcribed his notes and explained his conclusions in his declaration submitted as Exh. 14 to defendants' cross motion for summary judgment.

53. Denied as stated. Dr. Polmueller transcribed his notes and explained his conclusions in his declaration submitted as Exh. 14 to defendants' cross motion for summary judgment.

54. Denied as stated. The 1986 report from Pizzat speaks for itself.

55. Denied for the reasons stated by Dr. Polmueller and John Skendall, among others. (Deft. Exh. 10, 14.)

56. Denied. This is not a fact but a conclusion or argument by plaintiff which is unsupported in the record. Moreover, the evidence of record, Dr. Polmueller's declaration, establishes that a psychiatric recommendation for single cell status should be based upon an inmate's demonstration of dangerous behavior (or expectation of such) resulting from a "serious mental illness." (Deft. Exh. 14, ¶3e.) He further stated that any attempt to characterize DeFranco's presentation as a serious mental illness would be questionable. (Deft. Exh. 14, ¶3f.)

57. Denied, for the reasons stated in Dr. Baker's Declaration (Deft. Exh. 7.)

58. Denied, as Dr. Lindemuth's testimony speaks for itself.

59. Admitted.

60. Denied. There was no "medical" Z code for the reasons stated in response to paragraphs 2 and 3, which are incorporated herein. The Smithfield vote sheet dated 4/18/05 reflects stated reasons by some staff and more importantly, references the Court's 2004 ruling on plaintiff's TRO which mandated Z code status. According to the 4/18/05 vote sheet, DeFranco advised staff that Z code "was ordered by the Court to be assigned to him." However, he failed to advise Smithfield staff of this Court's subsequent January 18, 2005 R&R denying the preliminary injunction and the District Court's order adopting the R&R, neither of which were in the file.

61. Denied. Since November 2004 (when plaintiff received a Z-code pursuant to the Court's TRO decision), plaintiff has remained single-celled while the matter was on appeal and the litigation continued, and has continued to be prescribed Nitroglycerin and Lopressor, in addition to various anti-anxiety and other psychotropic medications for panic and anxiety. (Deft. Exh. 7.)

62. Denied, for the reasons stated in Dr. Baker's Declaration (Deft. Exh. 7.) Also, the record establishes that DeFranco was experiencing nontypical angina for years before he started taking nitroglycerin (and while single-celled.) For example, Dr. Lindemuth testified that when she first started seeing DeFranco in the early part of 2001 (while he was on Z-code and single celled), DeFranco described having episodes where he experienced overwhelming fear, shortness of breath, heart palpitations, chest tightness, tingling, sweating – symptoms that would climax and occur 1 to 2 times per week. He felt like he was experiencing a heart attack and supposedly ended up in the ER. (12/17/04 Hrg. Tr. 57-58.) At that time, she started him on Valium. (Id., at 57.)

63. Denied. This is not a fact but a conclusion or argument by plaintiff which is unsupported in the record. (See Defendants' Counterstatement of Undisputed Facts, ¶¶ 46-52.) Defendants also incorporate their response to paragraphs 2 and 3.

64. Denied, for the reasons stated in response to ¶30, which is incorporated herein.

65. Admitted only that Exh. 11 is a declaration purportedly signed by inmate April.

66. Denied as stated. As reflected in the public record in the April case (No. 06-68), inmate April had severe blockage and had just received a stent when Dr. Baker recommended a temporary Z code. It is improper to attempt to compare the medical condition of inmate April and treatment decisions concerning him with the condition of and decisions relating to plaintiff, particular since plaintiff does not have such a heart condition. (Deft. Exh. 7 – Dr. Baker Declaration.)

67. This "statement" is objected to since it is clear from plaintiff's exhibit L that he improperly submitted inmate "request to staff" submissions to various corrections staff during the past one or two months for purposes of obtaining statements that should have been sought through discovery and directed to undersigned counsel. As such, this exhibit is improper and should be stricken. Without waiving this objection, the statement is denied. These comments were not elicited in the context of a Z code staffing where the voters have access to and can review appropriate documentation and information concerning the inmate.

        Respectfully submitted:

        Thomas W. Corbett, Jr.
        Attorney General

By:   /s/ Mary Lynch Friedline_____
      MARY LYNCH FRIEDLINE
      Senior Deputy Attorney General

                                                                     Attorney I.D. No. 47046  
                                                                      Susan J. Forney  
                                                                      Chief Deputy Attorney General  
                                                                       Litigation Section

Office of Attorney General  
6th Fl., Manor Complex  
564 Forbes Avenue  
Pittsburgh, PA  15219  
Date:   November 15, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2006, I electronically filed the foregoing *Response to Plaintiff's Counterstatement of Material Undisputed Facts* with the Clerk of Court using the CM/ECF system.  This document will be mailed via U.S. mail to the following non CM/ECF participants:

Anthony DeFranco, CZ-3518
SCI-Albion
10745 Route 18
Albion, PA 16475-0001

                                                   By:    /s/  Mary Lynch Friedline
                                                                     MARY LYNCH FRIEDLINE
                                                                     Senior Deputy Attorney General

Office of Attorney General
564 Forbes Avenue
Manor Complex
Pittsburgh, PA 15219