**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

FILED

| | | |
|---|---|---|
| **ANTHONY DeFRANCO,** | : | |
| **Plaintiff,** | : **No. C.A. 04-230-E** | '06 NOV 20 A11 :29 |
| | : **Magistrate Judge Baxter** | |
| **V.** | : **District Judge Cohill** | CLERK |
| | : | U.S. DISTRICT COURT |
| **WILLIAM WOLFE, et al.,** | : | |
| **Defendants.** | : | |

SCANNED

## PLAINTIFF'S MOTION FOR RELEASE OF HIS PSYCHOLOGICAL FILES

AND NOW, comes plaintiff, who brings forth the following Motion for an Order

directing the defendants' to release to him his psychological files, at his own expense, and in

support avers:

1.  During discovery, the defendants' allowed plaintiff to inspect his medical files,

including his psychological/psychiatric files, which was admitted during the April 13, 2006

hearing before this Court (See Trans., 4/13/06).

2.  Plaintiff was instructed to 'tab' any documents he wanted and they would be sent to

the Attorney General's Office for inspection, recopying and approval. This was completed

however, the defendants' were attempting to block plaintiff's access to these files by adding a

"search and retrieval fee" that he could not afford.

3.  In a letter dated April 19, 2006, Attorney Friedline objected to releasing all of

plaintiff's psychological files stating that the information could be used to manipulate his

treatment, etc. However, this is an exaggerated excuse to deny plaintiff relevant discovery.

Since plaintiff does recall what most of the medical notes state, having the actual notes do not

1

pose any heightened risk to anyone or anything. It serves nothing but blocking relevant, needed medical notes that clearly help plaintiff.

4. Plaintiff agrees to paying for these psychological/psychiatric files at his own expense. Plaintiff has a prison "copying card" that he can use that would cost him the normal .10 cents per page copying fee.

5. As stated in plaintiff's recent motion for extension of time, his family and himself are currently in contact with a number of medical professionals who are reviewing plaintiff's history and these records/notes being held by the defendants' counsel are needed, and will only serve to help these doctors in giving a better opinion. Plaintiff's medical proffesionals should not be denied the opportunity to review further, indeed, important medical records.

6. While the defendants' use the excuse that these notes could effect plaintiff's treatment, such is an excuse designed to deny him relevant and needed discovery. In a similar case, an inmate was given his complete psychological/psychiatric files at SCI Albion, regarding a civil rights lawsuit involving the DOC. That inmate is Ryan Kerwin. See Exhibit "A", a redacted part of Kerwin's psychological files with attached affidavit giving plaintiff permission to redisclose same to this Court. There is absolutely nothing in DOC policy or the law which prohibits an inmate from reviewing his own mental health records; contrary to what the defendants' want this Court to believe.

7. Plaintiff submits that he recalls 99% of what his psychiatric files stated and it has not caused any effect on his treatment. Further, because plaintiff has actually reviewed these exact documents there is absolutely no harm in their being released to him so that he can attach relevant parts for this Court to review in summary judgment. Also contained in the defendants' Motion for Summary Judgment (Ex. "9", ¶ 6) are defendant Bunner's answers where she states

to chronologically list all of the psychiatrists who saw and documented notes on plaintiff.

However, Bunner purposely left out Dr. Bauer's notes which reflect a diagnoses of paranoia and

other illness, and Dr. Simora, who gave a diagnoses of schizophrenia (attached, Ex."B",

Attorney friedline's letter, where she even references notes by Dr. Bauer, at ¶ 4).  This is all very

relevant to this case and summary judgment.  Moreover, how could Dr. Lindemuth's "memo" to

the z-code committee not be relevant or discoverable by plaintiff?  It was denied by the

defendants, referenced by Attorney Friedline in her letter (attached, Ex. "B", ¶ 7).

8.  Plaintiff needs these files as he and his family are in touch with numerous medical

professionals who are giving medical opinions and these files bear directly on the matter.  See

Exhibit "B", letter from Attorney Friedline detailing the files being withheld.

9.  Notably, attached hereto and marked Exhibit "C" is District Judge Caldwell's

November 9, 2006 Order, in which he specifically Orders that inmate Kerwin be given access to

his medical files and that there not be any retrieval fee, and further states that he will only be

charged .10 cents per page (See, Ex. "C", page 5-6).  Judge Caldwell is a District Court Judge for

the Middle District of Pennsylvania.  Before this Court is a motion for the release of plaintiff's

files, asking for the exact same documents and costs as the District Court in the Kerwin case has

Ordered.  Also, the present motion requesting the release of plaintiff's mental health records.

Judge Caldwell specifically Ordered the DOC (defendants) to release to Kerwin his **mental

health records**.  There is no policy or law prohibiting access to one's mental health files (show

by Judge Caldwell's Order, attached).  Moreover, even this Court and the DOC allowed plaintiff

to view some of his mental health records during the TRO hearing held on 10/22/04 (See, trans.).

Of course the defendants' will argue disclosure would hurt plaintiff's treatment, however, that

would be at best an unsupported, exaggerated excuse because these mental health notes help

plaintiff's case. Their argument that mental health records are "off limits" to inmates' are untrue and certainly contradicted by the Order of Judge Caldwell, ordering the release of all mental health records to Kerwin. These mental health records are extremely relevant and needed by plaintiff to file with this Court in support of summary judgment response; further, these records are needed and material to plaintiff's case, and for his medical professionals to review. Based upon all of the information and record of this case, it is asked that this Court issue an Order consistent with that of Judge Caldwell, requiring the defendants to release his requested and copied files at the same rate of .10 cents per page; the copies would be paid for at plaintiff's **own expense**. Minus the unfair retrieval fees.

10. Plaintiff agress to payment of his records, at his own expense, at the normal rate of .10 cents per page. As stated, these records are extremely relevant and help his case and he should be permitted to include them with his Response to summary judgment for this Court's consideration. Plaintiff has persistently objected to the cost of his medical records and even argued before this Court during the April 13, 2006 hearing. Plaintiff is not requesting "free" copies, only fair copying charges as indicated in the Kerwin case Ordered by District Judge Caldwell.

11. Contrary to defendants' beliefs, plaintiff *does* have the right to review his own medical/psychiatric files; it are the defendants' who have had UNLAWFUL and NON-CONSENTED to access to plaintiff's private mental health records. Which plaintiff objected to back on April 13, 2006, during a hearing before this Court.

12. If this Court is inclined to deny plaintiff's request and state that District Judge Caldwell is wrong in his ruling in the Kerwin case, plaintiff asks permission to Certify this question and take an interlocatory appeal to the Third Circuit.

WHEREFORE, based upon the foregoing, and in the fair administration of justice,

plaintiff prays this Honorable Court issue an Order directing the defendants' to turn over the

copies of his psychological/psychiatric files copied previously by the defendants', at his own

expense, at .10 cents per page.

Date: 11/15/06

Respectfully submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**

Service of the foregoing was made by
US First Class Mail to the Attorney General
at 564 Forbes Ave., Pgh. Pa., this date.