IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,  :
    Plaintiff,  : No. C.A. 04-230-E
  : Magistrate Judge Baxter
V.  : District Judge Cohill
  :
WILLIAM WOLFE, et al.,  :
    Defendants.  :

FILED
'06 NOV 22 AM 11:15
CLERK
U.S. DISTRICT COURT

### PLAINTIFF'S SUPPLEMENTAL MOTION FOR RELEASE OF HIS PSYCHOLOGICAL FILES

AND NOW, comes plaintiff, who brings forth the following Supplemental Motion for an Order directing the defendants' to release to him his psychological files, at his own expense, and in support avers:

1. Plaintiff has filed a Motion For Release of his Psychological Files dated November 15, 2006.

2. This date plaintiff has received the defendants' Motion in Response to a previously filed motion requesting his copied files.

3. Due to the fact that these motions are all closely related, and because the defendants' have once again misrepresented the truth to this Court, plaintiff files this supplemental motion.

4. The thrust of plaintiff's argument is that he should be given the copies of this psychological files at the normal rate of .10 cents per page. It is further plaintiff's assertion that there is nothing in the DOC policy nor the law that prohibits an inmate from reviewing and copying his mental health files for litigation use. As this Court is aware, in the defendants' Response, they attached the complete DOC policy regarding inmates' access to their medical files (including mental health). Nothing in this policy states that mental health records are

1

inaccessible to inmates'. (See defendants' Response, Doc. 243, Ex. "A") Furthermore, the DOC policy cites to 42 Pa. C.S. § 6152, which deals with production via a subponea duces tecum, not a request for production of documents while the DOC are the actual defendants'.

5. How could the defendants' argue that they have (unconsented) access to plaintiff's mental health files and then argue plaintiff should be barred from having them? It makes no sense. Further, no place in their argument or the policy does it state plaintiff does not have access to his mental health records. Ironically, the policy alludes to the fact that an inmate *can* access his own mental health records (Doc. 243, Ex. "A", page 5) by simply sending staff a request slip.

6. Interestingly, the defendants' claim in footnote 1 that Doctor Lindemuth provided access to his mental health records. Such is a patently false statement. It was the defendants' and this Court that granted plaintiff partial access to his mental health files. Specifically, during the October 22, 2004 TRO hearing before this Court, SCI Albion's Health Care Administrator testifed regarding notes written by psychiatrist Lindemuth and Polmueller. When the Health Care Administrator claimed not to be able to read the psychiatrist's notes, this Court and the defendants' allowed plaintiff to review parts of his mental health files and the defendants **admitted** plaintiff can see mental health records:

> Mr. DeFranco: Your Honor, if I may, can I look at that? It's sitting in front of me. Can I read that to see if I can see what it says?
>
> The Court: He's allowed to look at his records, isn't he?
>
> Ms. Revley: **Yes, he is**. Anothter thing that I would like to add, though, Your Honor, is that the only time that Mr. Defranco talks about his anger is when he is with Dr. Lindemuth. He does not address it at any of the semiannual medication reviews with his treating medical physician. Their notes always indicate that he's doing well and he has voiced no complaints.

(See, Doc.# 14, Trans. 10/22/04, page 20). It is clear that plaintiff is allowed to review his

mental health records, as clearly stated by Ms. Revley, the Health Care Administrator. Because these records clearly help plaintiff, the defendants' are attempting to perpetrate further fraud upon this Court in order to deny him relevant, *material* information that will not only aid the Court in deciding summary judgment, but will also aid plaintiff's medical professionals in their opinions regarding his over-all health. After all, it has been the defendants' who have submitted false, forged and fraudulent documents in this case, i.e. forged transfer petitions; false declarations; fraudulent statements about plaintiff's misuse with other discovery in order to prevent him from receiving other discovery.

7. Contained inside defendants' Response (Doc. 243) to deny the release of his copied files, they claim that another inmate (Ryan Kerwin) was still "manipulating", trying to receive his medical records for "free" (*Id.* page 2, ¶ 5). They also had Deputy Chief Counsel Fairwell, for the DOC sign a declaration, stating this (*Id.* Ex. "C"). These arguments were all made on November 14, 2006. However, attached hereto, marked Exhibit "A" is the DOC receipt showing that Kerwin had actually paid for his records back on October 27, 2006. This goes to show this Court that these defendants' will lie, mislead and shade the truth in order to make all inmates who litigate appear "bad" (or, the word they love to use, "manipulative"). But it is the defendants' who are the ones filing these false and misleading pleadings and declarations.

