EXHIBIT "AA"

Case 1:04-cv-00230-MBC    Document 254-2    Filed 12/06/2006    Page 1 of 14

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>Ms. Webb Unit Counselor | 2. Date:<br>10/24/04 |
| 3. By: (Print Inmate Name and Number)<br>ANTHONY DeFranco CZ-3518<br>*Anthony DeFranco*<br>Inmate Signature | 4. Counselor's Name<br>Ms. Webb<br>5. Unit Manager's Name<br>Mr. Skendall |
| 6. Work Assignment<br>law library | 7. Housing Assignment<br>D/A 57 |

8. Subject: State your request completely but briefly. Give details.

Dear Ms. Webb,

I am writing to ask if the staffing done on me in March of 2004 was my "annual review" or was this done for special reasons?

Also, could you give me a copy of my last annual review and advise me as to which month my annual review is in?

Thank-you

9. Response: (This Section for Staff Response Only)

Your annual review month is January. The staffing in March was because you requested a Z-code. Attached is your CF

To DC-14 CAR only ☐    To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / K Webb   Date 10-25-04
                    Print              Sign

Revised July 2000                **EXHIBIT "AA"**

# EXHIBIT "BB"

Ψ         DECLARATION OF RICHARD J. DeFRANCO, M.D.         Ψ

I, Richard J. DeFranco, M.D., make the following Declaration under penalty of perjury:

As I understand, the Asst. Attorney General has named my August 12, 2006 Report on Anthony DeFranco as a "letter". This Report should be considered by the Court as a true and accurate Declaration. While it is true that I am related to Anthony DeFranco, I still have an ethical duty to give true and accurate statements about his or anyones medical state.

During the years of his incarceration I have had extensive conversations with the different medical personnel involved in his care. For example, while he was housed at SCI Pittsburgh, I was in touch regularly with the Medical Director there, a Doctor Noel. SCI Pittsburgh provided me with Anthony's complete medical history and even forwarded test results and other information on him. After his transfer to SCI Albion, I had been in contact with a Steve Reilly (psychologist) and had conversations with him about Anthony DeFranco. Mr. Reilly conveyed to me that he agreed (after seeing Anthony) that he needed to be Z-Coded.

Most recently, in January 2005, I had converstaions with Anthony's psychiatrists; Dr. Angela Lindemuth spoke with me on a number of occassions and advised me of his medical and psychiatric state. She had his medical chart at that time. Also, when he was moved to SCI Smithfield, I had spoken with the psychiatrist there regarding his care, and this psychiatrist also had his medical chart. I have been made well aware of his treatment and different conditions through-out the years by his treating physicians. In Addition to the treating physicians informing me, I was made aware of his prescriptions by Anthony DeFranco sending me Xeroxed copies of the medications prescribed (see attached copy for example). So, in addition to receiving information directly from his different treating physicians, I had also received copies of his different medications that were prescribed. I had also attended the Hearing held in this matter on December 17, 2004, and heard all of the medical testimony. I am therefore more than qualified to render a true, correct and accurate medical opinion in this case.

As I understand, Steve Reilly, Psychologist, has provided an affidavit stating that the Z-Code prescribed to Anthony DeFranco in 2000 was not a 'medical Z-Code' and that it was not a medical necessity. I respectfully disagree. First, I personally spoke with Mr. Reilly and it was my specific understanding from our conversation that Anthony medically required this Z-Code. Second, high levels of stress is a serious medical condition in and of itself. It can trigger depression and worsen symtoms of other mental health disorders. When a person is under stress, their body reacts with a cascade of biological responses that begins in small, grape-sized area of the brain called the hypothalamus. Often referred to as the master gland, the hypothalamus produces many different hormones that tell other glands to jump into

action or just quite down. The hypothalamus communitcates to a persons nervous system to signal the adrenal glands to release adrenaline (epinephrine), a brain messenger that increases alertness and energy and enables a person to respond quickly to stress. The hypothalamus also tells a neighboring gland called the pituitary to signal the adrenal glands to release stress hormones (such as cortisol) to enable the body to defend itself. However, over time, if the person is under constant stress, these stress-related chemicals (designed to help protect the person from harm) can actually turn on the persons body and severally damage it. Which includes the brain, heart, hair, digestive tract, bones, skin, mouth, lungs, bladder, reproductive organs, muscles and immune system. So stress is a serious medical condition that is obviously adverse to Anthony DeFranco's medical state. It is established that being double celled constitutes a condition that physically and mentally harms him.

