IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DeFRANCO,<br>            Plaintiff,<br><br>V.<br><br>WILLIAM WOLFE, et al.,<br>            Defendants. | : <br>: No. 04-230 -E<br>: Magistrate Judge Baxter<br>: District Judge Cohill<br>:<br>:<br>: |

FILED
'06 DEC 20 AM 10:10

### PLAINTIFF'S SUPPLEMENTAL REPLY BRIEF TO THE DEFENDANTS' MOTION IN OPPOSITON TO SUMMARY JUDGMENT

AND NOW, comes plaintiff, who brings forth the following Supplemental Reply Brief to the Defendants' Motion In Opposition to Summary Judgment, pursuant to Local Rule 56.1, and avers as follows:

1. The defendants' have filed a Motion in Opposition to Summary Judgment (Doc. 243) and attached further exhibits, and a Counter Statement of Material Undisputed facts (Doc. 244). Due to possible further medical declarations, based upon the release of needed medical records, this is plaintiff's Supplemental Reply:

### INTRODUCTION

Plaintiff has filed a Reply Brief to the defendants' motion in opposition to summary judgment. Due to the fact that plaintiff has over-looked some pertinent facts that he omitted, he files the following for the Court's consideration. Further, as the Court will observe, some of the argument made previously in plaintiff's Reply Brief is repeated here only as a means to add clarity to this supplemental reply.

1

## I. Defendant Reilly's Declaration

The defendants' have produced a self-serving declaration by defendant Reilly, Chief Psychologist, claiming that the February 2000 z-code approval was not a medical necessity or prescribed. While this Court is cognizant that a defendant's self-serving declaration is insufficient to over-come summary judgment; for the following reasons, Reilly declaration collapses and proves that plaintiff's February 2000 z-code was of medical necessity and prescribed to him, contrary to Reilly's declaration (Def.'s MSJ Ex. 17). Reilly's Declaration in its pertinent part reads:

> 4. I recommended Z code for inmate DeFranco in February 2000, a few months after his arrival at SCI Albion as he appeared to be experiencing high levels of stress with his life sentence and recent transfer. This was not a "medical necessary" or medically prescribed Z code. Rather, my recommendation would have been on a temporary basis to enable the inmate to adjust. A Z code is not permanent but subject to annual or other review when circumstances warrant change.

(*Id.* ¶4). And,

> 6. By the time of the Z code review in June 2002, inmate DeFranc's records reflected medication compliance, good attendance with psychiatric appointments and no evidence of serious mental or emotional maladjustment. In a broad sense, his mental stability had improved, all of which warranted removal of the Z code.

(*Id.* ¶6). As the Court can see, by Reilly's Declaration, he contradicts himself. On the one hand the z-code in 2000 was not of medical necessity, however, the reason it was allegedly removed in 2002 was due to good medication compliance and appointments---all of which is "medical". Moreover, unless the defendants' are stating that threatening to kill a correctional officer is not "maladjustment" then the statement is patently false. As the Court is aware, plaintiff had just been released from the RHU on April 25, 2002 for allegedly threatening to kill a guard and his z-code was removed (according to the defendants) on June 24, 2002. This was argued in plaintiff's previous filings for Summary Judgment and is argued *infra*.

## II. Medical Necessity

Defendant Reilly states that he simply recommended the z-code in February 2000 due to high levels of stress, claiming the z-code was not medical necessity (Def."s MSJ Ex. "17"). However, this is clearly a self-serving declaration designed to defeat plaintiff's claims. As this Court is obviously aware, high levels of stress is a medical condition in and of itself. Moreover, Reilly in his recent declaration states that the z-code given to plaintiff was only on a **temporary basis**, giving him time to adjust (*Id*. ¶4). This record is clear that plaintiff was given the z-code in February 2000 and removed June 2002. The z-code that was initiated by Reilly for a "temporary" basis lasted some **2 and a half years**. Two and a half years is not temporary. Also of note is that while Reilly claims in this new declaration that the z-code given to plaintiff was not a medical necessity (*Id..* ¶4), in his answers to interrogatories he made contradictory statements. Specifically;

> "Progress note of December 20, 2002: inmate was concerned with the threat of moving to (sic) single cell status. Currently, inmate DeFranco is being treated for general anxiety disorder through psychiatry and he is member of the mental health roster. Inmate DeFranco stressed that he genuinely needed to maintain his Z Code. The subject appears in need of single cell status at this time. **Certainly treating his psychiatric needs is in the subject's best interest.** It appears that inmate DeFranco is requesting reassurance that his single cell would not be abruptly removed. Maintain Z Code status for inmate. Staff for Z Code status. S. Reilly, Chief Psychologist."

