IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,  :
      Petitioner,  :
V.  : No: 04-230-E
  : Magistrate Judge Baxter
WILLIAM WOLFE, et al.,  : District Judge Maurice Cohill, Jr.
      Defendants.  :

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT & RECOMMENDATION**

AND NOW, comes plaintiff, who bring forth the following Objections, in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B), and Local Rule 72.1.4B, and avers as follows:

1. While the Magistrate Judge made a written report and recommendation regarding her Opinion of this case, it is plaintiff's specific averment that the Magistrate made errors in statement of plaintiff's claims; since the judge's Opinion is not based upon these grounds plaintiff will only address the issues denied.

Plaintiff incorporates by reference his partial summary judgment motion, cross motion for summary judgment and all supporting exhibits as if fully stated herein.

**Retaliatory Transfer**

The Magistrate has agreed that plaintiff's claim as it relates to the March 8, 2005 transfer, should go to trial. Plaintiff requested partial summary judgment as it related this transfer. Additionally, this Court has held in abeyance its Reconsideration Order (Doc. #136). This dealt with plaintiff's request for a preliminary injunction barring any future retaliatory transfer (Doc. #133). As this Court accurately stated, if plaintiff's allegations were true, the defendants' had violated his constitutional rights. However, the Court has held its decision and has not rendered

1

an Opinion in approximately 16 months. The matter is still pending. Plaintiff has shown, without question, that this transfer was retaliatory in nature and that the defendants were conjuring up excuses as to why they transferred him. Even the Magistrate stated that the defendants' submitted conflicting reasons as to why they in fact transferred plaintiff (Magistrate's R & R, Doc. #272 p. 16).

Simply put, a defendant's self-serving declaration is not enough to defeat an other-wise valid summary judgment motion. The Magistrate erred, as a matter of law, by not granting summary judgment to plaintiff on the retaliatory transfer claim. Defendant Barr made conflicting statements as to the reason why plaintiff was transferred; he said, 1) Plaintiff was transferred due to litigation and that it was felt that due to litigation that plaintiff not be housed at SCI Albion (See, Doc. #192, Ex. "B"); His second reason, stated in the transfer petition, 2) that Mr. Barr was requesting a transfer of plaintiff due to litigation filed against him (Barr) (when at that time, he had no litigation pending against him) and that he did not want any problems between plaintiff and the grievance system (See, Doc. #192, Ex. "D"); and his third excuse, reflected in his declaration, 3) defendant Barr was supposedly worried over plaintiff's mindset and felt that plaintiff would not feel he received a fair shake at Albion [if] he filed a grievance, so to give plaintiff a "fresh start" he had him transferred (See, Doc. #203, Ex. "2"). The Magistrate concedes that defendant Barr has submitted conflicting rationale as to plaintiff's transfer. Therefore, summary judgment should have been entered in favor of plaintiff. The defendants offered no evidence to overcome summary judgment in this case. Defendant Barr's self-serving declaration is not enough to defeat summary judgment, see, *Ennis v. Nation Assin of Business and Ed. Radio, Inc.*, 53 F.3d 55, 62 (4thCir.1995), "Summary judgment rule would be rendered

sterile…if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."

Lastly, as litigated in plaintiff's motion for partial summary judgment (Doc. #191 & 208), plaintiff cited to the fact that defendant Brooks was responsible for the retaliatory transfer as Barr as she approved the transfer. The Magistrate Judge erred by not granting trial on this matter against Brooks as well as Barr. Defendant Brooks is Barr's supervisor and ultimately, she approved the retaliatory transfer and should go to trial as well on this claim.

**Exhaustion**

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e), provides that, "no action shall be brought with respect to prison conditions under (§1983) or any other Federal law, by a prisoner…until such administrative remedies are available are exhausted." The key wording is "available" remedies.

Plaintiff has submitted with his complaint copies of the grievances that he filed (See, Doc. #1, Cmplt, Ex. "A"). In addition to submitting copies of the grievances he filed regarding this matter, he also took a further step and actually had these grievances notarized (which further proves their existence at the time in question). In addition to that, plaintiff provided the Court with a notarized affidavit of the notary affirming that she specifically notarized these grievances on those dates (Doc. #201, Ex. "W"; also attached here as Exhibit "A"). Therefore there is no question that these grievances existed at the times in question. In addition to this, plaintiff actually spoke with the warden at the time, approximately two months after plaintiff filed the grievance, and inquired as to why there had been no reply. To substantiate this, plaintiff had given a notarized statement, outlining this conversation, specifying who, what, where and when this occurred. (Doc. #201, Ex. "T"; also attached here as Exhibit "B"). It is established that

