IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ANTHONY DeFRANCO,                )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )    Civ. No. 04-0230 Erie
                                 )    Magistrate Judge Baxter
WILLIAM WOLFE, et al.,           )
                                 )
    Defendants.                  )


## MEMORANDUM ORDER

This matter has been referred to United States Magistrate Judge Susan Paradise Baxter in accordance with the Magistrates Act, 28 U.S.C. §§ 636 (b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on February 28, 2007, recommended that Plaintiff's Motion for Partial Summary Judgment (Doc. 191) be denied; Defendant's Cross-Motion for Summary Judgment (Doc. 201) be granted in part and denied in part; and Plaintiff's Cross-Motion for Summary Judgment (Doc. 229) be denied. The parties were allowed ten (10) days from the date of service to file any objections. Service was made on all parties.

Plaintiff filed Objections to Magistrate's Report and Recommendation (Doc. 274) on March 9, 2007, objecting that the Magistrate Judge erred in failing to recommend that summary judgment be granted in favor of Plaintiff as to his claim of retaliatory transfer, and

erred for recommending that summary judgment be granted in favor of Defendants for failure to exhaust administrative remedies.

## I. Retaliatory Transfer

Plaintiff first argues that there is no genuine issue of material fact that the Defendant William Barr transferred him in violation of his constitutionally protected rights. He argues that he has shown, "without question," that he was transferred in retaliation for filing a lawsuit and for filing internal grievances. (Plaintiff's Objections, doc. 274, at 2.) We disagree.

The relevant question is whether Mr. DeFranco's constitutionally protected conduct was a substantial or motivating factor in Defendant Barr's decision to transfer him. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002), *quoting* Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Defendant Barr submitted an Affidavit in which he explains that the reason for Mr. DeFranco's transfer was not to punish or retaliate against him. (Affidavit of William Barr, July 19, 2006, ¶ 11, attached as Ex. 2 to Doc. 203). Mr. Barr states that due to Mr. DeFranco's ongoing pursuit of his grievances and lawsuit, Mr. Barr believed that Mr. DeFranco would view any decision made by Mr. Barr as invalid. (Barr Affidavit, ¶¶ 10-11.) Mr. Barr explains that he felt that Mr. DeFranco would benefit from being able to pursue his concerns free from a perceived tainted atmosphere at SCI-Albion. (Barr Affidavit, ¶ 11.)

In response, Mr. DeFranco argues that Mr. Barr's affidavit is self-serving and not worthy of credit, particularly because there exist two other documents that show that the reason for the transfer was because of Mr. DeFranco's lawsuit. These two documents are the original transfer petition and an explanation contained in a response to Mr. DeFranco's grievance. (Attached as Ex. D to Doc. 192.) The original transfer petition states that the

transfer was "due to litigation against William Barr." (Attached as Ex. D to Doc. 192.) In the response to Mr. DeFranco's grievance regarding the transfer it states that the transfer was "based on pending litigation." (Attached as Ex. D to Doc. 192.)

All three documents refer to Mr. DeFranco's pending litigation. The original transfer petition is a bare bones reference to the litigation. The grievance explanation adds that the transfer was felt to be in the "best interest of all parties" because of Mr. DeFranco's pending litigation. Mr. Barr's July 19, 2006 Affidavit appears to expand on the phrase "best interest of all parties" to offer an explanation for the transfer that would not be retaliatory. Nothing in the first two documents is contrary to Mr. Barr's explanation contained in his Affidavit.

In light of this evidence it is certainly possible that a jury could find that Mr. Barr transferred Mr. DeFranco in retaliation for engaging in constitutionally protected activity. However, it is also possible that a jury could find that Mr. Barr's reasons for transferring Mr. DeFranco were not retaliatory. The burden will be on Mr. Barr to convince the jury that he transferred Mr. DeFranco for the reasons stated in his affidavit. Mr. Barr will also have to explain to why he did not offer a full explanation for the transfer earlier. Questions of the credibility of witnesses and determination of contested facts are for the fact-finder, not a court sitting in summary judgment. There exist genuine issues of material fact that make summary judgment on this claim inappropriate. We find no error by the Magistrate Judge.