8. Shockingly, the defendants in their Motion in Response, claim that they made a "strategic" decision to give inmate Kerwin his medical files at .10 cents per page, and even went so far as to have the DOC attorney sign a declaration to this *fact* when this Court knows that these defendants were ORDERED to do this by District Judge Caldwell. While the defendants may have made a prior agreement to this, they were ultimately Order to provide these by the Court. The defendants' actually wanted this Court to believe that *they* made that decision on

their own when Judge Caldwell **Ordered** them to make it (See plaintiff's Motion to Release Psychological Files (Doc. 244), Ex. "C", Order of Judge Caldwell).

9. Clearly the defendants' can argue that giving plaintiff his mental health records *could* impact his treatment, as that has been their theme throughout litigation, but clearly that is nonsense given the fact that 1). plaintiff has already reviewed his mental health files, 2). there is no law or policy stating it cannot be done, and 3). District Judge Caldwell's recent Order directing the defendants' to allow inmate Kerwin not only to view his mental health records but that he can copy them. These mental health records are *material* to this case and plaintiff should be permitted to submit them to this Court for consideration in summary judgment, and also be able to allow his medical professionals to review them. Any argument that the release of plaintiff's own mental health records (that he has already reviewed) would be made solely for the purpose of stopping him from meaningfully litigating his case. Further, unless the Court appoints counsel, plaintiff's mental health records are at issue in this lawsuit and his files are absolutely needed as evidence to support his claims. How can he effectively demonstrate the harm without giving him the evidence of his own mental health files? The defendants are accessing his files at free will. There are "notes" written by other psychiatrists that support plaintiff's z-code status located in his files. That is material for this Court's consideration.

10. Plaintiff has made objections back in April, May 2006 over the costs of his medical files. This is noted by the simple fact that he refused to sign a cash slip for these documents, and his argument before this Court on April 13, 2006 regarding his files. He therefore thought it would have to be addressed in a later appeal to the Third Circuit. As this Court knows, this has been an issue since at least April 2006. Until the defendants' filed their summary judgment motion producing parts of plaintiff's medical files and their motion for extension of time where

they state they are in the process of receiving more declarations from "medical professionals", plaintiff was made more aware of the absolute need of his medical files that have been copied and being held by the defendants. The simple and fairest resolution to this matter would be to release his mental health files, **at his own expense** (of .10 cents per page), that way he is paying for the material at a fair cost and not being further prejudiced by the defendants access to his private medical files and not allowing him the same access.

    WHEREFORE, based upon the foregoing, and in the fair administration of justice, plaintiff prays this Honorable Court issue an Order directing the defendants' to turn over the copies of his psychological/psychiatric files copied previously by the defendants', at his own expense, at .10 cents per page.

Date: November 17, 2006

Respectfully submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**

Service of the foregoing was made by
US First Class Mail to the Attorney General
at 564 Forbes Ave., Pgh. Pa., this date.

# GENERAL INVOICE

**Ryan Kerwin DZ 0246**
**SCI ALBION**

| VENDOR FIN OR SS | | |
|---|---|---|
| Commonwealth of Pa. | INVOICE # | INVDZ0246061027 |
| 10745 Route 18 | DATE | 27-Oct-06 |
| Albion, PA 16475-0001 | ORDER # | |
| | V.T. OR ADV ACCT # | |

| DATE OF TRANSACTION | ITEMS AND DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 27 Oct 06 | To charge inmate Kerwin for medical records | | | | |
| | Search and Retrieval of Records: | 0 | | $15.00 | $0.00 |
| | Copy charges    Pages 1 | 0 | | $1.00 | $0.00 |
| | Pages 2-517 | 19 | | $0.10 | $1.90 |
| | Postage | 1 | | $0.00 | $0.00 |
| | | | | $ - | $0.00 |

| EXPENDITURE SYMBOL | | | | | | | |
|---|---|---|---|---|---|---|---|
| FUND | DEPT | APP | YR | LDG | ORG | COST FCT | OBJ |
| 001 | 011 | 103 | 06 | 1 | 1200 | 22000 | 385 |
| 001 | 011 | 103 | 06 | 1 | 1200 | 22000 | 330 |

TOTAL  $1.90

I CERTIFY THAT THE ABOVE EXPENSES, SERVICES, MATERIALS OR PRODUCTS WERE ACTUALLY INCURRED, RENDERED OR FURNISHED FOR THE USE OF THE COMMONWEALTH OF PENNSYLVANIA, AND THAT THE ABOVE PRICES CHARGED WERE FAIR AND REASONABLE.

Brad Ropey
SIGNATURE

SIGNATURE

GENINV/inmate

1. TREASURY    2. COMPTROLLER    3. PAYEE

**EXHIBIT "A"**