The Court should further be aware of the following facts: Anthony DeFranco has never required Nitroglycerin, Aspirin and Lopressor for his heart condition until _after_ he was forced to double cell. As I undertand the legal argument, it is being stated that his Nitroglycerin intake had decreased while in a double cell. That is a false statement. He was not prescribed these medications until _after_ he was double celled.

Also, I have read the Answer to Interrogatories by psychologist Bunner; Ms. Bunner chronicled Anthony DeFranco's psychiatric diagnoses, which included Mixed Personality Disorder with Features of Borderline and Paranoid; Panic Disorder and a Delusional Disorder. All of these diagnoses represent a severe mental illness.

As I understand, a Ms. Eichenluab, a purported psychologist, made a suggestion or statement that Anthony DeFranco's medication "should be" handling his psychiatric troubles without consulting his treating psychiatrist. A psychologist cannot prescribe medication and should not render an independent conclusion regarding whether medication is "handling" a psychiatric disorder without conferring with a medical doctor.

As stated in my August 12, 2006 Report, forcing Anthony DeFranco to double cell, with a reasonable degree of medical certainty, has caused irreparable harm to his pre-existing heart condition.

By: _/s/ R.J. DeFranco, MD_
Richard J. DeFranco, M.D.
454 West 7th Street
Erie, Pa. 16507
Telephone: (216) 906-1904

Date: 26 Nov. 2006   NOV 26 '06



Lopressor 50 mg 5

Lopressor to 25 mg 5 Lowered

**DEFRANCO/ANTHON,CZ3518**
ASPIRIN 325MG TABLET EC   QN: 30
SUB FOR ECOTRIN 325MG TAB MFG: MARLX
TAKE 1 TABLET ORALLY ONCE DAILY
RX# 09050016   DC: 04/24/05
PRESCRIBER:MAXA,ROBERT   FE
ORIG: 10/25/04   DISP: 01/2005   NDC: 10135012610
PAA-ALBION SCI   C C C P P 2

**DEFRANCO/ANTHON,CZ3518**
METOPROLOL 50MG TABLET   QN: 30
SUB FOR LOPRESSOR 50MG TAB MFG: CARAC
TAKE 1 TABLET ORALLY ONCE DAILY
RX# 09050093   DC: 04/24/05
PRESCRIBER:MAXA,ROBERT   FE
ORIG: 10/25/04   DISP: 01/2005   NDC: 57664047718
PAA-ALBION SCI   C C C P P 2

Metoprolol 25mg Tablet   QN:30   ROUND,WHITE
SUB FOR LOPRESSOR MFG: CARAC
TAKE 1 TABLET ORALLY ONCE DAILY
RX# 08054300   DC: 03/02/07
PRESCRIBER:BASHLINE,D   FE
ORIG: 08/03/06   DISP: 10/24/06   NDC: 57664050618
PAA-ALBION SCI   C C C P P 2

Initial Prescription

NO. 6060314   Dr. BAKER, MARK
CZ3518   DEFRANCO, ANTHO-CZ3518
1 TAB UNDER TONGUE EVERY 5 MINS AS NEEDED FOR
CHEST PAIN MAX 3 DOSES IF NO RELIEF CALL MD
Qty: 25   Rph:JM   Dt. Disp:06/17/03   SALB   ETHE
NITROQUICK 0.4MG TABLET S   BB580452