(Def.s MSJ Ex. "11", ¶3). Defendant Reilly cites to the fact that treating plaintiff's psychiatric needs is in his best interests in maintaining z-code status. By his very own statements admits that this z-code was of medical necessity. Conditions of confinement that impact "inmate health and safety" fall within the protections afforded by the Eighth Amendment. See, *Estelle v. Gamble*, 429 U.S. 97 (1976). This new declaration and statements given in his Answers are self-contradictory. Conclusory and self-serving affidavits are not sufficient to create genuine issue of material fact on motion for summary judgment, *Murphy v. Facet*, 329 F.Supp.2d 1260

3

(D.Utah2004). Doctor Lindemuth also testified about plaintiff's health and heart condition. The doctor had reviewed plaintiff's cardiac status in connection with single cell, the doctor stated:

> The Witness: Yes. Now that could be coincidentally because as individuals age, and, you know, the progression of heart disease is usually for the worse as time goes on. But again, all cardiac patients are advised to reduce stress, **and being in a double cell constitutes a stress obviously that would be adverse to his cardiac state.**

(Trans. 12/17/04 page 12-13). Moreover, contained in the vote sheet comment section of the 2000 z-code granting, plaintiff's counselor wrote, **"per psych recommendations-inmate complains of anxiety and previous use of med.s (M.H.)"**---the counselor cited to plaintiff's established previous use of medications and mental health history in voting to approve the z-code. Again, the Unit Manager at the time stated, "appears to be suffering from anxiety, cellmate claims he does not sleep." (See, Plt.'s MSJ Ex. "C", Vote 1). Clearly, the z-code prescribed to plaintiff was of medical necessity---Reilly admits as much in his Answers to Interrogatories; the staff voting during that time cite to anxiety problems; plaintiff's prior taking of medications and mental health. In answers to interrogatories, Reilly makes the following answers:

> 1. Did your Office receive Dr. Lindemuth's Report's dated September 22, 2002 and August 20, 2004, advising that plaintiff be conferred back to z-code status due to his mental and physical health?
>
> Answer: 1. The Psychology Department possesses a memo from Dr. Angela Lindemuth, DO psychiatrist, dated September 23, 2002 recommending Anthony DeFranco be converted to Z code status.

(Def.'s MSJ Ex.12 ¶ 1). Reilly admits to receiving the doctor's recommendation. Next, plaintiff asks what did Reilly do after receiving this recommendation, and Reilly responded:

> 2. The result of a psychiatric recommendation for Z code status to the unit psychologist activates discussion of the inmate's case during psychiatric team meetings as well as encouraging unit staff to initiate a Z code staffing. *The responding defendant does not recall his exact actions after receiving this correspondence.*

(*Id.* ¶2.). Here Reilly admits to receiving the doctors recommendation just a month after the plaintiff was removed from z-code status. Yet, as a result, from a doctors recommendation, nothing was done. Reilly admits that a doctors recommendation should initiate a z-code staffing, yet as this record clearly demonstrates, there was absolutely nothing done by defendant Reilly after receiving the doctor's recommendation. This Court has all of the z-code vote sheets and it reflects that there was not any new staffing done after the doctor's recommendation. It is indicative of the state of the minds of these defendants' back in 2002 while they chose to inflict further punishment upon plaintiff for threatening the guard and plaintiff's assertion to defendant Showers of suing the DOC and filing the grievance. This is deliberate indifference. Again, Plaintiff asks Reilly the following:

> 4. Plaintiff was given a z-code for mental health reasoning in 2000. In 2002 it was determined that he no longer met the requirements for the z-code. Please state the changes in plaintiff that he no longer met the z-code requirement?
>
> Answer: 4. Changes in Z code requirements normally reflect an increase or decrease in mental health stability. ***In a broad sense, if Mr. DeFranco's mental health stability improved, his Z code would be reviewed and possibly terminated.***

(*Id.*, ¶4). Here, plaintiff directly asked Reilly about his mental health and stated that he was given the z-code in 2000 due to mental health in his question. Reilly admits by his answer that plaintiff was given a z-code in 2000 for mental health reasoning. This completely contradicts his declaration. Reilly states that in a broad sense if plaintiff's mental health improved his z-code could be terminated. How can Reilly make any type of meaningful statement that plaintiff's 2000 z-code was not of medical necessity or prescribed as he has attempted to do inside of his declaration? This record and defendant Reilly's very own answers go against his declaration.

Our Supreme Court, in *Estelle*, U.S. at 104-05, stated that the Constitution prohibits officials from "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." Again, while transferred to SCI Smithfield, plaintiff had a new staffing regarding whether he medically required a z-code. That was conducted by doctors, including psychiatrists and psychologists, among others, who actually held a meeting (called a "PRT"—Psychiatric Review Team) and it was medically determined that plaintiff requires the z-code. It was an absolute unanimous yes vote by ALL doctors and staff in April 2005 (Plt.s MSJ Ex. "C", Vote 4). Plaintiff submitted request slips answered by staff there that proves that this staffing and vote was made upon plaintiff's medical needs (plaintiff's Cross Motion For Summary Judgment, Ex. "M & N"). What was written in the Comment Section of plaintiff's April 2005 SCI Smithfield Vote Sheet by Frank Campopiano, who is the Unit Manager, CCC Director and Counselor Supervisor, not only collapses defendant Reilly's declaration stating that plaintiff's February 2000 z-code was not a medical necessity or given for medical reasons, it excruciatingly shows that Reilly has misrepresented the truth. Written in the April 2005 Vote Sheet, it states, **"Z-Code originally approved Feb. 2000 for M.H. (Mental Health). M.H. concerns continue on active roster."** (See Plt.'s MSJ Ex. "C", Vote #4, SCI Smithfield's April 2005 Vote Sheet Comment Section). This substantiates that the February 2000 z-code prescribed to plaintiff was of medical necessity (unless, of course, mental health is not considered a medical condition). Mr. Campopiano's very handwriting confirms this fact. Under *Farmer v. Brennan*, 511 U.S. 825 (1994), our Supreme Court stated, "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from the circumstantial evidence…and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."

Regrettably for the defendants, defendant Reilly's declaration (Def.'s MSJ Ex. 17) is contradicted not only by Reilly himself, but also by other Department of Correction personnel. The record establishes that plaintiff's 2000 z-code was of medical necessity and prescribed to plaintiff for mental health reasoning. The defendants' interfered with that treatment with the sole purpose of inflicting further punishment on plaintiff. They failed to do *anything* as a result of receiving the doctor's recommendation in September 2002 (only a month after plaintiff was forced to double cell) when Reilly admitted to receiving it. And he admitted that the recommendation *should had* activated a new staffing (Def.s' MSJ Ex. 12, ¶2), but did not.

Plaintiff was permitted to inspect his medical and psychiatric files in April 2006. During the reading of his files, he read notes regarding his need for z-code status by doctors. The defendants' very own doctors made notes in his file supporting this. And, there were also notes reflecting plaintiff's self-mutilations. The defendants and their doctors made reference to all of this as reflected by his medical files. Untrained officials are not qualified to make medical decisions, see, <u>Boswell v. Sherburne</u>, 849 F.2d 1117, 1123 (8thCir.1988)(evidence that "inadequate trained jailers were directed to their own judgment about the seriousness of prisoners' medical needs" supported claim of deliberate indifference). See attached Declaration, Plt.'s MSJ Ex. "DD")

WHEREFORE, plaintiff prays that summary judgment be granted in his favor.

Date: 12/12/06

Respectfully submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002

**Certificate of Service**
Service was made this date to the Attorney General
at 564 Forbes Ave., Pgh. Pa. 15219.

7