plaintiff spoke with the warden about the grievance not being replied to. Plaintiff took all of these steps in having his grievance heard and actually documented the steps by having documents notarized, giving notarized statements of the events that transpired at those exact times. All of this evidence was before the Magistrate when the Court began ***weighing*** evidence and ruled against plaintiff. This was error. In addition to the above, plaintiff actually wrote to Secretary Beard (in charge of the Department of Corrections) and explained his terrible situation, which included the lack of grievance response he was receiving at SCI Albion at those times. This letter was notarized as well, and plaintiff provided the Court with the actual mailing receipt (See, Doc. #1, Cplt, Ex. "10"; also attached here as Exhibit "C"). Also, plaintiff provided the Court with a sworn declaration stating, *inter alia*, that he filed these grievances (See, Doc. #208, Ex. "C"). In addition to the aforementioned, plaintiff is attaching a declaration made by inmate Daniel Francis who read the August 2002 grievance and actually witnessed plaintiff place said grievance in the Institutional mail-box, back in August 2002. (See, Exhibit "D", attached). This is all documentary evidence that overwhelming supports the fact that plaintiff filed grievances that went unresponded to by the defendants in order to stop litigation.[1]

The defendants had a Tracy Pollack whose Office is in Camp Hill, Pennsylvania, supply a declaration stating that plaintiff had not filed any grievance to final review (See, Doc. 203, Ex "13"). ***This person does not work at SCI Albion*** and was not employed there during the times in question here. This person simply stated that her Office (in Camp Hill, Pennsylvania) does not have a grievance on record relating to this matter. She did ***not*** (nor could she) state that plaintiff

---

[1] In the Magistrate's R & R, Doc. #272, p. 13, the Court makes reference to plaintiff not mentioning in his subsequent grievances that he had filed a grievance previous regarding the same subject matter. It was plaintiff's understanding then (as it is now) that the section asks "List actions taken and staff contacted before submitting ***this*** grievance." Plaintiff understands this to specifically mean actions taken regarding that particular grievance. He never contemplated this question box to mean anything more, especially the filing of a previous grievance.

did not submit grievances at SCI Albion about the z-code. Plaintiff has stated from the beginning of this case that the defendants had failed to respond to his grievances, not providing him a "grievance number", rendering the grievance system unavailable to him. The DOC Policy clearly states that inmates <u>cannot</u> appeal or take any further steps in the grievance process until he or she receives a grievance number. Once SCI Albion failed to issue plaintiff a grievance number it effectively prevented him from doing anything further. At the very least, based on this record, there exists a factual dispute which would prevent summary judgment against plaintiff on this issue. The Magistrate erred as a matter of law when the Court entered summary judgment based upon finding that the declaration of Tracy Pollock outweighed the evidenced put forth by plaintiff (Magistrate's R & R, Doc. #272, p. 13). The Magistrate states, "In short, the record is devoid of any documentary evidence to support Plaintiff's assertion that he ever filed a grievance with regard to the removal of his z-code status," (emphasis added) (*Id.* at 13). All of the documentary evidence listed *supra.*, certainly contradicts this statement.

Furthermore, Doctor Angela Lindemuth testified during the preliminary injunction hearing in this case on December 17, 2004, testifying that plaintiff had presented her with the August 2002 grievance, that she read it in the inmate lobby. While the stenographer made some phonetic errors, this is what the testimony reads:

> Q. I'd like to ask if you recall in August of 2002 our discussion about a z code to a single cell (sic) being lifted from me?
> A. Yes.
> Q. And do you recall agreements (sic) [a grievance] that I showed you that you looked at and they may lobby (sic) [in the inmate lobby] that I planned on filing against the defendants in this case?
> A. Yes.
> Q. And that was approximately in August of 2002, correct?
> A. Yes.

(Doc. #113, Trans. 12/17/04, p.5). The testimony of Dr. Lindemuth further establishes the fact that plaintiff had written the grievance, conveyed to her his intent of filing it, and having her review its content for accuracy. There would be absolutely no reason for plaintiff to take all of these additional steps and not file the grievances. As shown by plaintiff's exhibit "X" (Doc. #201) under the DOC grievance policy, a prisoner must wait until he receives a response from the grievance officer before you can appeal. *Id.*, Sec. "C" ¶ 14.