Next, Mr. DeFranco argues that his retaliatory transfer claim should also be permitted to proceed against Defendant Marilyn Brooks, "as litigated in plaintiff's motion for partial summary judgment." (Plaintiff's Objections, doc., 274, at 3.) However, it does not appear that Mr. DeFranco filed this claim against anyone but Defendant Barr.

3

Finally, Mr. DeFranco notes that he has an outstanding motion for reconsideration of our Order denying his motion for a preliminary injunction to prohibit Defendants from unlawfully transferring him out of SCI-Albion. No transfer has occurred while we have held Mr. DeFranco's motion for reconsideration under consideration, and in fact he has not been moved since August 2, 2005, nearly two years ago. Thus, it is evident that Mr. DeFranco is not at immediate risk of being transferred in retaliation for exercising his First Amendment rights. Thus, we will deny his motion for reconsideration by separate Order.

## II. Exhaustion of Administrative Remedies

Next, Mr. DeFranco argues that the Magistrate Judge erred in recommending dismissal of his Eighth Amendment and retaliation claims based on Defendants removal of his "z-code"-- or single cell -- status. The Magistrate Judge dismissed these claims after finding that Mr. DeFranco failed to exhaust his administrative remedies with regard to these claims. More precisely, the Magistrate Judge found that the "record is devoid of any documentary evidence to support Plaintiff's assertion that he ever filed a grievance with regard to the removal of his z-code status, let alone appealed any such grievance through the final review stage." (Report and Recommendation, at 13.)

Mr. DeFranco has submitted copies of three z-code status grievances in this case, each of which is notarized. (August 25, 2002 Grievance and December 16, 2002 Grievance, attached to original Complaint, and March 23, 2004 Grievance, attached to Doc. 22.) He also submitted an affidavit from the notary who notarized his grievances, in which she attests to the fact that she did notarize the three grievances on the respective date of each grievance. (Form of Affidavit of Jo Anne R. Bickel, May 3, 2005, attached as Ex. W to Doc. 201, and

4

Ex. A to Plaintiff's Objections.)  Mr. DeFranco thus concludes that "there is no question that these grievances existed at the times in questions." (Plaintiff's Objections, at 3.)  In fact, no one disagrees with this assertion.

Next, Mr. DeFranco notes that on September 26, 2002, he spoke with Defendant William Wolfe, the Superintendent of SCI-Albion, regarding, in part, the lack of response to Mr. DeFranco's grievance regarding his z-code status. (Plaintiff's Objections, at 3, citing Affidavit of Anthony DeFranco, October 6, 2002, attached as Ex. B to Plaintiff's Objections.) According to Mr. DeFranco, Mr. Wolfe advised him that he would check on Mr. DeFranco's grievance. (Plaintiff's Objections, at 2-3, Ex. B.)

In addition, Mr. DeFranco wrote a letter to Jeffrey A. Beard, the Secretary of Corrections, about his z-code status problems and in which he specifically complained, "I filed numerous complaints that went unresponded to, requests to staff and basically have done everything I can to restore my needed z-code [status]." (Plaintiff's Objections, at 4, citing Letter from DeFranco to Beard, January 22, 2004, attached as Ex. C to Plaintiff's Objections.)

Mr. DeFranco also attaches an affidavit from a fellow inmate who states that he read the August 25, 2002 Grievance, and then witnessed Mr. DeFranco place the August 25, 2002 Grievance in their Unit's mail box in August, 2002. (Declaration of Daniel Francis, ,attached as Ex. d to Plaintiff's Objections.)

Finally, Mr. DeFranco cites to Dr. Angela Lindemuth's testimony during a December 17, 2004 hearing in the instant case wherein she confirmed that Mr. DeFranco had showed her the August 25, 2002 Grievance sometime in August, 2002. (Plaintiff's Objections, at 5-6, citing Transcript of Hearing, December 17, 2004, at 5 (Doc. 113).)