Refill #1

Refill #2

**DEFRANCO/ANTHON,CZ3518**
NITROQUICK 0.4MG 4X25 TAB   QN: 25
SUB FOR NITROSTAT 0.4MG 4X25 TAB MFG: ETHE
1 TAB SL AS NEEDED FOR
CHEST PAIN, REPEAT EVERY
5 MIN. UP TO 3 DOSES, IF
NO RELIEF CONTACT MD
RX# 07444924   DC: 11/10/04   4: ETH
DR BASHLINE
ORIG: 05/17/04   DISP: 06/15/04   NDC: 58177032418
PAA-ALBION SCI   C C C P P 2

Refill #3

**DEFRANCO/ANTHON,CZ3518**
NITROQUICK 0.4MG 4X25 TAB   QN: 25
SUB FOR NITROSTAT 0.4MG 4X25 TAB MFG: ETHE
1 TAB SL AS NEEDED FOR
CHEST PAIN, REPEAT EVERY
5 MIN. UP TO 3 DOSES, IF
NO RELIEF CONTACT MD
RX# 09046795   DC: 12/09/04   4: ETH
PRESCRIBER:MAXA,ROBERT   FE
ORIG: 10/25/04   DISP: 12/09/04   NDC: 58177032418
PAA-ALBION SCI   C C C P P 2

Nitroglycerin prescribed

# EXHIBIT "CC"

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO,<br>      Plaintiff, | :<br>: No. C.A. 04-230-E<br>: Magistrate Judge Baxter |
| V. | : District Judge Cohill<br>: |
| WILLIAM WOLFE, et al.,<br>      Defendants. | :<br>: |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES TO
DEFENDANT JEFFREY BEARD, SECRETARY

    In accordance with Rule 33 of the Federal Rules of Civil Procedure, plaintiff requests that defendant answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on the plaintiff within 30 days.
    If you cannot answer the following interrogatoires in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifing your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions. These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materalizes.

    1. Attached to plaintiff's complaint, as an exhibit, is a notarized letter that he had written to you regarding the severe mental and physical anguish he was experiencing in 2002-2004; also attached is the mailing receipt. Do you admit receiving this letter and what would be your response after receiving such a letter?

ANSWER:   SEE ATTACHED SHEET FOR RESPONSES.


    2. Are all of the Pennsylvania prison's ran the same way regarding the z-code of inmates and how the voting system works?

ANSWER:


    3. The prior head psychiatrist that worked for the DOC had generated two (2) separate Reports urging that plaintiff be conferred back to z-code status after it was taken away from him, the first just one month after the z-code was removed. Based upon an institution receiving such a Report by a doctor, what should have been done?

ANSWER:

1

4. Do you believe that medical doctors are better equipped to make "qualified" decisions than guards, counselors, unit managers and deputies, when it comes to rendering an opinion on whether an inmate requires a z-code due to mental health?

ANSWER:

5. In your opinion, an inmate suffering from Mixed Personalty, Borderline, Paranoid, Panic/anxiety disorder and an Anti-Social Personaltiy disorder, be medically z-code?

ANSWER:

6. How many inmates are currently z-code in Pennsylvania?

ANSWER:

7. In the year 2002, how many inmates lost their z-code in Pennsylvania?

ANSWER:

8. Prior to a preliminary injunction hearing held in this case, the treating psychiatrist testified that one of your staff summoned the doctor to a room and admonished her for writing reports on inmates; it was revealed that this employee stated that the report could set a dangerous precedent for other inmates to follow; that the court had never before ruled in an inmates favor as was done with plaintiff and that the doctor was not to write further reports on inmates. Based upon the above, do you believe that it was proper for your employee to do this and make these demands to a treating doctor, particularly just before a hearing was to be held in court?

ANSWER:

9. Your Chief Psychiatrist for the Western Region, Administrative Psychiatrsit, Eugene Pulmuller, wrote out a progress note (report) on plaintiff---this is attached hereto. Based upon this doctor working under or for you, you have a duty to seek all available information to answer this interrogatory. Please state what this progress notes specifically states; completely.