In *Mitchell v. Horn*, 318 F.3d 523 (C.A. 3 2003), our Third Circuit Court of Appeals reversed a case when the Court dismissed the action based upon exhaustion. The Court stated that exhaustion would be excused if the prison failed to provide him with a grievance. *Id.*, at 529. Again, our Third Circuit stated in *Camp v. Brennan*, 219 F.3d 279 (C.A.3 Pa. 2000), that an inmate is only required to exhaust such administrative remedies "as are available." *Id.*, at 281. Ironically, this case also came from SCI-Albion. The prison officials tampered with his grievances "getting through". In the case of *Brown v. Croak*, 312 F.3d 109 (C.A.3 Pa. 2002), our Third Circuit found The PLRA does not require exhaustion of all remedies, rather it requires exhaustion of such administrative remedies "as are available". The defendants' in the Brown case informed him he needed to wait until security investigated before filing a grievance. Once prison officials get in the way of filing a grievance, exhaustion is waived. In that case, our Third Circuit stated:

> Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available." *Camp v. Brennan*, 219 F.3d at 281. The availability of additional remedies to a prisoner is a question of law. See *Ray*, 285 F.3d at 291. "Available" means "capable of use; at hand." See Webster's II, New Riverside University Dictionary 141 (1994 ed.); (emphasis added)

*Id.,* at 113-14. The Court went further to cite, *Cf. Miller v. Norris,* 247 F.3d 736, 740 (8thCir.2001)(holding that "a remedy that prison officials prevent a prisoner from 'utilizing' is not an 'available' remedy under § 1997e). *Id.,* at 113.

Also, other Court of Appeals has stated that when prison officials fail to respond to an inmates grievance, exhaustion is waived. See, <u>Brengettcy v. Horton</u>, 423 F.3d 674, 681 (C.A. 7 2005), "prison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable." Also, "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable '…we join them (Eighth and Fifth Circuits) on this because we refuse to interpret the PLRA so narrowly as to…permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." <u>Foulk v. Charrier</u>, 262 F.3d 687, 698 (8thCir.2001); <u>Underwood v. Wilson</u>, 151 F.3d 292, 295 (5thCir.1998). <u>Liner v. Good</u>, 310 F.Supp.2d 550 (N.Y.2004), prison officials did not meet the burden of showing that inmate failed to exhaust available administrative remedies because there was an issue of fact as to whether the inmate who had written to the superintendent of the facility had actually filed a grievance. (As plaintiff spoke to the superintendent here, shown by notarized affidavit, See, Ex. "B", attached).

Clearly Congress did not intend on implementing the PLRA so that prison officials could simply not respond to an inmates meritorious grievance in order to prevent the inmate from filing a valid lawsuit. If this Court would allow the Magistrate's Report and Recommendation to stand it would completely undermine the PLRA and the grievance process. It would effectively give

7

the Department of Corrections a way to procedurally default every inmate's lawsuit that they believed held merit, by simply not responding to it (as they have done to plaintiff here).

The Magistrate Judge erred as a matter of law when the Court went into the weighing of evidence and credibility of witnesses. In, _Boyle v. County of Allegheny Pa._, 139 F.3d 386, 393 (3rCir.1998), the Court stated at the summary judgment stage, a court may not weigh the evidence or make credibility determinations (such as weighing plaintiff's declaration against that of the defendants Tracy Pollack); these tasks are left to the fact-finder. In _Modrovich v. Allegheny County Pa._, 385 F.3d 397, 415 (3rCir.2004) "…at the summary judgment stage the judge's function is not…to weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial."    Citing Big Apple BMW, 974 F.2d at 1362-63 we concluded:

> In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponents, even if the quantity of the movant's evidence far outweighs that of its opponents. It thus remains the province of the fact-finder to ascertain the believability and weight of the evidence.

_Id._, at 1363. Again, in _Anderson v. Liberty Lobby_, 477 U.S. 242, 255 (1986); evaluating credibility, the court will not do—weighing evidence and drawing inferences are all functions for jury. Our Supreme Court stated in _Hunt v. Cromarite_, 526 U.S. 541, 550-55 (1999) that the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, all reasonable inferences will be drawn in the non-moving party's favor.

Based upon this record, including the Magistrate's Report and Recommendation, the Court erred as a matter of law when it began to determine credibility issues, resolving them in favor of the moving party. In essence, accepting as true the declaration of Tracy Pollack, an

employee *in Camp Hill, Pa*. over that of plaintiff's declaration and all of his supporting evidence which included notarized affidavits, grievances and testimony. It is respectfully asked that this Court vacate the Magistrate's Recommendation as it is contrary to law.

Wherefore, plaintiff prays this Honorable Court vacate the Magistrate's recommendation as it pertains to the issues raised herein, and any other relief the Court may see fit.

Date: 3/5/07

Certificate of Service
Service of the foregoing was
Made on defendants this date
By US Mail.

Respectfully submitted,

Anthony DeFranco CZ-3518
10745 Route 18
Albion, Pa. 16475-0002