5

To counter this evidence, Defendants produced the Declaration of Tracy Pollock, a Grievance Review Officer in charge of grievance records of appeals of the Pennsylvania Department of Corrections. (Declaration of Tracy Pollock, July 21, 2006, at ¶ 1, attached as Ex. 13 to Defendants' Brief in Opposition (Doc. 203).) Ms. Pollock apparently works at the Secretary's Office of Inmate Grievances located in Camp Hill, Pennsylvania, though this is not made clear in her Declaration. In any event this Office "conducts the final review of inmate grievances, in accord with Administrative Directive 804." (Pollock Decl., at ¶ 2.)

Paragraphs 2 through 5 of her Declaration are a casual recitation of the grievance procedure. First, Ms. Pollock describes that "when a grievance is submitted by the inmate, it is immediately assigned a grievance number" and then "proceeds to Initial Review." (Pollock Decl., at ¶ 3.) Assuming that all proper procedures have been followed and the Initial Review process is over, presumably not in favor of the inmate, "an inmate must [then] file an Appeal from Initial Review to the Superintendent." (Pollock Decl., at ¶ 4.) After the Appeal from Initial Review is over, presumably with a denial, "the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals and seek a Final Review." (Pollock Decl., at ¶ 5.) Thus, it appears that a grievance is meant to undergo an initial review and a first appeal before Ms. Pollock's office would even be aware that the grievance existed.

However, once an inmate does file an appeal to the office of Inmate Grievances and Appeals for a final review it is presumed that the relevant documents related to the grievance will accompany the appeal. Assuming that such an appeal for final review is made, the Department of Corrections in the ordinary course of business "maintains a hard copy file and a computer database of [any such] appeal." (Pollock Decl., at ¶ 6.)

6

It is unclear whether Ms. Pollock reviewed both the computer database and the hard copy files of grievances as she states broadly that she has "reviewed *these* records" searching for grievances that were appealed for a final review to her office by Mr. DeFranco. (Pollock Decl., at ¶ 7 (emphasis added).) Ms. Pollock found that Mr. DeFranco "has not appealed any grievance through the final review stage." (Pollock Decl., at ¶ 7a.) She also specifically found "no record of a grievance relating to Z-code staffing at any time, including on or about August 25, 2002, December 16, 2002, or March 23, 2004." (Pollock Decl., at ¶ 7b.)

In this same paragraph in which she states what grievance records she did not find in her office, she also states that "inmate DeFranco did not properly seek Final Review of grievance #112276, dated March 15, 2005." (Pollock Decl., at ¶ 7c.) Ms. Pollock notes that her Office received an appeal letter from Mr. DeFranco dated May 8, 2005. (Pollock Decl. at ¶ 7c.) Ms. Pollock cites to a May 17, 2005 memorandum from the Office of Inmate Grievance & Appeals that explains to Mr. DeFranco that his appeal fails to comply with appropriate appeal procedures because he did not attach the Facility manager's decision with amendment. (Pollock Decl., at ¶ 7c.) She further explains that he was given ten days to respond, he did not respond, and thus his attempted appeal was dismissed. (Pollock Decl., at ¶ 7c.) Although Mr. DeFranco asserts that he did respond to the May 17, 2005 memorandum by letter dated May 23, 2005, Ms. Pollock states that no such letter was found in her search. (Pollock Decl., at ¶ 7c.)

Mr. Pollock cites to the "attached may 17, 2005 memorandum" but in the exhibits filed with the Court there are no attachments to Ms. Pollock's Declaration. We have found the May 17, 2005 letter referring to grievance #112276 as one of the documents in Exhibit 4

7

to Defendants' Brief, which is referred to by Defendants as "grievance # 112276 and subsequent responses and appeal documents. (Defendants' Brief at 5.) Moreover, Defendants do not cite to Exhibit 4 in their exhaustion argument. Thus, it is unclear from her Declaration whether Ms. Pollock actually found Mr. DeFranco's original grievance #112276, or only found her Office's memorandum referring to Mr. DeFranco's attempted appeal, and his May 8, 2005 letter of appeal.