ANSWER:

10. Does a grievance coordinator of an Institution have the independent authority to transfer an inmate or does the person need the approval of the superintendent?

ANSWER:

Date:                                                                By: _____
Served by plaintiff on                                               Jeffrey Beard, Secretary
_____ Sent 2nd Time (revised)
on July 6, 2006.

2

| Date/Time | Prob # | Discipline Abbreviation | Remarks — Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 4/30/04 12:30 | 4 | | (S) anger & impulsivity & panic sx in control c̄ BZD use one per day c̄ 3 doses avail, no documented suicide tox, out of hole 2yr, hx's tried Sinequan, Paxil, Elavil, Prozac, Lithium, doubled [illegible]<br>(O) politely addressing, no acute sx<br>(A) panic by hx, c/o ASPD<br>(P) leave pt on BZD c̄ current use<br>              E. POLMUELLER M.D. |
| 5/25/04 1220 | B | Psych | S: Pt related that he is maintaining a stable mental state, devoid of prominent affective symptoms or neurovegetative disturb. His anxiety remains under control. Still seeking Z-code status due to his potential for assault when with even minor provocation.<br>O: MSE as per entry<br>A: Panic Disorder s̄ agoraphobia<br>   ASPD<br>P: Cont regimen as before<br>                           Angela Lindemuth, D.O. |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY DEFRANCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-230 E |
| | ) | |
| WILLIAM WOLFE, ET AL., | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT JEFFREY BEARD, SECRETARY

1. This request is Objected to insofar that the exhibit is not attached to the plaintiff's complaint. Without waiver of this Objection, defendant believes that the attached letter is document plaintiff refers to. There is no record that this letter ever arrived at Secretary Beard's Office or was ever seen by him. If this letter had been received, it would have been referred to Central office Medical for review and for any follow up action that may have been appropriate.

2. The Department has a z-code policy which is to be followed by all facilities.

3. This request is Objected to as it improperly characterizes memoranda written by Dr. Lindemuth and her previous testimony in this case, further and as it seeks improper opinion testimony.

4. This request is Objected to as seeking improper opinion testimony, which is also irrelevant and not likely to lead to the discovery of admissible evidence. Without waiver of this Objection, Correction Officers, Unit Managers, and Counselors are very qualified to make determinations as to whether an inmate requires a Z-code. They have the opportunity to observe

the inmate on a regular basis and are in a very good position to be able to determine whether an inmate is adjusting to his cell situation or not. The Major, Inmate Program Manager and Deputy may not have the benefit of observing the inmate first hand, however, they depend on the decisions of those personnel who are observing the inmate first hand to assist with their decision. They have the opportunity to review documentation and, if need be, contact staff who has first hand knowledge about an inmate prior to making their decision.

5. This request is Objected to as seeking improper opinion testimony, which is also irrelevant and not likely to lead to the discovery of admissible evidence. Moreover, these decisions are not made by the responding defendant.

6. This request is Objected to as seeking information that is over broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible information.

7. This request is Objected to as seeking information that is over broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible information.

8. This request is Objected to as seeking improper opinion testimony, which is also irrelevant and not likely to lead to the discovery of admissible evidence. Defendant further Objects to this request as it mischaracterizes testimony of record.

9. This request is Objected to as being inappropriately directed to this defendant and mischaracterizes defendants obligations under the Federal Rules of discovery. In any event, this request is Objected to as being irrelevant and not likely to lead to the discovery of admissible information.

10. No one has independent authority to transfer an inmate.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

*Mary L Friedline*

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA  15219
Phone: (412) 565-3520
Fax:     (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: July 27, 2006

3

## VERIFICATION

I, Jeffrey Beard, hereby state that the foregoing answers to Plaintiff's First Set of Interrogatories to Defendant Jeffrey Beard are true and correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury, which provides that if I make knowingly false averments, I may be subject to criminal penalties.

Date: 7/26/06

Jeffrey Beard