In their brief, Defendants assert, based on Ms. Pollock's Declaration, that "[t]he *Department of Corrections* has no record of any grievances by DeFranco relating to the Z-code issue, and the records reveal that DeFranco never pursued any grievance through final review." (Defendants' Brief, at 34 (emphasis added).) However, Ms. Pollock limited her search only to her own Office. (Pollock Decl., at ¶ 6 (describing the records maintained in the Office) & 7 (stating that she has reviewed "these records").) Thus, a more precise averment by Defendants should have stated only that "the *Secretary's Office of Inmate Grievances*" has no record of any grievances by Defranco relating to the Z-code issue. We believe this overstatement of the breadth of Ms. Pollock's affidavit led the Magistrate Judge to erroneously rely on the affidavit to support the conclusion that Mr. DeFranco "failed to file any grievance relating to his z-code status." (Report and Recommendation, at 13.)

As our discussion of the affidavit shows, Ms. Pollock's averments are limited only to records maintained in her Office, and Mr. DeFranco has produced evidence from which he argues that the failure to find the relevant records in Ms. Pollock's Office can be explained. Under these circumstances we cannot say that there is no genuine issue of material fact that Mr. DeFranco has failed to exhaust his administrative remedies.

8

A jury could accept all of Ms. Pollock's assertions in her affidavit as credible and still conclude that Mr. DeFranco actually did file or attempt to file his z-code grievances. No one doubts that Mr. DeFranco completed three grievance forms complaining about his z-code status. Mr. DeFranco has produced evidence from which a jury could conclude that he completed the forms on the dates indicated on the forms. He has also produced evidence from which a fact-finder could find that Mr. DeFranco complained about the lack of action on his z-code grievances to Department of Corrections' personnel. Finally, he has provided evidence of a witness to his actually placing the August 25, 2002 grievance in the proper location for filing grievances at SCI-Albion. A jury if it believes Mr. DeFranco' evidence could conclude that he was thwarted at SCI-Albion from having his grievances processed. Such a conclusion would explain why Ms. Pollock could not find any z-code grievance records in her Office. Accordingly, we will deny Defendants' motion for summary judgment for failure to exhaust administrative remedies.

Our ruling is made with some trepidation because of Mr. DeFranco's history of placing unwarranted emphasis on statements that he believes favor his position. Therefore, we take this opportunity to explain in more detail our denial of summary judgment. By denying summary judgment on the exhaustion issue we are not in any way stating that Mr. DeFranco did file or attempt to file the z-code grievances. We are not stating that Mr. DeFranco has actually exhausted his administrative remedies, or that he is excused from exhausting his administrative remedies. We are also not finding, or even implying, that any Department of Corrections' employee failed to process Mr. DeFranco's grievances or acted in anyway to prevent him from filing said grievances.

9

We also note that we find no problem, error, or contradiction with Ms. Pollock's assertions in her Declaration. There is nothing in the Declaration, either taken alone or viewed in light of all the record evidence, that would indicate that every assertion is in fact true. We have reviewed the Declaration only to show that it does not state indisputable facts that support entry of summary judgment. Moreover, her affidavit actually presents compelling support for the conclusion that Mr. DeFranco did not file any grievances relating to his z-code status. In sum, all we are saying is that there are genuine issues of fact, some of which depend upon credibility findings, that make summary judgment inappropriate at this time.

In our view, Mr. DeFranco has a difficult task to actually succeed in overcoming Defendants' circumstantial evidence that Mr. DeFranco did not exhaust his administrative remedies. Assuming that no other additional evidence on the exhaustion issue is garnered, Mr. DeFranco will have to persuade a jury that unnamed persons at SCI-Albion did something to circumvent his properly filed grievances. At this point there is no evidence to support this claim, there is only evidence from which a fact-finder *might* believe Mr. DeFranco's version.

Mr. DeFranco will also have to overcome evidence that he knows and understands the grievance procedure at issue yet did not specifically follow-up on the alleged inaction on his grievances. In this regard we note that in his January 22, 2004 letter to the Secretary of Corrections, Mr. DeFranco did not use the word "grievance," when he complained, "I filed numerous complaints that went unresponded to, requests to staff and basically have done everything I can to restore my needed z-code [status]." (Ex. C to Plaintiff's Objections.) In addition, Mr. DeFranco's October 6, 2002 affidavit in which he states that he complained on September 26, 2002 to the Superintendent of SCI-Albion about the lack of inaction on his z-

code status grievances does not *establish* that he in fact complained to the Warden about filed grievances. While a jury could find from this evidence that Mr. DeFranco actually did complain about <u>grievances,</u> such a conclusion does not establish that Mr. DeFranco actually filed his grievances. It only supports a possible conclusion that he filed the grievances.

All we can state with any degree of certainty on this issue, absent any new evidence, is that Mr. DeFranco's completed z-code grievance forms existed at the times in question. As noted, such evidence is only circumstantial evidence in favor of Mr. DeFranco's position. It is also circumstantial evidence against his position insofar as the only copies existing do not have a grievance number. We also feel compelled to explain to Mr. DeFranco that notarized documents are merely evidence that a notary witnessed the signature of a person on a document on a certain date. The fact that a document is notarized says nothing about the substance of what is contained in the document. Thus, a notarized affidavit from Mr. DeFranco stating alleged facts is, for our purposes, no different than an un-notarized affidavit from Mr. DeFranco containing the same allegations. A notarized copy attests to the fact that Mr. DeFranco signed the affidavit. We presume that un-notarized signed affidavits are from the person who signed the affidavit. It is only when evidence is produced that a person whose name appears on a document did not actually sign the document that we become concerned.

## III. Conclusion

Rule 72 of the Federal Rules of Civil Procedure provides in pertinent part: "the district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b). We accept the Report and Recommendation, filed on February 28, 2007, insofar as it

recommended that Plaintiff's Motion for Partial Summary Judgment (Doc. 191) and Cross-Motion for Summary Judgment (Doc. 229) be denied, and that Defendant's Cross-Motion for Summary Judgment (Doc. 201) be denied as to Plaintiff's retaliatory transfer claim. We will adopt the relevant parts of the Report and Recommendation as the Opinion of this Court along with our discussion contained herein. We reject the Report and Recommendation insofar as it recommended that Defendant's Cross-Motion for Summary Judgment (Doc. 201) be granted in part and denied in part. We will deny summary judgment in favor of Defendants based on the failure to exhaust administrative remedies without prejudice. We will recommit the matter to the Magistrate Judge to consider Defendant's remaining arguments in favor of summary judgment. We leave it to the discretion of the Magistrate Judge as to whether to receive additional evidence and arguments on the exhaustion of administrative remedies argument and revisit that issue. In any event, no party will be permitted to file additional evidence or argument on any of the issues already briefed without first seeking leave of Court.

After *de novo* review of the documents in the case, together with the report and recommendation and Plaintiff's Objections to Magistrate's Report and Recommendation (Doc. 274) and Recommendation, the following Order is entered:

AND NOW, this  11th  day of June, 2007, it is HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Partial Summary Judgment (Doc. 191) is DENIED; Plaintiff's Cross-Motion for Summary Judgment (Doc. 229) is DENIED;

12

and Defendant's Cross-Motion for Summary Judgment (Doc. 201) is DENIED.

The report and recommendation of Magistrate Judge Baxter, filed on February 28, 2007, (Doc. 272) is adopted as the Opinion of the Court as to Plaintiff's retaliatory transfer claim, along with our analysis herein. The matter is recommitted to the Magistrate Judge to consider Defendant's remaining arguments in favor of summary judgment.

IT IS FURTHER ORDERED that no party shall file additional evidence or argument on any of the issues already briefed without first seeking leave of Court.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:   Anthony Defranco, pro se
      counsel of record